UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PREMIER CAPITAL, LLC,            )   Case No. 03-CV-12497-NG
                                 )
        Plaintiff,                )
                                 )
    v.                           )
                                 )
BEVERLY JOHNSON PENZELL, d/b/a,  )
                                 )
        Defendant.               )

OPPOSITION OF PLAINTIFF PREMIER CAPITAL, LLC
TO DEFENDANT BEVERLY JOHNSON PENZELL'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

The plaintiff, Premier Capital, LLC ("Premier"), by its attorneys, opposes the motion to dismiss its Complaint under Fed.R.Civ.P. 12(b)(1) of defendant Beverly Johnson Penzell ("Penzell"), on, inter alia, the following grounds: her contacts with this Massachusetts forum greatly exceed those admitted in her motion, and amply support this Court's personal jurisdiction; and Premier's cause of action concerns Ms. Penzell's conduct, and not that of her late husband, vitiating her claim of lack of subject matter jurisdiction. With this Opposition, Premier submits the Affidavit of Thomas DiFrancesco ("DiFrancesco Affidavit").

FACTUAL AND PROCEDURAL BACKGROUND

Premier is a Massachusetts limited liability corporation in the business of administering and collecting on "loan workout and collection matters." Complaint, paras.

1, 3. Penzell is a defendant in two separate capacities: as her late husband's "Personal Representative," and individually, doing business as the Law Office of Kris E. Penzell. Id., para. 2.

Premier in its Complaint alleges that Penzell has, inter alia, "converted to her own use . . . Premier's case files and other litigation materials belonging to Premier." Id., Count I, para. 14. The factual bases for Count I include Penzell's "h[olding] out the Penzell Law Firm as a going concern with the capacity to provide legal services," id., para. 7; Penzell's having ignored Premier's "numerous" efforts to contact her about litigation matters formerly handled by her late husband, id., para. 8; and Penzell's refusal to return Premier's materials despite Premier's "written demand." Id., para. 10. All of the foregoing concerns conduct following the death of Penzell's husband, and involves Penzell individually.

While Penzell has not responded to Premier's concerns and improperly retains Premier's property, she has engaged in contacts with Massachusetts respecting the subject matter of this litigation: she has "initiated contacts with Premier in Massachusetts." Id., para. 8. Such contacts are set forth in the DeFrancesco Affidavit. The latter, inclusive

2

of its exhibits, contradicts Penzell's flat assertion in her Affidavit that she "ha[s] never done business as the Law Office of Kris Penzell." Penzell Affidavit, para. 8 (original emphasis).

In fact, Penzell has sought to collect on the litigation matters (such as judgments) which make up the Premier litigation materials (although the disposition of any moneys collected by her remains, at this initial, pre-discovery stage of the litigation, a mystery). DeFrancesco Affidavit, paras. 17, 19. She has repeatedly represented to Premier that she is providing legal services to it, as the DiFrancesco Affidavit amply demonstrates. Id.

ARGUMENT

I. AS A MATTER OF LAW UNDER THE MASSACHUSETTS LONG-ARM STATUTE AND DUE PROCESS CLAUSE OF THE CONSTITUTION, THIS COURT HAS SPECIAL PERSONAL JURISDICTION OVER PENZELL.

   A.  Analysis under the Long-Arm Statute.

"A Massachusetts court may only exercise personal jurisdiction over a foreign defendant when it is authorized by state statute, and jurisdiction is consistent with due process." Shipley Co. v. Clark, 728 F.Supp. 818, 821 (D. Mass. 1990) (original emphasis). The Massachusetts Long-Arm statute, G.L. c.223A, Section 3, provides in part:

> A court may exercise personal jurisdiction over a
> person, who acts directly or by and agent, as to a

cause of action in law or equity arising from the person's
(a)   transacting any business in this commonwealth;
(b)   contracting to supply services or things in this commonwealth . . .

1.   Section 3(a). Under either c.223A, Section 3(a) or (b), Penzell is subject to the jurisdiction of Massachusetts courts. "Part (a) of the statute, the 'transacting business' clause, is to be construed broadly. Indeed, the First Circuit has held that mailing four letters and making one phone call to Massachusetts satisfied [Section 3(a)'s requirements]. See Bond Leather Co., Inc. v. QT Shoe Mfg. Co., Inc., 764 F.2d 928, 932 (1st Cir. 1985)." Id. "A defendant need not be physically present in a state to 'transact business' in the state." Energy Capital And Services v. Hill Refrigeration, 989 F.Supp. 353, 355 (D. Mass. 1997)(citations omitted).

Here, the volume of correspondence, phone calls, and so on from Penzell to Premier in Massachusetts far exceeds the contacts the Bond Leather court ruled sufficient for Section 3(a) jurisdiction. Further, as Section 3(a) requires, Premier's cause of action, sounding in part in conversion, "arose from [the Penzell] activity" outlined in the DiFrancesco Affidavit. Shipley Co., Inc., supra, 728 F.Supp. at 821. The DiFrancesco Affidavit, including its exhibits, show that Penzell "knowingly and purposefully

4

engaged in transactions with the plaintiff[] in Massachusetts." Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 10 (1979)(Section 3[a]). See also Hahn v. Vermont Law School, 698 F.2d 48, 50 (1st Cir. 1983)(mailing by defendant of application information and acceptance letter was transacting business under Section 3[a]); Bond Leather Co., supra, 764 F.2d at 932 (defendant's guaranty of payment for goods, plus four letters and one phone call, was "transacting business"); Fairview Mach. & Tool Co. v. Oakbrook Intern., 56 F.Supp.2d 134, 138 (D. Mass. 1999) (a visit by defendants, payments to Massachusetts, and "substantial correspondence" into Massachusetts conferred jurisdiction under section 3[a]).

Penzell asserts the existence of a contractual relationship with Premier (as successor to Bank of America). Assuming arguendo that this is true, when a claim arises out of a contract, "a finding of jurisdiction under [Section 3(a)] requires an 'evaluation of the relations between the parties, their respective activities under the contract, and the linkages, if any, between the defendant's participation in the transaction and the Commonwealth . . . The court must 'look at all of the communications between the parties, before and after the consummation of the contract, to determine the degree and type of contacts the defendant has

5

with the forum, apart from the contract alone.'" <u>Energy Capital And Services</u>, <u>supra</u>, 989 F.Supp. at 355 (citations omitted).

<u>Energy Capital and Services</u> is of particular relevance here. In that case, the District Court found Section 3(a) jurisdiction upon these facts: the contract at issue had been negotiated and performed in New Jersey; the contract relationship was years-long; defendant had no Massachusetts place of business; defendant was virtually out of business as the litigation took place; and defendant "routinely directed communications into Massachusetts". <u>Id.</u> at 354-355. Based on these facts (and an escrow account in Massachusetts), the court found Section 3(a) jurisdiction.

For the <u>Good Hope Industries</u> court, too, "an enterprise of substantial dimension" with a plaintiff known to be a Massachusetts corporation, telephone calls, mailings, and a seventeen-month contractual relationship, conferred jurisdiction under Section 3(a). 378 Mass. at 9-10.

In this case, a years-long relationship, with many communications "directed" by Penzell into Massachusetts, clearly provides jurisdiction over this defendant under Section 3(a). Conversely, it cannot be said "that by

6

exercising jurisdiction in this case the Commonwealth would drag into its courts an 'unsuspecting and unwilling' defendant" who had not purposely availed herself of the privilege of conducting activities in Massachusetts. Good Hope Industries, supra, 378 Mass. at 10 (citations omitted).

2. Section 3(b). While the Section 3(a) analysis here suffices to support jurisdiction under the statute, the matter is also clear under Section 3(b). The facts set forth in the DiFrancesco Affidavit support a ruling of jurisdiction under Section 3(b).

B. Due Process Clause Analysis.

Due process analysis closely tracks the analysis under Section 3(a). "The Due Process Clause of the United States Constitution requires that there be sufficient minimum contacts between a defendant and the forum such that the exercise of personal jurisdiction over a defendant comports with 'traditional notions of fair play and substantial justice.'" Brookfield Machine, Inc. v. Calbrit Design, 929 F.Supp. 491 (D.Mass. 1996), citing International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); see also Daynard v. Ness, Motley, Loadholt, Etc., 290 F.3d 42, 60-63 (1st Cir. 2002). This, in turn, involves a three-part analysis, discussed below.

1. <u>Relatedness</u>. Plaintiff's claim[s] "must directly arise out of, or relate to, the defendant's in-forum activities". <u>Id</u>. This is clearly the case here; Premier's claims have to do with the 21 legal matters, and the related substantial amount of communication, Penzell directed into Massachusetts. <u>See also</u> <u>Fairview Mach. & Tool Co.</u>, <u>supra</u>, 56 F.Supp.2d at 138-139 (contacts in the form of "numerous communications" into Massachusetts by defendants "plainly relate to plaintiff's [contract] claims", satisfying "[t]he relatedness element").

2. <u>'Purposeful availment'</u>. "The defendant's in-state contacts must represent a purposeful availment of the privileges of conducting activities in the forum state," so that the defendant's presence before a court in that state is "foreseeable." <u>Brookfield Machine Co.</u>, <u>supra</u>, 92 F.Supp. at 498. Here, too, the 3-4 year length of Premier-Penzell relationship, the volume of communications, the fact that Premier was known to have been in Massachusetts, all amount to "purposeful availment" under <u>Brookfield Machine</u>, <u>Good Hope Industries</u>, <u>Fairview Mach. & Tool</u>, <u>Energy Capital And Services</u>, and other cases.

3. <u>Reasonableness</u>. "[T]he exercise of jurisdiction must, in light of certain 'gestalt' factors, be reasonable."

Brookfield Machine, Inc., supra, 929 F.Supp. at 498. Such 'gestalt' factors cut very much in Premier's favor. (They are less important in any event here, in light of Premier's compelling showing of "relatedness" and "purposeful availment." See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 [1st. Cir. 1994]).

Briefly, then, "the defendant's burden of appearing," Brookfield Machine, supra, is mitigated substantially because Penzell (and her staff) has purported to provide, or to arrange to provide, litigation services, and is familiar with the litigation files she insists on retaining. See also Pritzker v. Yari, 42 F.3d 53, 60-63 (1st Cir. 1994) (travel between New York and Puerto Rico not a burden unusual enough to defeat jurisdiction). As to whether Massachusetts, the forum state, has an "adjudicatory interest" here, clearly the Commonwealth has "an interest (original emphasis)" in "'protecting one of its own [corporations] from any potential wrongdoing on the part of an out-of-state business." This is enough. Brookfield Machine, Inc., supra, 929 F.Supp. at 500 (also ruling that a comparative analysis of one state's "interest" versus another's is inapposite).

9

Premier clearly has an "interest in obtaining convenient relief," id.; it should not be required to chase Penzell in Florida to redress her wrongdoing. "[T]he most effective resolution of the controversy", id., will occur here; to recommence this litigation in Florida will cost both parties time and money. Finally, "substantive social policies" are advanced here: this case concerns, among other things, the duties of faithful, zealous representation that attorneys owe their clients.

II. THIS COURT HAS SUBJECT MATTER JURISDICTION IN THIS ACTION.

In deciding Penzell's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the Court assumes that all material allegations set forth in the complaint are true. The averments of the complaint, as well as their proper inferences, are construed in favor of the plaintiff and the claim will not be dismissed unless 'it appears beyond doubt that the plaintiff can provide no set of facts in support of his claim which would entitle him to relief.'" Campbell v. U.S., 167 F.Supp.2d 440, 443 (D. Mass. 2001). Where, as here, a movant's attack on subject matter jurisdiction "argues that the jurisdictional allegations of the complaint are not true . . . a court may look to matters outside of the pleadings," such as

affidavits. <u>1610 Corp.</u> v. <u>Kemp</u>, 753 F.Supp. 1026, 1028-29 (D. Mass. 1991).

Penzell contends this is a probate matter having to do exclusively with her late husband's relationship with Premier's predecessor-in-interest. This contention amounts to a red herring. The Complaint sets forth a cause of action against Penzell personally for her own wrongful conduct. To the extent that she attacks the factual allegations of the Complaint— averring her conduct is not at issue, for example— the DiFrancesco Affidavit provides substance to such allegations. The Complaint easily meets the low threshold for successfully asserting a claim against Penzell personally.

CONCLUSION

Accordingly, Premier respectfully requests that the Court deny Penzell's motion in its entirety.

PREMIER CAPITAL, LLC

By its attorneys,

Miles E. Hoisington
BBO# 545184
Thomas James Morrissey
BBO# 547077
Hoisington & Morrissey P.A.
1506 Drift Road
Westport, MA 02790
Tel.: (508) 636-7363

Dated: February 24, 2004

## CERTIFICATE OF SERVICE

The undersigned, counsel for plaintiff Premier Capital, LLC, certify that I served the foregoing Opposition, and the Affidavit of Thomas DiFrancesco, by hand upon counsel of record herein for defendant, Catherine J. Savoie, Esq., Posternak, Blankstein & Lund, LLP, Prudential Tower, 800 Boylston Street, Boston, MA 02199 this 24th day of February, 2004.

Thomas James Morrissey
BBO# 547077