UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PREMIER CAPITAL, LLC,           )   Case No. 03-CV-12497-NG
                                )
        Plaintiff,              )
                                )
v.                              )
                                )
BEVERLY JOHNSON PENZELL, d/b/a, )
                                )
        Defendant.              )

AFFIDAVIT OF THOMAS DiFRANCESCO IN SUPPORT OF
OPPOSITION OF PLAINTIFF PREMIER CAPITAL, LLC
TO DEFENDANT BEVERLY JOHNSON PENZELL'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

MIDDLESEX, SS:

THOMAS DiFRANCESCO, on oath, deposes and says as follows:

   1.  I am Vice President at plaintiff Premier Capital, LLC ("Premier"), and have personal knowledge of the matters set forth herein, specifically, Premier's relationship with defendant Beverly Johnson Penzell ("Penzell").

   2.  Premier is in the business of administering and collecting on distressed financial assets, including promissory notes, mortgages, personal guaranties, and the court judgments relating thereto. As an account manager, I deal with out-of-state attorneys handling Premier-related matters on a daily basis.

   3.  At all times during Premier's dealings with Penzell, she has held herself out to be in the business of providing legal services. She has also held out the law

firm of her late husband, Kris E. Penzell, as a going concern. Attached hereto as Exhibits A(1), (2) and (3) are copies of filings with the Florida Secretary of State and related materials, obtained on-line, in which Kris E. Penzell is identified as an officer of the firm, an "Active" concern, well after his death in March, 2000.

4. Further, Penzell employed the Penzell law firm letterhead in her dealings with Premier.

5. Penzell led Premier to understand that the law firm had on staff another person (other than Penzell) who provided legal services, one Susan I. Noe ("Noe").

6. The nature of Penzell's relationship to Premier was that she purported to provide legal and collection-related services to Premier on an ongoing basis. Penzell retained a number of Premier matters following her husband's death.

7. Penzell and Premier communicated regularly about the status of such matters. Such communications included exchanges regarding litigation strategy. They took the form of telephone calls, e-mail, and facsimile transmissions. Penzell initiated many such communications.

8. Penzell, personally or through her purported agent, Noe, provided Premier with status reports on the Florida matters. Many of these reports were verbal, some were written. A true and accurate copy of one such report, under

the Penzell law firm letterhead, is attached hereto as Exhibit B.

9. Another example of communication from Penzell, a facsimile transmission regarding one of the Premier matters, is attached hereto as Exhibit C.

10. As another example of communications from Penzell regarding ongoing legal work for Premier, copies of correspondence on the Ward matter, dating from October, 2002, are attached as Exhibits D (1)-(3).

11. In providing legal services to Premier, Penzell sometimes requested documents and other assistance from Premier. A true and accurate copy of a cover letter responding to one such Penzell request is attached hereto as Exhibit E.

12. In the Spring and Summer of 2002, Penzell sought to do further legal work for Premier. She proposed to enter into a contractual relationship specifically with Premier regarding a number of Florida litigation matters. A copy of a facsimile transmission dated May 14, 2002, referencing the new work, is attached hereto as Exhibit F.

13. Penzell proposed to perform a variety of litigation tasks in connection with the new matters she received. A copy of a status report, with proposed litigation strategy going forward, submitted,

characteristically, under the Penzell law firm letterhead, is attached hereto as Exhibit G.

14. During Spring, 2003, Penzell and Premier engaged in numerous communications, many initiated by Penzell, regarding the proposed new contract. Copies e-mail exchanges and a facsimile transmission on this subject are attached hereto as Exhibits H and I, respectively.

15. During late 2002 and 2003, Penzell became increasingly less communicative regarding the Premier files she was handling. Premier accordingly made numerous verbal and written demands, including the letter attached as Exhibit A to the Complaint in this action, seeking return of the Premier files. She has failed and refused to respond.

16. Penzell currently retains 21 Premier legal matters (some of them involving more than one obligor). A copy of a Premier-generated computer record listing such matters is attached hereto as Exhibit J.

17. At no time did Penzell indicate to Premier that her sole role was that of representative of her late husband in collecting old Bank of America bills. Throughout Premier's relationship with her, Penzell represented her law firm to be a going concern, capable of making court appearances, requesting production of documents, examing debtors, taking depositions, and undertaking other tasks

which Premier reasonably viewed as constituting legal services.

18. At all times relevant to this dispute, Premier relied upon Penzell's assertions that she, Noe, and the rest of Penzell's law firm were still very much in business.

19. Premier does not know (and has not been informed) of the disposition of any moneys, if any, Penzell and her firm may have collected during the past year.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 24th DAY OF FEBRUARY, 2004.

_____
Thomas DiFrancesco