FILED
UNITED STATES DISTRICT COURT CLERKS OFFICE
DISTRICT OF MASSACHUSETTS

2005 JAN 21 A 11: 27

PREMIER CAPITAL, LLC,            )
                                 )
          Plaintiff,             )        U.S. DISTRICT COURT
                                 )        DISTRICT OF MASS.
                                 )        Civil Action No.
     v.                          )        03-CV-12497-NG
                                 )
BEVERLY JOHNSON PENZELL, d/b/a,  )
et al.,                          )
                                 )
          Defendants.            )

AFFIDAVIT OF RICHARD GLEICHER IN SUPPORT OF
MOTION TO AMEND COMPLAINT OF
PLAINTIFF PREMIER CAPITAL, LLC

MIDDLESEX, SS:

     RICHARD GLEICHER, being duly sworn, deposes and states
as follows:


     1.   I am a duly-authorized agent of plaintiff Premier
Capital, LLC ("Premier"), and I make this affidavit upon my
personal knowledge and in support of Premier's motion to
amend its Complaint in this action.


     2.   Premier is a limited liability corporation
organized under the laws of the State of Delaware, with
offices at 226 Lowell Street, Wilmington, Middlesex County,
Massachusetts 01887.  Premier is in the business, among
other things, of buying, selling, administering, and
collecting on distressed financial assets, such as

promissory notes and mortgages, and court judgments arising from such assets.

3.   On or about October 3, 2001, Premier purchased from Bank of America, N.A. ("BofA"), BofA's right, title and interest in a group of approximately 21  judgments entered in favor of BofA in courts of the State of Florida (the "Florida Judgments").  Such Judgments were unsatisfied: Premier purchased them with a view of collecting upon them.

4.   The files Premier received from BofA indicate that, on or about December 23, 1998, attorney Kris E. Penzell, individually, entered into a written "Contingency Fee Agreement" ("Agreement") to perform legal services for NationsBank, N.A. (the "Bank").  A true and accurate copy of the Agreement is attached hereto as Exhibit A.  I am informed and believe that the Bank is a predecessor-in-interest of BofA.

5.   Premier had no involvement of any kind in connection with the Agreement, its subject matter, Mr. Penzell, or Ms. Penzell prior to Premier's purchase of the Florida Judgments from BofA.

2

6.   At no time did the late Kris E. Penzell, the "Attorney" referenced as party to the Agreement, perform legal services for Premier.   There is no written or oral agreement respecting such services between Kris E. Penzell, on the one hand, and Premier, on the other.

7.   At no time did Mr. Penzell's law office ever recover any moneys pursuant to any of the Florida Judgments on Premier's behalf.   Nor has it ever notified Premier that any of the Judgments have been partially or fully satisfied during the period since Premier purchased the Judgments from BofA.

8.   I understand that Ms. Penzell has admitted in this action that the Agreement has been terminated.   The Agreement's termination provisions provide, in part, that Mr. Penzell, or his firm, were to provide invoices to BofA upon such termination.

9.   I have never seen any such invoices, or any demand for payment respecting any Penzell legal fees which are alleged to be due and owing.

10.   At no time has Mr. Penzell's law office submitted to Premier a written demand for payment of purported, due

and owing legal fees.  No written invoice of any kind has ever been submitted to Premier.  Premier has no notice of what amount, if any, Ms. Penzell claims in this case is owed to her by Premier.

11.  As part of its Loan Sale Agreement with BofA, Premier acquired all file materials related to the Florida Judgments from BofA, including copies of correspondence and other communications between Mr. Penzell and BofA.  Such file materials also lack any invoices from Mr. Penzell seeking payment under the Agreement, or any demand for payment directed to BofA.

12.  Nonetheless, Ms. Penzell retained the Florida Judgment file materials under a claim of an attorney's lien. She never notified Premier in writing of this claimed lien.

13.  During the period following Premier's purchase of the Florida Judgments and up to the filing of the Complaint in this action, various persons held themselves out to be members of the "Law Offices of Kris E. Penzell", and provided, or purported to provide, legal services to Premier respecting the Florida Judgments.  Such services included the following activities: filing judgment liens; renewing

judgment liens; and conducting debtor examinations under the
Bankruptcy Code.

14.   Ms. Penzell, Victor Rones ("Rones"), and Susan I.
Noe ("Noe") all acted respecting the Florida Judgments as
part of the Penzell firm, which they in turn held out to be
a going concern.  Each of them employed the firm letterhead.
Examples of correspondence evidencing this conduct are
attached hereto as Exhibits B (Ms. Noe), and C (Rones).

15.   At no time did either Rones or Noe notify Premier
that they were acting in some capacity other than as
attorneys with the Penzell firm.

16.   In November, 2004, during and immediately
subsequent to my deposition, Premier learned for the first
time that Rones and Noe were successive, court-appointed
"Inventory Attorneys" respecting Kris E. Penzell's law
practice.

17.   Premier sought Noe's assistance in retrieving the
Florida Judgment files from Ms. Penzell.  Ms. Noe filed a
motion with the Florida Probate Court in which she sought
the Court's guidance in light of Ms. Penzell's alleged
attorney's lien on the files.

18.   Ms. Noe's motion was the first written indication
Premier ever received that Ms. Penzell asserted a lien on
the files— a lien asserted despite her having never
invoiced, or demanded payment from, Premier or BofA pursuant
to the termination provisions of the Agreement.


19.   Following the Florida Probate Court Order, in
December, 2004, Premier received copies of file materials
respecting the Florida Judgments from the Penzell firm.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY this 2⁰ day
of January, 2005.

_____
Richard Gleicher, as
Duly-Authorized Agent,
Plaintiff Premier
Capital, LLC

6

*Ex. A*

## CONTINGENCY FEE AGREEMENT

This Contingency Fee Agreement ("Agreement") is entered into this ȝ day of Deeemb , 199, by and between NationsBank, N.A. ("Bank") and Erik Pennell (the "Attorney").

### I.    FEES AND COSTS.

   A.    Fees.

   The Attorney's fees for matters forwarded pursuant to this Agreement and the Contingency Attorney Referral attached hereto as Exhibit A ("Matters") shall be wholly contingent upon collection and shall be at the rate of thirty percent (30%) contingency basis on all amounts collected, unless otherwise designated in writing by Bank.

   B.    Costs.

   In no event shall the Attorney incur any reasonable expenses in excess of $250.00 with respect to any matter without the Bank's prior approval. Costs shall include actual costs incurred in connection with the preparation and prosecution of the Matter and must be within the limits set forth in the Bank's Procedures for Outside Counsel, which are hereby incorporated by reference. Costs shall be billed each month and identified as to each corresponding Matter.

   C.    Application of Collected Funds.

   In the event that the Attorney collects any funds as the result of prosecution of a Matter, the Firm shall be entitled to apply said funds as follows: (i) first, to reimbursement of any costs incurred and not previously reimbursed, (ii) second, to reimburse Bank for any costs already billed and paid by Bank, (iii) third, to the Attorney to pay the thirty percent (30%) contingency fee, and (iv) to the Bank.

   D.    Remittance of Funds.

   The Attorney shall be responsible for collection of all monies due from debtors on all Matters subject to this Agreement. The Firm shall be permitted to deduct the agreed costs and contingency fees from the funds collected and must remit the remaining balance of all such funds collected to Bank no later than fifteen (15) days from receipt of each payment in the Attorney's office. The Attorney shall provide the Bank with a full accounting of each such remittance at the time of payment

thereof. In addition to the above, the Attorney shall provide to the Bank a monthly accounting of all monies received and all payments made with respect to each Matter during the prior month. In the event the Bank directly receives funds on a Matter, Bank agrees to process such payment and forward to the Firm the appropriate contingency fee within thirty (30) days from receipt thereof.

II.    WORK TO BE PERFORMED.

Each Matter subject to this Agreement may require one or more of the following types of collection efforts. In addition, other methods of collection may be required. The time deadlines indicated below in Section II of this Agreement can be modified with the express consent of the Bank.

A.    Review Credit File and Determine Litigation Probability.

Within thirty (30) days of receipt of the Matter, the Attorney will review the credit and collateral files applicable to each Matter and will prepare a written summary report to reflect the status of the file and the Bank's position. This review includes a recommendation as to whether action, including litigation, against the collateral and/or the obligors is feasible. If it is determined that the debt is uncollectable or that the costs to collect the debt outweigh the benefits of collection, the Attorney agrees to return the file to the Bank at no charge.

B.    Demand On Debtor.

The Attorney will make formal written demand on the debtor for payment of the indebtedness within forty-five (45) days of receipt of the Matter.

C.    Litigation.

Within ninety (90) days of receipt of the Matter, if the Bank expressly determines that litigation should be filed against the debtor, the Attorney will investigate the facts necessary to prepare the lawsuit, file the lawsuit and prepare and file an initial set of discovery requests.

D.    Bankruptcy.

If a debtor files for bankruptcy protection, the Attorney will immediately notify the Bank in writing and will thereafter file a Notice of Appearance. With the permission and assistance of the Bank, the Attorney will file a Proof of Claim, even if the bankruptcy

2

notice indicates that the Matter is a "no asset" case, and Motion For Relief From Stay as required under the circumstances.

E.    Post-Judgment Collection Efforts.

Once a final judgment has been entered against a debtor, the Attorney agrees to initiate appropriate post-judgment proceedings, including, but not limited to, recording judgments in the appropriate jurisdictions, post-judgment discovery, garnishment proceedings, obtaining writs of execution and other proceedings as may be appropriate in the applicable jurisdiction.

III.    STATUS REPORTS.

The Attorney shall keep the Bank informed of the status of each Matter by timely sending the Bank a copy of all correspondence and pleadings involved in each Matter. In addition upon request, the Attorney shall provide the Bank a status report on any or all Matters that the Attorney is handling in the form attached as Exhibit B.

IV.    SETTLEMENTS.

In the event that the debtor in a particular Matter indicates a willingness to resolve the Matter for less than the full amount of the debt owed to Bank, the Attorney may settle such Matter only with the written consent of Bank.

V.    COUNTERCLAIMS.

In the event a counterclaim should be filed against the Bank in any Matter, the Attorney shall immediately notify Bank of the same and Bank shall have the right to elect to transfer the Matter to another counsel of Bank's choice. On such transfer, the Firm shall provide Bank with a written invoice showing the number of hours expended on the Matter at an hourly rate of $110.00 per hour, and Bank may elect to either (i) pay the invoice in full satisfaction of the Attorney's claims as to the Matter, or (ii) pay the Attorney a reduced contingency fee of fifteen percent (15%) of all funds collected by Bank following transfer. In the event a counterclaim which has resulted in a transfer is later resolved, Bank may elect to return the Matter to the Attorney at the Attorney's regular contingency rate, and to the extent Bank has paid the Attorney an hourly fee as set forth above, the amount of said hourly fee paid shall be deducted from the contingency amount upon any later collection of Bank's claim. In the event the Matter remains

with the Attorney, the manner in which the counterclaim shall be
handled shall be determined on a case by case basis.

## VI.    TERMINATION.

### A.    For Cause.

In the event the Attorney fails to timely or fully remit any amount due
to Bank, or fails to do any other act required by this Agreement or fails
to perform said act in a timely manner, Bank may at any time notify
the Firm in writing of its concerns and objections. The Firm shall have
thirty (30) days from the date of such notice to take corrective action.
If, at the end of the thirty (30) day period, all problems have not been
resolved to Bank's full satisfaction, Bank shall have the unilateral
right, in its sole and absolute discretion to terminate this Agreement
by notice to the Firm in writing, and to withdraw any and all files
Bank deems necessary to effect the termination.

### B.    Without Cause.

At any time after one (1) year following the date of this Agreement,
Bank may terminate this Agreement for any reason or for no reason at
all. Notice of termination shall be in writing and shall be effective
thirty (30) days after receipt.

### C.    Bank Recall.

From time to time, Bank may recall a Matter for any reason or no
reason at all from Attorney and reserves the right to take such action.
In such instances, the Attorney agrees to return all original files and
documents related to the recalled Matter within fifteen (15) days from
notification. If a matter is recalled, Attorney will be compensated as
indicated in paragraph D below.

### D.    Payment Upon Termination.

Upon termination as set forth in Section A above, the Attorney shall be
entitled to compensation as follows: (i) as to any Matters in which a
payment agreement has been previously reached with the debtor, the
Attorney shall be entitled to collect its agreed contingency fee and all
funds collected under such payment agreement; and (ii) as to Matters
in which no payment agreement has been reached prior to termination,
the Attorney shall provide the Bank with a written invoice for each
terminated Matter showing the number of hours expended on each

4

terminated Matter at the hourly rate of $110.00 per hour and as to each individual Matter Bank may thereupon elect to either (i) pay said invoice in full satisfaction of the Firm's claims to each terminated Matter or (ii) pay the Attorney at a reduced contingency fee of fifteen percent (15%) of all funds collected by Bank, if any, following termination.

Upon termination as set forth in Sections B and C above, the Attorney shall be entitled to compensation as follows: (i) as to any Matters in which a payment agreement has been previously reached with the Debtor, the Attorney shall be entitled to collect its agreed contingency fee and all funds collected under such payment agreement; and (ii) as to Matters in which no payment agreement has been reached prior to termination, the Attorney shall provide the Bank with a written invoice for each terminated Matter showing the number of hours expended on each terminated Matter at the hourly rate of $110.00 per hour, and as to each individual Matter Bank may pay said invoice in full satisfaction of the firm's claims to each terminated Matter.

E.    Attorney's Right To Terminate.

The Attorney has the right to terminate this Agreement by providing Bank with ninety (90) days' written notice of such termination. However, upon any such termination initiated by the Attorney, contingency fees for payment made after a termination date are waived.

## VII.   RETENTION AND RETURN OF FILES

When a Matter is completed through collection or when collection efforts are abandoned, the Attorney shall maintain all records related thereto for a period of five (5) years. If this Agreement is terminated as set forth above, the Attorney shall return all original files and documents to Bank along with a complete set of all pleadings filed in the case within thirty (30) days from the date of termination.

## VIII.   OTHERS MATTERS

A.    Matters Outside Attorney's Service Area:

In the event  Attorney is unable to handle a particular matter due to a defendant being located outside Attorney's usual service area, Attorney shall immediately contact Bank in writing to advise Bank of the circumstances. Bank shall thereupon have the option of authorizing attorney to employ the assistance of legal counsel in the area where

the defendant is located, subject to the Bank's prior written approval.
In no event shall the Bank be responsible for fees beyond the agreed
contingency fees set forth herein above and any proposed agreement
with outside counsel engaged by Attorney shall be subject to prior
written approval by Bank.

B.    Geographic Areas.

The Attorney will handle matters under this Agreement in the
following areas: _____

The Attorney acknowledges that this Agreement is not an agreement
for exclusive representation of the Bank by the Attorney in the
Geographic Area and that the Bank reserves the right to send matters
in the Geographic Area to other attorneys.

C.    Liability.

The Attorney will review the Bank's file and submit an accurate report
based on the documents contained in the file. Since the file review is
limited to the documents available in the Bank's file, the Attorney will
not represent that the information is complete. Unless specifically
engaged, the Attorney is not expected to search records or public filings
not contained in the Bank's file. Unless expressly noted in the report,
the report submitted is not a legal opinion on the perfection or priority
of the Bank's lien on the collateral.

D.    Hold Harmless.

The Attorney agrees to comply with all laws, federal, state or local and,
without limitation, the Fair Debt Collection Practices Act. The
Attorney agrees to indemnify, release and hold the Bank harmless
from any and all damages, claims, liability, debts, causes of action,
claims for relief or loss of any kind, including all attorneys' fees, legal
costs and expenses, arising from the Attorney's acts or omissions, the
Attorney's violation of any law or the Attorney's negligence. The
Attorney also holds the Bank harmless from the acts of the Attorney's
servants, employees, agents, agencies or independent contractors. The
Bank agrees to indemnify, release and hold the Attorney harmless
from any and all damages, claims, liability, debts, causes of action,
claims for relief or loss of any kind, including all attorney's fees, legal
costs and expenses arising from the Bank's acts or omissions, Bank's
violation of any law or Bank's negligence. Bank also holds the Attorney

6

harmless from the acts of Bank's servants, employees, agents, agencies
or independent contractors.

E.    Full and Complete Agreement.

This Agreement represents the full and complete understanding of the
parties with respect to the subject matter hereof. This fully integrated
Agreement shall supersede all prior and contemporaneous
negotiations, discussions, representations, agreements and accords
that are not expressly incorporated herein.

F.    Successors and Assigns.

This Agreement shall inure to the benefit of each of the parties hereto
shall be fully binding upon them and their respective heirs, personal
representatives, and successors. In no event shall this Agreement be
assignable by the Attorney.

G.    Applicable Law.

This Agreement has been negotiated, executed and delivered, and shall
be deemed to have been made in the State of North Carolina, and the
validity of this Agreement, its construction, its interpretation and
enforcement and the rights of the parties hereunder, shall be
determined under, and governed by and construed in accordance with
the laws of the State of North Carolina.

H.    Counterparts

This Agreement may be executed in one or more counterparts, each of
which shall be deemed an original. Said counterparts shall constitute
but one in the same instrument and it shall be binding upon each of
the undersigned individually as fully and completely as if all had
signed but one instrument.

I.    Severability

To the extent that any provision in this Agreement is held to be
unenforceable, the remaining portions of the Agreement shall continue
to have full force and effect and shall be interpreted to achieve the
overall intentions of the parties hereunder.

7

J.    Time is of the Essence

The Attorney agrees and acknowledges that time is of the essence to this Agreement.

NationsBank, N.A.

By: _____
Name: _____
Title: _____Seni- Conl_____

_____Kris E. Penzell P.A.____

Name of Law Firm

By: _____
Name: _____Kris Penzell_____
Title: _____President_____

f:\mayo\cont-fee\forms\penzell

8



LAW OFFICES
## KRIS E. PENZELL
PROFESSIONAL ASSOCIATION
407 LINCOLN ROAD
SUITE 10-D
MIAMI BEACH, FLORIDA 33139

KRIS E. PENZELL

TELEPHONE (305) 531-3000
FACSIMILE (305) 531-5175

August 6, 2002

Sent via Facsimile (978) 694-4890
and U. S. Mail

Nick Maimonis,
Premier Capital LLC
226 Lowell Street
Wilmington, MA 01887

Dear Nick:

Attached you will please find a status summary of the diligence afforded the Premier files
forwarded to this office. The summary indicates a brief background of what we have found and
what was done so far, including the date of the searches with number of pages, status of our in-
house report with number of pages, what inquiry is in process, suggested immediate action,
recording details and out of pocket expenses.

We have conducted a national search on each and every file over the past couple of months and
methodically detailed the research and inquiry accomplished. Be advised that the initial searches,
at a cost of $15.00 each, reveal, where applicable, among other information, the following:

A. Current addresses
B. Driver's Licenses
C. Vehicle ownership
D. Real property ownership
E. Corporate involvement
F. Telephone numbers
G. Bankruptcy
H. Judgment liens
I. Traffic infractions
J. Worker's Comp claims

We use the above leads to verify, explore and research many other avenues of inquiry before
suggesting expending the costs of scheduling depositions, subpoenaeing records and attempting
service of process. In most of the files we have prior research which has been used as a
comparison.

PC0163

Premier Capital LLC
Page Two
August 6, 2002

Our normal course of business would be to bill you monthly for costs, including out-of-pocket, postage and photocopies at 25 cents a page as well as invoiced costs, supplying a copy of the attendant invoice. Our clients remit payment on these cost bills generally by return mail.

We are prepared to accept these cases upon these terms and would like an opportunity to discuss same with you upon your receipt and review of the enclosed status.

Sincerely,

SUSAN I. NOE

SIN:bj
Enclosure

**PC0162**

## PREMIER CAPITAL LLC      Status Report          July 31, 2002

**Bradley, Andrew**                                               **$24,585.50**
**Bradley, Therese & Bradley Boat Repairs**                       **1/4/99 Judgment**

Dade County State Atty's office looking for Mr. Bradley for non-payment Of Child Support. BKC attemped in 1999 but dismissed; He had been sending child support payments drawn on a Bradley Boat Repair account with a last post office box address in St Thomas. however, a check there on him with the Director of Licensing and Consumer Affairs ... reveals no records on him. Bahamas inquiry and additional St Thomas inquiry needs authorization.Wife Therese is a debtor and may have asssets but she is probably considered head of household and we may not be able to collect from her.Years ago Family court records indicate Therese believed Andrew hiding assets ($76,000) while pleading poverty, visiting girlfriend in Bahamas is a Citizen of Belize not U.S;

National Search completed 6/26/02   $15.00      (29 pages)
In house report                                 (4 pages)

Suggested Action: Set depositions. Decide whether to set
                  both debtors at present or 1 at a time;
                  Verify numerous addresses;
                  Get approval to do search in Bahamas

Has Assignment been recorded?
Has Judgment lien been filed?

**Brancaccio, Carmine**                                          **$24,127.86**
                                                                 **8/8/87 Judgment**

He owns real property with his wife which is vacant land currently being developed; another property in name of a Carmine "G" Brancaccio co-owned with Paulette Brancaccio which we cannot at present know if same family or not; Another property was transferred out of Carmine and wife's names and into Wife of Carmine and a James Lutz.Too much real property ownership and transfers thereof to ignore the possibility of fraudulent transfers. Numerous Vehicle ownership; History of arrest and conviction on Aggravated Assault with weapon...

National Searches completed 6/27/02        $15.00      (54 pages)
In house report                                        (4 pages)

Suggested Action: Schedule depostions immediately;
                  Continue with license, etc inquiry
Record Assignment          $15.00
File Judgment Lien         $20.00

1

**PC0161**

**Butler, Clifford Jr.**                                   $24,317.31
                                                          4/29/91

He curently owns Opa Locka real property;
Vehicles: 2000 Ford Ranger, 1990 Lincoln Towncar
          And possibly others in name of Clifford J Butler (no jr)
          2 other vehicles under Clifford J. Butler or Diana
          Crosby Assam: 2002 Chevy & 1997 Monte Carlo
          These appear to be registered at his home address.
Was employed by Dade School Board 1993 - 1998 when he
resigned as materials handler.  Appears he obtained loans on
basis of getting school board contracts which never came to
fruition.

National Search completed 6/27/02   $15.00        (31 pages)
In house report                                   (3 pages)

Suggested Action: Schedule deposition immediately;
                  Complete inquiries as to licenses,
                  Subpoena Homeside Lending Mortgage
                  Application

Record Assignment    $15.00
File Judgment Lien    $30.00


**Cabanas, Carlos, Jr.**                             $46,538.09
                                                    **To be confirmed**
                                                    **$25,075 (9/1/99)**

Real property transferred to Wife in 1999 by Quit Claim Deed
Additional research needed to ascertain hidden assets, as well
as license inquiries due to his type of business.
Records production stops in May, 2000.

National Search completed 6/26/02   $15.00        (34 pages)
In house report in progress                       (2+pages)

Suggested Action: Complete research; verify addresses;
                  Licenses inquiry;
                  Set deposition within 10-15 days

Record Assignment of Summary Final Judgment    $10.50
File Judgment Lien                             $20.00


2

**PC0160**

**Chaka, Kiambu a/k/a Albert Jackson**                    **$159,458.72**
**Chaka, Idella, a/k/a Idella Jackson**                   **8/2/87 Judgment**

Comparison of current searches to 11/28/00 and 5/24/01
reveals further in-depth inquiry required; real property
at S W 263rd Terrace owned by Kiambu Chaka with
Delinquent taxes of $5,332.43; Additional alias' noted;
1 vehicle registered to Kiambu; Judgment lien valid

National Searches completed 6/27/02    $60.00    (40 pages)
In House report                                  (3+pages)

Suggested Action: Schedule depositions immediately
Continue additional real property verification;
Inquire with family court files; vertify addresses (7);
Licenses and corporate inquiry

Has Assignment been recorded?
Has Judgment Lien been filed?

**Gipson, Lenear L.**                                     **$6,849.63**
**Gipson, Sylvia F.**                                     **8/11/97 Judgment**

Sylvia is registed agent and director of Active Fla corporation started 7/01
and address listed is personally co-owned; Verified gainful employment
with the US Postal Service, Confirmed $42,635 annual base salary;
She owns 1984 Volvo, a Chevrolet and a Mercry; no BKC;
3 corporation searches; 1 Georgia real property;
1 Florida real property;
Confirmed that Lenear no longer employed by UPS;
2 vehicles registered in his name; no BKC; has a criminal record.

Suggested Action:  Depositions strongly suggested immediately
                   Garnishment on her.    $137.00 filing fees

National Serarches completed    6/26/02    $45.00 (70 pages)
In house report                                   (4 pages)

Has Assignment been recorded?
Has Judgment lien been filed?

3

**PC0159**

**Grilla, Louis**                                   $12,862.75
**Edelstein, Harold MK**                            3/31/87

Grilla. Years ago file indicates possible transfer of assets to Grilla's
parents. Same address currently shows up on debtor Grilla's driver's
license no, issued 2002 till 2008.(wrong address and incomplete
Folio # given to bank years ago).Current owners: Giovanna Grilla and Maria
Milian 12 corporate inquiries reveal no current activity; No Fla BKC records;
Also years ago, garnishment for wages on Home Emergency Services
Edelstein. Possible death claim for him SSI 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
Dade Medical Examiner has no information on name this SSI
Vital Records also denied any records, verbally.
Some information as to Ruth using this social and a death claim
More background research needed to be done

National Searches completed 7/15/02      $30.00      (68 pages)
In house report                                      (7 pages)

Suggested Action: Set Grilla for Deposition immediately
                  Research add'l leads on Edelstein

Has Assignment been recorded?
Has Judgment lien been filed?

**Hardee, Jack**                                    $26,899.06
**Redlands Air Conditioning**                       4/27/89 Judgment

Professional licenses searched: Commerical Pilot license with FAA,
Insurance broker, Securities and Exchange license with NASD, Florida
Mortgage Broker, Florida Real Estate Broker, retired US Air Force
Colonel (may have bank account with USAA in Texas); No BKC filed;
6 real estate records checked, 2 satisfied judgment liens with MacDill
Federal Credit Union in Hillsborough County, Real property in name of
His wife and 2002 Ford in his and wife's name; 6 Corporation checks.
Shining Star Productions:3 listed, 2 inactive-1 of which was Hardee,
Other inactive a possible relative (Neil) showing as on Statewide
Statewide Properties:RA &PTS dissolved 2000

National Search completed 6/26/02   $15.00    (61 pages)
In-house report completed 7/24/02             (6 pages)

Suggested Action: Set deposition immediately;
Do searches on Corporate FEINs & numerous address verifications

Record Assignment of Judgment      $15.00
File Judgment Lien with Sec. State $20.00

4

**Jeni L. Herman-Jayson**                                  $17,582.17
                                                          11/30/89 Judgment

> She has altered the name she uses and has nothing in her name
> except co-ownership of real estate with husband; They sold Dade
> County Condo in 1996 and bought a Broward Home same time.
> Perhaps her change of name precluded lien revelation?

> Suggested Action: Schedule deposition immediately.

> National Searches completed 7/22/02       $30.00      (47 pages)
> In House report completed 7/21/02                     (3 pages)

> Has Assignment been recorded?
> Has Lien been filed?

**Kenworthy, Thomas**                                      $15,148.62
                                                          7/8/86 Judgment

> He has been in jail and is no longer a member of the Florida Bar.
> On probation for 4 years, ending 1995, for fraud, grand theft, etc.,
> Current security officer license; Since he's out of jail he may
> be working in some non professional role in legal work.
> No real estate found to date, 2 more checks to be done;
> 1986 deposition revealed no home ownership, rented;
> No stocks, bonds, mutuals, older autos no real value,
> Sailboat over financed.
> Home, numerous autos and 2 boats in name of Jr.;

> National Search completed 6/27/02   $15.00    (49 pages)
> In house report                               (7 pages)

> Suggested Action:   Schedule Deposition;
>                     Pursue real estate inquiry

> Has Assignment been recorded?
> Has Judgment lien been filed?

5

**PC0157**

**Lioy, Antonio**                                    $54,437.24
                                                     10/24/88 judgment

This one is difficult as he has nearly disappeared. He has
effectively transferred his ownership in corporations with
occupational licenses that matched Beverage licenses.
No Dade county real property ownership; no Fla BKC;
No professional licenses; no criminal history;
European Bakery, Inc. no licenses showing;

National Searches completed        6/26/02      $30.00
In House report completed                       (4 pages)

Suggested Action: Subpoena Beverage License records
                  Including financial data re: transfers;
                  Subpoena possible INS records

Record Assignment                  $15.00
File Judgment Lien                 $20.00


**Mangue, Michael B. individually**                  $51,239.39
**& as Trustee, Supernet Online, Inc.**              12/19/00

We obtained this judgment by serving through Publication
as his listed address was foreclosed on; 2 alternate possible
Addresses were unsuccessful. Current national search matches
Exactly the 6/22/01 national search we conducted. Debtor
Appears to have effectively relocated. More research will
Need to be done.

National Search completed 7/11/02          (11 pages)
In house report                            (5 pages)

Suggested Action: Additional inquiry before any action

Has Assignment been recorded?
Has Judgment lien been filed?

**PC0156**

**Mazon, Domingo**
**Mazon, Maria**
**M & R Laztin American, Inc.**

**$130,612.49**
**6/18/89 Judgment**

> After BKC, wherein this debt survived due to fraud,
> Domingo Mazon took title 5/26/99 to a 1989 Cadillac
> And Maria C. Mazon appears to have purchased
> Residence at 158th Avenue 9/2000. Searches on 9
> remaining potential real properties in progress as
> well as 9 corporate leads, however inactive

> National Searches completed 6/26/02    $30.00    (50 pages)
> In House report in progress    (4+pages)

> Suggested Action: Set depositions immediately
>        Complete diligence on properties,
>        a/k/a names for both debtors;

> Has Assignment been recorded?
> Has Judgment Lien been filed?

**Martinez, Hiram**

**$86,072.45**
**2/20/87 Judgment**

> Not much indicated upon file review,
> 1987 deposition indicated unemployed
> and severe financial losses & foreclosure;
> 1986 financial statement idicated net worth
> of $3.7 million, real property equity; Current
> handicap parking permit, Possible INS records;
> $1,033 judgment lien, Dade County

> National Search completed    6/26/02    $15.00    (44 pages)
> In house report    ( 3 pages)

> Suggested Action: Schedule deposition immediately.
>        Complete inquiry as to real property,
>        Licenses, and inactive corporations
>        Need license inquiry
>        Property and corporation license

> Assignment recorded?
> Has Judgment Lien been filed?

**PC0155**

**Moreno, Cesar G.**　　　　　　　　　　　　　　　**$79,874.11**
**Grove Enterprises, Inc.**　　　　　　　　　　　　**7/25/00 Judgment**

> 2 vehicles in his name registered in Davie address
> Owned by relative who was a VP on one of Cesar's
> Corporations, now inactive however;
> Mo & D Trading is active, Cesar is RA& a Director
> Other 2 directors' names have doctor occupationals
> In Dade County, not sure if same; New York address;

> National Searches completed 6/26/02　　　$15.00　　　( 26 pages)
> In House report　　　　　　　　　　　　　　　　　　　( 3+ pages)

> Suggested Action: Set deposition immediately
> 　　　　　　　　　Additional research on NY assets,
> 　　　　　　　　　Florida property, licenses;
> 　　　　　　　　　(Pull Hugo Moreno collection file from archives)

> Record Assignment of Judgment　　　$19.50
> File Judgment Lien　　　　　　　　　　$25.00

**Ramos, Richard**　　　　　　　　　　　　　　　　**$39,809.14**
**Ramdata Inc.**　　　　　　　　　　　　　　　　　**7/29/99 Judgment**

> Our only recourse seems to be that we pursue collection efforts
> solely as to Ramdata, Inc. and its assets. He owns home which is
> the last address shown on report and is the same address whereby
> we were attempting to Serve a Rule to Show Cause just
> before he filed for BKC; Active corporation with his and wife's
> Addresses indicated, possible other corporation

> National Searches completed 6/27/02　　　$15.00　　　(35 pages)
> In House report　　　　　　　　　　　　　　　　　　(3+pages)

> Suggested Action: Complete research on 6 real properties,
> 　　　　　　　　　Verify corporate inquiries and licenses
> 　　　　　　　　　Inquiry pertinent.  Schedule
> 　　　　　　　　　Deposition within 15 days

> Has Assignment been recorded?
> Has Judgment Lien been filed?

8

**PC0154**

**Rios, Ricardo**                                                 **$33,775.05**
**Rios, Ben**                                                     **11/27/84 Judgment**

      On Rios, 10 possible property addresses to
      Complete research on; 2 possible on Gross
      No BKC on either in Florida, SS and name
      License searches in process;
      Death claim alert for Gross, no location,
      Initial inquiry on this reveals no record locally.
      1989 attempted service of process indicated Gross
      Moved to Boca Raton after selling home.
      Possible out of state property; No active corporate
      Activity records on Rios or Gross so far

      National Searches completed 6/27/02    $45.00    (30 pages)
      In House report in progress                          (4+ pages)

      Suggested Action: Complete research to determine if
                    Whereabouts can be determined
                    (Nearly 20 years on the judgment)

      Has Assignment been recorded?
      Has Judgment Lien been filed?

**Wisteria Branch**                                              **$89,903.47**
**Gerald, William E.**                                           **2/2/01 Judgment**

      Possible real property ownership of vacant lot in Florida
      Louisiana Folio # obtained; numerous vehicles;
      No Fla or Louisiana BKC on file; License inquiries
      reveal no records as yet;

      National Search completed 6/27/02    $15.00    ( 32 pages)
      In House report                                    ( 4 pages)

      Suggested Action: Schedule deposition immediately
                    Research employment;
                    Obtain Louisiana property records;

      Record Assignment        $10.50
      File Judgment Lien       $20.00

**PC0153**

LAW OFFICES OF KRIS E. PENZELL, P.A., 407 LINCOLN ROAD, SUITE 10-D, MIAMI BEACH, FLORIDA 33139 • (305) 531-3000

**Ward, James E.**                                              **$61,593.26**
**Metropolitan Industries**                              **10/23/88 Judgment**

2 active corporations; Vasquez-Ward is RA and Pres.of Perfect Painters Group, Inc. (James Ward Not on officer/director list however address of Corporation is in care of him and his address); Perfect Painters Enterprises Inc., 5/3/01 incorporated With James Ward RA and President Ward's address; 1-2 vehicles; 2 real estate properties showing; criminal record, narcotics and trafficking; His tax returns for 1999 and 2000 require explanation on his part as wife taking in the income for painting businesses; No Fla BKC; life insurance and investments indicated..

National Search completed    6/27/02      $15.00    (56 pages)
In House report                                                          (4+ pages)

Suggested Action: Schedule deposition immediately;
                          Determine if subpoeanas appropriate;
                          6 additional property inquiries;
                          License and NY asset inquiries

Has Assignment been recorded?
Has Judgment Lien been filed?

**West, Gary E.**                                              **$300,225.39**
**West, Jennair A.**                                        **10/2/87 Judgment**

7/15/2002 inquiry with Clerk of Court, Lehigh County, PA revealed Non Pros Judgment 1994 Against Gary West, no dollar amount, case active;No BKC in Florida nor Pennsylvania on either Def. Appear to use falsified addresses on Driver Licenses Jennair corporately active, also active notary license, vehicle in WPB; Nothing active on 15 corporate checks on Gary; Prior file research indicates huge debts and judgments already being formed at the time of funding of the loan. Appear to be back in West Palm Beach.

National Searches completed 7/1/202    $30.00    (61 pages)
In house report                                                          (7 pages)

Suggested Action: Verify Addresses; Complete additional inquiry including possible developer Relationship in WPB

Has Assignment been recorded?
Has Judgment lien been filed?

10

**PC0152**

EX. C

LAW OFFICES

# KRIS E. PENZELL
PROFESSIONAL ASSOCIATION
407 LINCOLN ROAD
SUITE 10-D
MIAMI BEACH, FLORIDA 33139

KRIS E. PENZELL

TELEPHONE (305) 531-3000
FACSIMILE (305) 531-5175

June 21, 2001

Nationsbank, N.A.
101 N. Tryon Street, 7th Floor
NC1-001-07-06
Charlotte, NC  28255

Attention:   Kim Blackwelder
             Bank Officer

        Re:  Barnett Bank v. Velma's Golden Needle Inc./Clifford and Velma Butler
             Case No. 91-05846

Dear Kim:

This is to advise that the referenced matter has been considered a no asset case. In that regard, enclosed please find copies of the following:

    1. Final Judgment dated April 29, 1991, re-recorded June 1, 2001 in Official Records Book 19695, Page 1265, Dade County, Florida.

    2. Execution filed with the Dade County Sheriff's office dated May 24, 1991.

If you have any questions or desire additional information, kindly advise.

                                Yours truly,

                                VICTOR K. RONES

VKR:bj
Enclosures