UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. 03-CV-12497

| | |
|---|---|
| PREMIER CAPITAL, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BEVERLY JOHNSON PENZELL, | ) |
| d/b/a Law Office of Kris E. Penzell | ) |
| and BEVERLY JOHNSON | ) |
| PENZELL, as Personal | ) |
| Representative of the Estate of | ) |
| Kris E. Penzell | ) |
| | ) |
| Defendants. | ) |

## OPPOSITION OF BEVERLY JOHNSON PENZELL, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF KRIS E. PENZELL, TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

Beverly Johnson Penzell, as personal representative of the estate of Kris E. Penzell ("Penzell") opposes the motion of the Plaintiff, Premier Capital, LLC ("Premier") to amend the complaint and add additional defendants Susan I. Noe ("Noe") and Victor K. Rones ("Rones"). As grounds for her opposition, Penzell states:

1.     The proposed amended complaint fails to state a cause of action against either Noe and Rones. Neither one of them were parties to the agreement at issue between Kris Penzell and Premier's predecessor in interest, Bank of America. In addition, the Probate Court in Florida has **already** ruled that neither Mr. Rones nor Ms. Noe, on behalf of themselves, the estate of Kris Evan Penzell or Kris Evan Penzell, P.A, ever entered into a written agreement or otherwise agreed to provide legal services to Premier, the Plaintiff. Moreover, the Florida

Court specifically retained jurisdiction over the matter.  This Court should respect the ruling of the Florida Probate Court which forecloses any alleged claim by Premier that Rones and Noe negligently provided legal services to Premier.  As there is no basis for an attorney/client relationship between Premier and either Rones or Noe, the amended complaint fails to state a cause of action against these defendants and the amendment should therefore be denied.

2.     The Motion to Amend should be denied because it is based upon an affidavit which contains several false statements demonstrating the plaintiff's bad faith in seeking to expand this vexacious litigation.

3.     The motion is untimely.  Premier has long known of the "facts" giving rise to the motion, but it has done nothing for over one year to bring in additional parties.  The discovery deadline is four months away; Premier has conducted no discovery; Premier obviously hopes the new defendants will move to extend the discovery deadline.

4.     Allowance of the motion will create a substantial hardship and prejudice to Penzell, who will have to seek and retain another inventory attorney for the Law Office of Kris E. Penzell, P.A. ("the P.A.") under Florida law.  Due to this lawsuit Penzell is prevented from closing the estate and shutting down the P.A. since Florida law requires the P.A. to remain in existence until all claims against it have been finally resolved.  It is manifestly unjust to require Penzell to endure the expense and hardship of retaining another inventory attorney for the **sole** reason that Premier wishes to add Noe and Rones as defendants in this lawsuit. Particularly since the request to amend the complaint is based upon false statements, the court should not allow the amendment to the prejudice of Penzell.

ID # 420457v01/10105-40/ 02.03.2005

5.      In support of this opposition, Penzell submits the Affidavit of Catherine J. Savoie and the Affidavit of Beverly J. Penzell, as  Personal Representative of the Estate of Kris E. Penzell.

## ARGUMENT

### I.      The Proposed Amended Complaint Fails To State A Claim Against Either Noe or Rones.

The amended complaint is essentially a claim for attorney malpractice against the inventory attorneys, Susan Noe and Victor Rones.  In order to prevail in an attorney malpractice claim in Massachusetts, a plaintiff must prove: (1) that the attorney agreed to represent the plaintiff with respect to each specific act which the plaintiff claims was performed negligently; (2) that the attorney provided advice or services in the course of the agreed representation which did not meet the appropriate standard of care and skill; (3) that the plaintiff relied upon the advice of the attorney in selecting a course of action; (4) that the plaintiff incurred a loss; and (5) that the attorney's negligence was the proximate cause of that loss.  McLellan v. Fuller, 226 Mass. 374, 376-377 (1917); Colucci v. Rosen, Goldberg, Slavet, Levinson and Wekstein, P.C., 25 Mass. App. 107, 111 (1987); DiPiero v. Goodman, 14 Mass. App. 929 (1982).  Premier has utterly failed to allege that either Noe or Rones agreed to represent Premier with respect to the specific acts which premier claims were performed negligently.  Premier never alleges, nor can it, that Rones and Noe are parties to the contingent fee agreement between Premier's predecessor, Bank of America and the Penzell law office.  In addition, the Probate Florida Court has already ruled that neither Noe or Rones ever entered into a written agreement or otherwise agreed to provide legal services to Premier.  (Savoie Affd., Ex. D, ¶ 3)  The Florida Court also expressly retained jurisdiction over this matter.  (Savoie Affd., Ex. D, ¶ 6)  If the decision of the

3

Florida Court is respected, then Premier's complaint fails as a matter of law, as Premier will be unable to establish that either Noe or Rones agreed to represent Premier with respect to the acts which Premier claims negligently caused Premier damages.

The question whether an attorney owes a duty of care to a plaintiff under the particular circumstances of a case is a question of law for the court, not a question of fact.  DaRoza v. Arter, 416 Mass. 377, 381-382 (1993); Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1989).  As a review of the Massachusetts decisions reveals, Massachusetts courts are extremely reluctant to find a duty running from an attorney to a person or persons other than the individual or entity with whom the attorney contracted to provide services.  Massachusetts courts have rejected liability to non-clients in an unbroken string of cases arising in a variety of different contexts:  Symmons v. O'Keefe 419 Mass. 288 (1995) (attorney for trustee owes no duty to beneficiaries); DaRoza v. Arter 416 Mass. 377 (1993) (attorney pursuing subrogration claim owes no duty to subrogee); Robertson v. Gaston Snow & Ely Bartlett 404 Mass. 515 (1989) (attorney for corporation owes no duty to shareholders); Van Brode Group, Inc. v. Bowditch & Dewey 36 Mass. App. Ct. 509 (1994) (attorney for subsidiary owes no duty to corporate parent).  Indeed, although the Supreme Judicial Court  in *dicta* has suggested that it might recognize a duty to a non-client in an appropriate situation, there is no case in which such a duty has been imposed.

In this case, in its proposed amended complaint, Premier does not allege that either Noe or Rones agreed to represent Premier with respect to any act or omission resulting in damage to Premier.  Nor is Premier in a position to make or support such an allegation since the Probate Court in Florida has already ruled in a proceeding in which Premier appeared, that neither Rones nor Noe ever agreed to provide legal services to Premier.  In the absence of an agreement

4

between an attorney and a client whereby the attorney expressly or impliedly agrees to give or actually gives advice or assistance to the client, there can be no attorney client relationship express or implied.  DeVaux v. American Home Assurance Co., 387 Mass. 814, 817-818 (1983).

Since neither Noe or Rones are parties to the contingent fee agreement and the Probate Florida Court has already determined that neither one ever agreed to provide legal services to Premier, there can be no basis for attorney malpractice liability on behalf of the inventory attorneys to the Plaintiff, Premier.  For these reasons, the proposed amendments to the Complaint are futile as they would fail to state a cause of action against the inventory attorneys and, in any event, are precluded by the Florida Probate Court order.

II.     **The Motion To Amend The Complaint Is Based On Numerous False Statements Both In The Motion And In The Supporting Affidavit Of Richard Gleicher And Such False Statements Should Not Be Rewarded By The Court's Allowance Of The Motion**

Throughout Premier's motion, and the affidavit of its principal, Richard Gleicher ("Gleicher"), Premier and Gleicher contend that Premier first heard that an inventory attorney was appointed by the Florida Probate Court to oversee the winding down of  the P.A. in November, 2004 in connection with Gleicher's deposition.  Gleicher stated in his affidavit, paragraph 16, that in November, 2004 during and immediately subsequent to his deposition, Premier learned for the first time that Rones and Noe were successive, court appointed "inventory attorneys" respecting Kris E. Penzell's law practice.  (Gleicher affidavit, ¶16). Similarly, in its motion, Premier argues that, until the late Fall of 2004, it had no idea that Ms. Noe or Mr. Rones were serving as inventory attorneys for the Law Offices of Kris E. Penzell (Motion to Amend Complaint of Plaintiff Premier Capital, LLC ¶ 6-7.)  Notwithstanding these

5

averments, nearly one year ago in February of 2004, Beverly Penzell filed an affidavit in this

case in which she explained as follows:

> "The probate matter involving (my husband's) estate, for which I am serving as the
> personal representative, is currently pending in the 11[th] Judicial Circuit of Florida, Miami
> Dade County.  In conjunction with Probate Matter, an administrative judge appointed an
> "inventory attorney" to oversee the winding down of the law firm." . . .

> "Under the direction of the Court appointed inventory attorney, I have assisted in the
> winding down of my husband's law firm."

(Affidavit of Beverly Johnson Penzell in support of her Motion to Dismiss, ¶¶ 10-11)

In addition, on June 21, 2004 Penzell's attorney sent an e-mail to Premier's attorney, stating:

> "Penzell's inventory attorney performed one discrete task on an emergency basis at
> Premier's insistence, but this did not create an attorney/client relating of a general nature
> . . ."

(Savoie Affd., Ex. B)

Clearly, Premier knew of the fact that there was an inventory attorney involved in

winding down the estate of Kris Penzell as early as February, 2004, and was again reminded of it

in June, 2004.  Yet, in Premier's motion and the affidavit of its principal it pretends not to know

that an inventory attorney had been appointed to handle the affairs of the Law Office of Kris E.

Penzell, P.A. until November, 2004.  The fact that the inventory attorneys were not specifically

identified in Ms. Penzell's affidavit does not excuse Premier's blatant statements and Gleicher's

sworn testimony that, until late Fall of 2004, neither Premier nor Gleicher had knowledge of an

inventory attorney.  The identity of the inventory attorneys should have been obvious to Premier

and, in any event, Premier took no discovery as to this or any other issue in the case.

Premier and Gleicher also misrepresented when they first learned of the fact that Ms.

Penzell was asserting a lien on the files.  In his affidavit, Gleicher swears that when Ms. Noe

filed a motion in November 2004 with the Probate Florida Court in which she sought the Court's

6

guidance in light of Ms. Penzell's alleged attorneys' liens on the files, this "was the first written indication Premier ever received that Ms. Penzell asserted a lien on the files." (Gleicher Aff. ¶ 18). Again, the statement is false. Premier was informed at least by March 31, 2004, ten months ago, that Ms. Penzell was asserting a retaining lien pending payment to the Law Offices of Kris E. Penzell, P.A. of monies owed to it by Premier with regard to the files at issue. Penzell's attorney, Catherine Savoie, wrote to Thomas J. Morrisey, Premier's attorney on March 31, 2004. As follows:

> "You apparently are not aware that under Florida law there exists an attorney's retaining lien on a client's papers and files which is a possesory lien that an attorney holds until an attorney's fee has been paid or into adequate security for payment of an attorney's fees owed has been posted. This is well established law in Florida.
>
> To date, Ms. Penzell has been exercising, on behalf of her husband's estate an attorney's retaining lien pending payment to the Law Office of Kris E. Penzell, P.A. of monies owed to it with regard to the files at issue.

(Savoie Aff., Ex. A.)

Gleicher also falsely states that at no time has the Penzell Law Office submitted to Premier a written demand for payment of purported due and owing legal fees and that Premier has no notice of what amount, if any, Ms. Penzell claims in this case is owed to her by Premier. (Gleicher Aff., ¶ 10). Again, directly contrary to Gleicher's averments, on September 15, 2004, Penzell's attorney, Catherine Savoie wrote to Thomas Morrisey, Premier's attorneys making demand on Premier for the fair and reasonable value of legal services on files which have gone to judgment and which have not been collected in the amount of $60,000 and miscellaneous expenses and disbursements in the amount of $10,000. (See Savoie Aff., Ex. C).

Clearly, Premier is attempting to seek the Court's allowance of an amended complaint on the basis of allegations which are false. Premier is pretending that it didn't know the role of

7

an inventory attorney with regard to the Estate of Kris Penzell, that it didn't know that Beverly

Penzell was asserting an attorney's lien against the files at issue in this case and that Penzell

never made a written demand for monies owed to the Penzell law office by Premier.  All of these

statements, which are the themes of Premier's motion, are false.  Premier should not be rewarded

with allowance of a motion based on a false affidavit and false statements in the motion.

### III.        Premier's Motion Is Untimely As It Has Long Known Of The Role Of The Inventory Attorneys, The Retaining Lien And Penzell's Claim For Payment Under The Contingent Fee Agreement.

Although Premier pretends to have just learned of the role of the inventory attorney, the

fact that Penzell was asserting a retaining lien against the files and Penzell's claim for legal fees

under the contingent fee agreement, as demonstrated above, Premier has known these facts for at

least ten months, or longer.  During that time, at least four days of depositions have occurred;

the Rule 16 conference has occurred; and the parties are now facing a discovery deadline of May

31, 2005.  It is manifestly unjust and prejudicial to sit on information for nearly a year and then

seek to add new parties to the litigation four months before the discovery deadlines expire.  Yet,

that is precisely what Premier is attempting to do through its motion.  Premier itself has

conducted no discovery.  A party should not be allowed to (a) conduct no discovery; (b) then

wait over one year to add additional defendants; (c) file a motion and affidavit containing false

statements pretending to have just "discovered" key facts which were known long ago; and (d)

be rewarded with allowance of its manipulation of the rules.

### IV.        Allowance of the Motion will create a substantial hardship and prejudice to Penzell.

Under Florida law, Penzell is required to maintain the existence of the P.A. as long as

there are any claims pending against it.  (Penzell Affd., ¶ 2).  In a situation where a sole

8

practitioner is deceased, Florida requires appointment of an inventory attorney. (Penzell Affd. ¶ 3).  If  Noe is allowed to be sued because of her role as inventory attorney, she will no longer be able to represent the P.A. as its inventory attorney and will have to resign, forcing Penzell to endure the hardship and expense of securing another inventory attorney. (Penzell Affd., ¶ 4). This is the <u>only</u> claim against the P.A. (Penzell Affd., ¶ 2).  The <u>only</u> reason the P.A. is required to continue in existence is due to this lawsuit.  (Penzell Affd., ¶ 2).  Premier should not be permitted to expand this lawsuit on the basis of false allegations, thereby creating a situation which will require Penzell to retain a successor inventory attorney.

## CONCLUSION

For the above reasons, Beverly J. Penzell, as Personal Representative of the Estate of Kris E. Penzell, respectfully requests the Court **deny** Premier's Motion to Amend the Complaint.

Dated: February 3, 2005                    Respectfully submitted,

                                           BEVERLY JOHNSON PENZELL,
                                           By her attorneys,

                                           /s/ Catherine J. Savoie_____
                                           Catherine J. Savoie, BBO# 544599
                                           Julie C. Easter, BBO# 657817
                                           POSTERNAK, BLANKSTEIN & LUND, L.L.P.
                                           Prudential Tower
                                           800 Boylston Street
                                           Boston, MA  02199-8004
                                           617.973.6100

9

10