UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. 03-CV-12497

| | |
|---|---|
| PREMIER CAPITAL, LLC | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BEVERLY JOHNSON PENZELL, | ) |
| d/b/a Law Office of Kris E. Penzell | ) |
| and BEVERLY JOHNSON | ) |
| PENZELL, as Personal | ) |
| Representative of the Estate of | ) |
| Kris E. Penzell | ) |
|     Defendants. | ) |

## MEMORANDUM IN SUPPORT OF
## DEFENDANT BEVERLY JOHNSON PENZELL'S
## MOTION TO COMPEL

The Defendant, Beverly Johnson Penzell ("Ms. Penzell") moves, pursuant to Fed.R.Civ.P. 26 and 37(a), for an order compelling Premier Capital, LLC ("Premier") to disclose information related to Premier's purchase of a pool of 84 judgments from the Bank of America in November 2001. Premier has brought a claim for conversion against Ms. Penzell alleging that she converted to her own use legal files related to 19 of the judgments Premier purchased from the Bank of America. Premier has asserted this claim despite the fact that it was a client of the Law Office of Kris Penzell ("Penzell Law Office"). Premier's sole claim to the files in question is that it purchased the underlying judgments from Bank of America, which was formerly a client of the Penzell Law Office. The value of the items Premier alleges were converted is directly relevant to Premier's claim and Ms. Penzell's defense in this case. Counsel for Ms. Penzell has,

in good faith, conferred with counsel for Premier and repeatedly requested that Premier disclose the amount it paid for the judgments. Premier has refused to produce the same.

## FACTS

In the Complaint Premier alleges that Ms. Penzell converted to her own use chattel paper allegedly belonging to Premier. The chattel paper consists of approximately 19 legal files associated with judgments[1] obtained by Ms. Penzell's deceased husband, Kris E. Penzell, who was formerly a collections attorney in Miami, Florida. In November 2001, Premier purchased a pool of 84 judgments from the Bank of America. Among the pool of judgments purchased, were 19 judgments obtained by the Penzell Law Office on behalf of Nationsbank, a predecessor to the Bank of America.

The judgments at issue were obtained against asset-less debtors and despite attempts to collect on the judgments, Kris Penzell was unsuccessful in identifying assets to satisfy the 19 judgments prior to his death. After purchasing the judgments in question, Premier initially attempted to settle these cases by communicating directly with the debtors.[2] When Premier's own collection efforts failed, Premier then attempted to refer the collection matters to the Penzell Law Office to perform collection activity. Attached as Exhibit C is a representative example of Premier's efforts to obtain collection work from the Penzell Law Office in 2002. (Referral from Maimonis to Penzell Law Office dated April 26, 2002).

However, in attempting to refer the matters to the Penzell Law Office, Premier insisted that it would only pay 25% on amounts collected, as opposed to the 30% contingency fee which the law office had negotiated with Nationsbank in 1998 and which Premier was subject to

---

[1] Many of the judgments dates back to the early 1980s.
[2] See Exhibit A, Letter from Premier to Domingo Mazon offering to settle case for $60,000 where underlying judgments at issue were $85,827.08 and $195,000; Exhibit B, Letter from Premier to Maria Mazon offering to settle case for $50,000 where underlying judgments at issue were $57,299.95 and $130,612.49.

2

through under the terms of the purchase and sale agreement[3] with the Bank of America. See Exhibit C, Premier Capital Referral Form (indicating "LEGAL FEE STRUCTURE: 25% contingency plus court costs"); Exhibit E, Letter from Beverly J. Penzell, P.R. to Nick Maimonis dated January 3, 2003 ("You verbally agreed to owing Kris E. Penzell, P.A., contingency fees upon any recovery however you wanted to reduce the amount from 30% to 25%.")

After much discussion in 2002 and 2003, the parties were unable to work out an agreement for collection work on the judgments, and in June 2003 Premier demanded that the Penzell Law Office copy its files and produce the work product contained therein to Premier. See Exhibit F, Letter from Thomas J. Morrissey to Beverly J. Penzell dated June 4, 2003. As Personal Representative of the Estate of Kris Penzell, Ms. Penzell, pursuant to Florida law, asserted an attorneys' retaining lien on the files in question for unpaid fees on the files. Generally speaking, the fees sought were associated with work performed by Kris Penzell in reducing the matters to judgment and attempting to collect thereon prior to his death. See id. at 1.

On August 21, 2003, Premier filed a two-count complaint against Beverly J. Penzell d/b/a as the Law Offices of Kris E. Penzell and Beverly Johnson Penzell in her capacity as the Personal Representative of the Estate of Kris E. Penzell. Count I alleges:

> "14.    Beverly Johnson Penzell converted to her own use, and/or for use in connection with the estate of Kris E. Penzell, Premier's case files and other litigation materials belonging to Premier.
>
> 15.    Upon information and belief, Beverly Johnson Penzell seeks to convert to her own use, and/or for use in connection with the estate of Kris E. Penzell, as purported

---

[3] The purchase and sale agreement is attached as Exhibit D and has been submitted under seal as counsel for Ms. Penzell understands that the terms of the agreement are subject to a purported confidentiality provision between Premier and Bank of America. Should this Court order the production of the materials request, Ms. Penzell would use the materials only in connection with this litigation and agree to enter a confidentiality agreement for the purpose of the use of such materials during the litigation.

3

legal fees, moneys [sic] received from litigants in connection with such files and materials."

Count II alleges that Ms. Penzell's conduct "including, but not limited to, her refusal to return the collection matters, constitute unfair or deceptive acts or practices within the meaning of M.G.L. c. 93A, Sections 2 and 11." Complaint at ¶¶ 14-15.

Ultimately, the inventory attorneys for the Estate of Kris Penzell requested permission to produce copies of the Penzell Law Office's files related to the 19 judgments to Premier, which permission was granted by a Florida probate court in December 2004. See Exhibit G, Order of 11th Judicial Circuit in and for Miami-Dade County, Florida. Copies of the Penzell Law Office's files were produced immediately thereafter in December 2004.

Ms. Penzell now seeks discovery from Premier regarding what it paid for the pool of judgments that includes the 19 judgments at issue in this case, when it purchased the judgments from the Bank of America in November 2001. The requested information is relevant to the purported value of the judgments in question and for the reasons set forth below, Premier should be required to produce the information.

> I.  **DISCOVERY AS TO THE PURCHASE PRICE OF THE JUDGMENTS IS REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF THE VALUE OF THE ALLEGED CHATTEL PAPER.**

Under Massachusetts law, a plaintiff asserting a claim of conversion must show that: (1) the defendant intentionally and wrongfully exercised control or dominion over personal property; (2) that plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused. See Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 806 F.Supp. 291, 296-97 (D.Mass.1992)

4

Damages in conversion cases are measured by the value of the goods at the time of the conversion.  See <u>Welch v. Kosasky</u>, 24 Mass.App.Ct. 402, 404 (1987) (citing <u>George v. Coolidge Bank & Trust Co.</u>, 360 Mass. 635, 640-43 (1971)).  Certainly the amount Premier paid for the larger group of judgments, a year and a half prior to the alleged conversion, is relevant to determining what the chattel paper allegedly converted was worth.  At very least the request for the information is reasonably calculated to lead to the discovery of admissible evidence and as such, Premier should be compelled to produce the information.

For example, Premier has alleged that is has been damaged in excess of $750,000 as result of the alleged conduct.  This claim would be belied if Premier paid a fraction of this amount for the entire pool of 84 judgments, as Ms. Penzell highly suspects occurred.  It is Ms. Penzell's understanding that the 19 judgments at issue represent asset-less files that were sold as part of a larger group of judgments by Bank of America because there had been no collection activity for an extended period of time.  The likely reason for the lack of collection activity is that the judgment debtors have been and continue to be asset-less.  Indeed, Premier itself has realized that the files in question are virtually uncollectible.  During discovery Premier disclosed that it has collected a total of only $5,000 from two of the nineteen debtors.  See Exhibit H, Premier's Answers and Objections to Defendant's First Set of Interrogatories at Answer to Interrogatory No. 5, pp 10-11, 14-15. The fact is that Premier has been unable to locate any assets against which to collect, despite having access to the documents it claims were converted for the past two years and despite having purchased the 19 judgments at issue over five years ago.

The requested information is relevant to Ms. Penzell's ability to defend herself against Premier's assertions that the alleged judgments have a particular value.  Premier's claims of

5

damage are grossly exaggerated and the price Premier paid for these uncollectible judgments will likely demonstrate that Premier has not suffered damages in this case. Ms. Penzell should be permitted to discover what Premier paid for these asset-less judgments, as that information is directly relevant to whether Premier's claims are inflated, and more importantly, relevant to whether the judgments at issue have little or no value. Clearly what Bank of America and Premier mutually agreed the judgments were worth (through the sale of the pool of judgments) establishes at least a market value and this information is at very least reasonably calculated to discovering the value of the 19 judgments at issue in this case.

## CONCLUSION

Premier should be compelled to disclose all information related to its purchase of the pool of 84 judgments from the Bank of America in November 2001, as relevant to determining the value of the 19 judgments at issue in this matter. More specifically, Ms. Penzell respectfully requests an order instructing Premier to disclose all documents and information, in any form, related its purchase of the judgments from the Bank of America, including, but not limited to, all documents demonstrating the Bank of America's and/or Premier's valuation of the judgments and the price Premier paid for the pool of 84 judgments.

Respectfully submitted,

BEVERLY JOHNSON PENZELL,
By her attorneys,

__/s/ Joseph W. Corrigan_____
Catherine J. Savoie, BBO#544599
Joseph W. Corrigan, BBO#647393
POSTERNAK, BLANKSTEIN & LUND, L.L.P.
Prudential Tower
800 Boylston Street
Boston, MA 02199-8004
617.973.6100

Dated: January 12, 2007