

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PREMIER CAPITAL, LLC, | ) | Case No. 03-CV-12497 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BEVERLY JOHNSON PENZELL, d/b/a, | ) | |
| | ) | |
| Defendant. | ) | |

SUPPLEMENTARY ANSWERS AND OBJECTIONS
OF PLAINTIFF PREMIER CAPITAL, LLC,
TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Plaintiff Premier Capital, LLC ("Premier"), by its attorneys, provides these supplementary responses to the Interrogatories of defendant Beverly Johnson Penzell ("Penzell"), pursuant to Fed. R. Civ. P. 26 and 33, without waiving:

(i) the right to object on any ground to the use of any of the following responses in any other subsequent proceeding or the trial of this or any other action;

(ii) the right to object on any ground at any time to any demand for further responses to these or any other interrogatories or any other discovery procedures involving or relating to the subject matter of these interrogatories;

(iii) the right at any time to revise, correct, add to or clarify any of the following responses.

GENERAL OBJECTIONS

1. Premier objects to each Interrogatory to the extent it seeks information which is protected by the attorney-

client privilege, the work product doctrine or which is otherwise not subject to discovery under Fed. R. Civ. P. 26.

2. Premier objects to the Interrogatories in every instance in which they seek confidential business information and trade secrets, and answer any such interrogatory only upon entry of, and in reliance upon, a protective order or confidentiality agreement.

3. No answer herein shall be deemed to constitute any agreement or admission that the subject matter of any of the Interrogatories is relevant to this action, and answers are made without waiving or intending to waive any objection, including but not limited to objections as to relevance, privilege or admissibility.

4. Premier objects to the Interrogatories to the extent that they purport to impose duties beyond the requirements of the Federal Rules of Civil Procedure.

5. Premier objects to the Interrogatories on the ground that they are vague, and therefore unduly burdensome and oppressive, with respect to their seemingly arbitrary, alternating references to "defendant" and "defendants."

6. Premier incorporates by reference its general and specific objections as set forth in its initial Answers to defendant's Interrogatories, and reserves and does not waive any and all rights it possesses under the applicable Federal Rules of Civil Procedure.

SUPPLEMENTARY ANSWERS TO INTERROGATORIES
===

1. Please identify your name, date of birth, social security number, home address, work address, home telephone number, and work telephone number.

Response: Premier objects to Interrogatory number 1 on the ground that it seeks information which is irrelevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence, in particular, without limitation, with respect to its requests for information respecting personal information such as "home address" and "home telephone number." Without waiving this objection, plaintiff responds as follows: Richard Gleicher has reviewed and signed these supplementary answers in his representative capacity as duly-authorized agent, Premier Capital, LLC, and not individually. His business address is 226 Lowell Street, Wilmington, Massachusetts 01887.

2. Please identify the full name, home and business address, date of birth and social security number of each individual who provided information used to answer these interrogatories and specify the number of the interrogatory each individual provided assistance on.

Response: Premier objects to Interrogatory number 2 on the ground that it is unduly vague, and burdensome and oppressive, with respect to its use of the phrases "provided

information" and "provided assistance on". Without waiving this objection, see the answer to Interrogatory number 1 supra. Further answering, the individuals employed by Premier whose names appear on correspondence and other documents referenced in these Answers to Interrogatories may be said to have thereby "provided assistance on" such Answers on an a priori basis.

3. Identify each person whom you intend to call as an expert witness at trial and for each such expert please state such person's name, address, professional affiliation, professional experience and qualifications. Please identify: (a) the subject matter of the testimony; (b) the substance of the facts and opinions which underlie the testimony; (c) a summary of the grounds for each opinion; and (d) all documents referred to or relied upon to form or support such opinion.

Response: Premier intends to call Richard B. Storfer, Esq., as its expert witness at the trial of this action. Premier has previously served upon defendants Mr. Storfer's Report, which sets forth the information sought in this Interrogatory. Defendants are referred to such Report.

5. Please identify each and every breach of duty which you claim on the part of the defendants [sic] and for each such breach of duty please state: (a) when it occurred; how it caused the plaintiff's [sic] damage; (c) what specific damage it caused including the dollar amount and an itemization of all components and subparts thereof.

Response: Premier incorporates by reference herein its initially-served written objections and responses to Interrogatory number 5. Further answering, Premier states

that its damages include its costs of collection, and produces herewith, as a supplement to its initial Rule 34 document production, documents from which information respecting Premier's costs of collection may be derived. Premier's attorney's fees and costs continue to mount as this litigation goes forward. Premier's damages also include damages in the form of unsatisfied judgment amounts, with respect to specific litigation matters formerly handled by the Penzell law firm.

Earlier-described breaches of legal duties proximately caused Premier damage in certain of the Florida Litigation Matters:

<u>Chaka Kiambu</u>: Premier's unsatisfied Judgment is in the amount of $64,418.85, and dated April 13, 1987; under Florida law, simple interest at the rate of 10 per cent accrues thereon, resulting in a balance as of April 28, 2005, of $181,025.79. The judgment debtor owned real property located at 12774 SW 263rd Terrace Homestead, FL, during the Retention Period, with a value of $130,000 (according to data obtained from Homeradar.com). Such realty was encumbered by mortgages in the amount of $113,823, according to credit report information. The property was refinanced in March, 2004, according to credit report data. The realty had $58,000 in equity when

5

refinanced; however, it now has only $16,177 in equity. Meanwhile, the Judgment balance, as of March 2004, was $174,054.44. Had defendant properly recorded and/or renewed Premier's Judgment lien, Premier's Judgment debt would have been paid, in whole or in part, at the time of the refinancing.

<u>Multi Care Medical</u>: Premier's 1999 Judgment is in the amount of $62,554.28. The judgment debtor held real property with a value of $320,205, according to a Florida county public website, and was encumbered by a tax lien in the amount of $55,000 (according the data provided verbally to Premier by the local Assessor's Office). The realty was further encumbered by a Mortgage in the amount of $197,600, according to credit report data, and contained equity in the amount of $67,605. Such property was sold by the debtor to a relative on August 1, 2001. The Judgment balance at the time the property was sold was $65,852.10; the current Judgment balance (as of April 28, 2005), is $88,062.86. Had defendant properly recorded and/or renewed Premier's Judgment lien, Premier's Judgment debt would have been paid, in whole or in part, at the time of the sale.

<u>James Ward</u>: defendant's agent, Susan I. Noe, agreed to attend a Section 341 creditor's meeting, and given several

questions to ask at the examination of the debtor; she appears not to have attended the examination nor taken any other steps to protect Premier's interests. The debtor was granted a discharge under Chapter 7.

The debtor refinanced real property in March 2001; at the time of the refinancing, Premier's Judgment balance was $58,546.14. The Judgment was in the original amount of $26,107.93, as of October 31, 1988. The Judgment balance, as of April 28, 2005, is $69,211.05. Defendant's failure to protect and enforce Premier's interests under the Judgment resulted in such Judgment remaining unpaid at the time of the refinancing.

<u>Top Ten Card</u>: Premier's judgment, dated October 2, 2987, is in the amount of $89,677.46. The Judgment debtor received a Chapter 7 discharge on or about September 12, 2003. Premier instructed defendant to file an objection in the bankruptcy proceeding to extend time, in light of debtor's apparently having had a beneficial interest in a trust holding real estate assets. Such trust purchased property in November 2002, the month the debtor filed for bankruptcy protection. At the time of the discharge, Premier's Judgment balance was $261,946.63; the balance as of April 28, 2005, is $278,987.81. Defendant's failure to

7

have protected Premier's interests in the bankruptcy, including, without limitation, her failure to have pursued the realty held in trust as a source for satisfaction of the Judgment, resulted in damage to Premier.

Redland Air Condition/Hardee: Premier's Judgment is dated April 27, 1989, in the amount of $13,317.98; the balance is $31,694.30, as of April 28, 2005. The judgment debtor sold realty at 5104 Tennis Court Circle, #84, Tampa Florida, in 1999 for $46,000.00; no mortgage encumbrance on the realty was found, based on Lexis credit report data. Debtor also refinanced realty in 2004 at 513 Richlyne St., Temple Terrance, Fla., with a value of $98,510, according to county public website data, which was encumbered with a mortgage in the amount of $47,029, according to Lexis and other credit report data sources.

Defendant's failure to protect and enforce Premier's interests under the Judgment resulted in such Judgment remaining unpaid at the time of the above-referenced real estate transactions.

Lenear Gipson: Premier's Judgment is in the original amount of $4,286.31, as of August 11, 1997. The debtor works at UPS; materials were sent by Premier to defendant in

2002, some 29 months ago, to pursue a wage attachment. Such attachment was not obtained; it would have resulted in $100.00 in proceeds to Premier over that 29-month span. The current judgment balance is $10,868.07, as of April 28, 2005. Defendant's failure to fulfill her duty to Premier with respect to collection activity, such as the wage attachment, damaged Premier in the amount of $2900.00.

Velma's Golden Needle: The Judgment debtor sold real property on or about January 31, 2003, for $131,500.00; such realty had a mortgage balance of $49,000 at time of such sale, resulting in surplus proceeds from the sale of approximately $82,500.00. Premier's Judgment was obtained on April 29, 1991; it was recorded in Miami-Dade County on May 23, 1991. Under Florida law, a judgment acts as a lien on real property for 7 years, unless timely renewed. Defendant, through her agent, Victor Rones, sought to renew the Judgment on May 31, 2001, some three years after the judgment lien on the above realty expired, and and one month after the 10-year period for enforceability of the Judgment expired. For these reasons, a title company found Premier's lien to have expired and been unenforceable at the time of the above sale. At the time of the sale, the Judgment balance was $23,009.83; the amount owed to Premier as of April 26, 2005, is $25,572.34. But for defendant's

9

failure to have protected Premier's interests under the Judgment, Premier would have recovered 100% of the Judgment balance at the time of the sale.

<u>Carmine Brancaccio</u>: Premier's Judgment is in the original amount of $9,752.68, and dated August 3, 1987. Defendant owned realty which was refinanced on or about December 31, 2001. According to county public website data, the value of such realty was $172,760, subject to a mortgage in the amount of $98,388. The realty thus had equity in the amount of $74,372. The balance of the Judgment was $28,890.06 on the date of the refinancing. Defendant's failure to protect and enforce Premier's interests under its Judgment resulted in such Judgment remaining unpaid at the time of the above-referenced real estate transaction.

Premier undertook collection efforts after return of the file materials from defendant with a view to mitigating its damages. Such efforts resulted in a settlement with the debtor, under which Premier realized $3750.00 after payment of costs of collection of $1250.00 (paid to counsel engaged by Premier subsequent to the return of the Florida Litigation Matters files to Premier). Accordingly, Premier's damages in this matter are the Judgment amount,

plus interest, minus the above settlement amount as reflective of Premier's above fees and costs.

Ramdata: Defendant obtained a Judgment against debtor on July 27, 1999, in the amount of $31,187.67. Debtor Richard Ramos subsequently filed for bankruptcy protection, a Chapter 13 proceeding which, in or about November, 1999, provided that secured creditors were to be paid 100 per cent of their claims. Defendant failed to timely file a proof of Claim, attempting to do so on or about May 22, 2001; the claim was disallowed as untimely on or about August 20, 2002. Debtor Ramos received a discharge. Defendant's failure, despite, inter alia, relevant provisions of the Contingency Fee Agreement, to properly protect Premier's interests resulted in Premier's failure to recover its judgment balance, the current value of which is $31,694.30 as of April 28, 2005. Further, debtor Ramos was able to refinance realty in 2003, which had equity, after accounting for a $13,562 mortgage, of $99,375.00 (according to county public website data). Defendant's failure to protect Premier's interests under its Judgment resulted in the loss of its Judgment balance.

Wisteria Branch/William Gerald: Premier's Judgment is in the amount of $79,377.76, as of February 2, 2001. In

May, 2002, Premier, through Nick J. Maimonis, asked defendant to pursue a wage attachment as well as debtor realty located at 244 Marilyn Drive, Lafayette, LA, data obtained by defendant in a 2001 examination of the debtor. The examination indicated the debtor was employed. No wage attachment was obtained; such an attachment is likely to have resulted in income to Premier of $100 monthly for 29 months. Premier is damaged in this amount; further, debtor transferred realty to his parents' names following entry of Judgment against him. Defendant's failure to pursue a wage attachment, undertake further collection activity, and otherwise protect Premier's interests under the Judgment damaged Premier.

<u>Bradley Boat Repair/Andrew and Therese Bradley</u>: Premier's Judgment is in the amount of $18,567.57, and dated January 4, 1999, and is valid against Therese Bradley only, Andrew Bradley having filed for bankruptcy protection, and the state court litigation against him was dropped. The bankruptcy proceeding, however, was dismissed on September 21, 1999, and suit was not re-instituted against him; he has since left the USA. Collection efforts against Therese Bradley during the period after return of the Penzell file materials in December, 2004, have been unsuccessful. The defendant's failure to pursue collection activity against

Andrew, and post-judgment collection activity against Therese, damaged Premier in an amount up to a ceiling of the current Judgment balance, $36,152.63.

Design Home Remodeling: Premier's Judgment entered in the amount of $5,657.50, as of March 3, 1987; the current balance is $14,659.27. One of the two judgment debtors died on May 29, 1999; there is no record of defendant having filed a timely claim against that debtor's estate. The defendant's failure to pursue collection activity against Andrew, and post-judgment collection activity against Therese, damaged Premier in an amount up to a ceiling of the current Judgment balance, $36,152.63.

Hiram Martinez: Premier's Judgment is dated February 20, 1987, in the amount of $29,090.63; the Judgment balance is now $82,298.59. The defendant's failure to pursue collection activity including post-judgment collection activity, damaged Premier in an amount up to a ceiling of the current Judgment balance.

Antonio Lioy: Premier's Judgment entered on October 24, 1988, in the amount of $20,831.16; the current balance is $55,439.42. The defendant's failure to pursue collection activity including post-judgment collection activity,

damaged Premier in an amount up to a ceiling of the current Judgment balance.

<u>Thomas W. Kenworthy</u>: Premier's Judgment entered on July 8, 1986, in the amount of $5,855.51; the current balance thereon is $17,030.09. The defendant's failure to pursue collection activity, including post-judgment collection activity, damaged Premier in an amount up to a ceiling of the current Judgment balance.

<u>Jeni Jayson</u>: Premier's Judgment entered on November 30, 1989, in the amount of $7,460.58; the current balance is $20,894.45. Defendant was able to sell realty at 435 N.E. 210 Terrace, Miami, on 2/12/96; the Judgment balance at the time of the sale, on February 12, 1996, was $11,045.85. The defendant's failure to protect Premier's rights under the judgment and to pursue collection activity, including post-judgment collection activity, damaged Premier in an amount up to a ceiling of the current Judgment balance, as reduced as follows: in an effort to mitigate its damages, Premier has pursued further collection activity against Jeni Jayson. Such collection efforts have resulted in payments to Premier of $1237.39. Premier has paid $468.53 to counsel engaged by it subsequent to defendant's return of the Florida

Litigation Matters files. Payson is currently in default of a settlement agreement with Premier.

<u>Domingo Mazon</u>: Premier's Judgment is dated June 18, 1989, in the amount of $85,827.08; the current balance is $222,844.72. One of the judgment debtors sold realty at 7340 SW 158th Avenue, Miami, on or about August 8, 2003; both debtors had or have an interest in Mr. Latin American, Inc. The defendant's failure to protect Premier's rights under the judgment and to pursue collection activity, including post-judgment collection activity, damaged Premier in an amount up to a ceiling of the current Judgment balance.

<u>The Supernet Online, Inc.</u>: Premier's Judgment, dated December 19, 2000, is in the amount of $44,349.96; the current balance is $64,094.81. The defendant's failure to pursue collection activity, including post-judgment collection activity, damaged Premier in an amount up to a ceiling of the current Judgment balance.

<u>Ricardo Rios/Ben Gross</u>: Premier's Judgment is dated November 27, 1984, in the amount of $12,310.66; the current balance is $37,048.18. One of the Judgment debtors died on March 15, 1990; there is no record of a claim having been

filed against the debtor's estate. The defendant's failure to pursue collection activity, including post-judgment collection activity, damaged Premier in an amount up to a ceiling of the current Judgment balance.

As referenced in part supra, Premier has engaged successor counsel to represent it in order, among other things, to mitigate its damages in connection with the above-referenced matters. Such collection efforts are ongoing, and may result in further diminution of damages owed by defendants to Premier. Premier will seasonably supplement its Answers to defendants' interrogatories to reflect any future payments by the various Florida debtors to Premier.

Signed as to answers this 22nd day of February, 2006, by:

PREMIER CAPITAL, LLC

By: _____
Richard Gleicher, in his representative capacity as agent, Premier Capital, LLC

Signed as to objections by:

Thomas James Morrissey
BBO# 547077
164 Strathmore Rd., Suite 25
Post Office Box 1336
Brookline, MA 02446
Tel.: (508) 636-7363

Dated: February 23, 2006

## CERTIFICATE OF SERVICE

The undersigned, counsel for the plaintiff and defendant-in-counterclaim Premier Capital, LLC, certify that I served copies of the foregoing Supplementary Answers by hand upon counsel of record for defendant Beverly Johnson Penzell, individually, et al., Joseph Corrigan, Esq., Posternak, Blankstein & Lund, L.L.P., Prudential Tower, 800 Boylston Street, Boston, Massachusetts 02199-8004; and by first class mail, postage prepaid, upon Steven A. Sussman, Esq., 6 Beacon St., Suite 400, Boston, MA 02108, this 23nd day of February, 2006.

Thomas James Morrissey
BBO# 547077