UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
PREMIER CAPITAL, LLC,              )
                                   )
        Plaintiff,                 )
                                   )    Civil Action No.
     v.                            )    03-CV-12497-NG
                                   )
BEVERLY JOHNSON PENZELL, d/b/a     )
Law Office of Kris E. Penzell,     )
and BEVERLY JOHNSON PENZELL, as    )
Personal Representative of the     )
Estate of Kris E. Penzell,         )
                                   )
        Defendants.                )
```

MOTION TO AMEND COMPLAINT
OF PLAINTIFF PREMIER CAPITAL, LLC

Pursuant to Rule 15(a), Federal Rules of Civil Procedure, plaintiff and defendant-in-counterclaim Premier Capital, LLC ("Premier"), by its attorney, moves to amend its Complaint in this action to reflect substantial and material changes in the factual and legal landscape of this action, including belatedly-disclosed, critical documents, resulting from Premier's discovery of defendant. The proposed First Amended Complaint is included with this motion. In support of its motion, Premier submits the Affidavit of Thomas DiFrancesco ("DiFrancesco Affidavit").

Factual Background

The Complaint in this action sets forth claims for conversion and violation of M.G.L. c.93A stemming from defendant Penzell's unlawful retention of litigation matters following Premier's purchase of right, title and interest in

such matters from Bank of America, N.A. ("BofA"). In an Affidavit filed with this Court, Penzell averred that "Premier Capital refused to pay the estate of Kris E. Penzell the amounts due under the contingency fee agreement, giving rise to this controversy."

Such "contingent fee agreement", she averred, was a contract dated December 23, 1998, between Kris E. Penzell and NationsBank, N.A., attached to her Affidavit as Exhibit A (the "1998 Agreement"; it is also attached to the DiFrancesco Affidavit as Exhibit B). Affidavit of Beverly Johnson Penzell In Support of Her Motion To Dismiss, paras. 13, 16.

Penzell later received leave to assert a counterclaim late. In it, she asserted claims for attorney's fees she claims are owed, apparently under the 1998 Agreement. See Counterclaim, Count I ("Breach of Contract").

On or about September 24, 2007, during depositions of Penzell and other Florida witnesses in Miami, Penzell disclosed that another written agreement existed, this one from 1999, between Kris Penzell and BofA, NationsBank N.A.'s successor (the "1999 Agreement", attached to the DiFrancesco

Affidavit as Exhibit A). The Florida depositions and discussions among counsel uncovered the following:

(a) Penzell and the Penzell Law Firm knew about and used the 1999 Agreement during late 2001 and 2002, as she and Inventory Attorney Victor K. Rones testified in September, 2007;

(b) In her initial contacts with Premier in early 2002, Penzell sent the 1998 Agreement, not the 1999 Agreement, to document the Penzell Law Firm's relationship with BofA and, by extension, Premier (see also DiFrancesco Affidavit, para. 4);

(c) Penzell's responses to Premier's written discovery omitted the 1999 Agreement, referencing only the 1998 Agreement;

(d) At her deposition, Penzell claimed to have discovered the 1999 Agreement in August, 2006, forwarding it that month to her Boston counsel of record;

(e) Penzell did not supplement her response to Premier's Rule 34 request, supplement her Answers to Premier's Interrogatories referencing the 1998 Agreement, or otherwise produce the 1999 Agreement to Premier's counsel until September 24, 2007.

The 1999 Agreement substantially and materially affects Premier's claims and defenses in this action. Most glaringly, the 1999 Agreement contains release language which vitiates Penzell's counterclaim for fees allegedly incurred by Premier's predecessors and purportedly owed by Premier.[1] The inference is compelled that Penzell withheld the 1999 Agreement because it was emphatically not in her interests to produce it.

The instant motion is Premier's attempt to cope with this inexcusably-late disclosure of the 1999 Agreement.

ARGUMENT

Under Rule 15(a)'s Liberal Standards, Premier Should Be Permitted to Amend Its Complaint.

Rule 15(a) provides in part that leave to amend "shall be freely given when justice so requires." "This policy is 'to be applied with extreme liberality.'" Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003), quoting Rule 15(a) (citations omitted). In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court outlined the

---

[1] In essence, under the 1999 Agreement, Kris E. Penzell released BofA from liability for "attorney's fees and disbursements Penzell has sustained or may hereinafter sustain" respecting cases in which Penzell initially represented Barnett Bank of South Florida. In at least fifteen such cases, Premier is successor-in-interest to Barnett Bank (via NationsBank and BofA); defendant Beverly Johnson Penzell seeks to recover past due fees and costs in these cases from Premier.

4

following factors a district court should weigh in deciding a Rule 15 motion:

> In the absence of any apparent or declared reason- such as undue delay, bad faith, or dilatory motive on the part of movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment etc.- the leave sought should, as the rules require, be 'freely given.'

"Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v. Aspeon, Inc., supra, 316 F.3d at 1052 (citing cases). See also Eastern Food Services, Inc. v. Pontifical Catholic Univ. Services Assn., Inc., 357 F.2d 1, 8 (1st Cir. 2004) ("in general permission to amend is liberally granted where there is no prejudice").

Here, any "undue delay, bad faith, or dilatory motive" or "prejudice" are Penzell's responsibility, not Premier's. She, and the Inventory Attorneys working in her office (see First Amended Complaint, para. 10) knew of and used the 1999 Agreement in late 2001-early 2002. Nonetheless, the document was not produced to Premier for nearly six years. [2]

---

[2] Nor did Penzell receive the 1999 Agreement from Premier pursuant to Penzell's comprehensive Rule 34 Request for Production in this litigation. Counsel for Premier has Bates-stamped documents produced in discovery: no Bates-stamped version of the 1999 Agreement exists (or existed before September, 2007).

The 1999 Agreement will have a material affect on Penzell's counterclaim: her claims are released, in whole or in part, under such agreement. The 1999 Agreement also vitiates her claim of attorney's lien respecting the litigation matters at issue in this case, showing that such claim had no validity <u>ab</u> <u>initio</u>.

Procedural fairness and the interests of justice require that Premier be given the opportunity to address this belatedly-produced document through leave to amend.[3]

### CONCLUSION

For these reasons, Premier requests that the Court grant it leave to amend its Complaint pursuant to Rule 15(a).

                                      PREMIER CAPITAL, LLC

                                      By its attorney,

                                      <u>/s/ Thomas James Morrissey</u>
                                      Thomas James Morrissey
                                      BBO# 547077
                                      164 Strathmore Rd., Suite 25
                                      Post Office Box 1336
                                      Brookline, MA 02446
                                      Tel.: (617) 787-3434

Dated: October 8, 2007

---

[3] If leave to amend is granted, presumably Penzell will re-file her Counterclaim, giving her the opportunity to address the 1999 Agreement, and Premier the opportunity to plead its release language by way of defense to liability. This, too. compellingly justifies granting leave to amend.