UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PREMIER CAPITAL, LLC,<br><br>      Plaintiff,<br><br>    v.<br><br>BEVERLY JOHNSON PENZELL, d/b/a<br>Law Office of Kris E. Penzell,<br>and BEVERLY JOHNSON PENZELL, as<br>Personal Representative of the<br>Estate of Kris E. Penzell,<br><br>      Defendants. | Civil Action No.<br>03-CV-12497-NG |

FIRST AMENDED COMPLAINT

Jurisdiction and Venue

1. This Court has subject matter jurisdiction in this diversity action pursuant to 28 U.S.C. Section 1332(a)(1). Venue is appropriate under 28 U.S.C. Section 1391(a)(2) and (3). This action was initially filed in Massachusetts Superior Court and subsequently removed to this Court by defendant Beverly Johnson Penzell, pursuant to 28 U.S.C. Sections 1441(a)-(b) and 1446(d).

Parties

2. The plaintiff, Premier Capital, LLC ("Premier"), is a Delaware limited liability corporation with a principal place of business at 226 Lowell Street, Wilmington, Middlesex County, Massachusetts 01887.

3. Beverly Johnson Penzell is a defendant in two separate capacities. Beverly Johnson Penzell is a defendant, individually, d/b/a Law Office of Kris E. Penzell. She is also a defendant in her capacity as Personal Representative of the estate of Kris E. Penzell. (She is referred to herein, in both capacities, as "Penzell.") Her address is 316 West Rivo Alto Drive, Miami Beach, Florida 33139.

## Allegations

4. Premier is successor-in-interest to Bank of America ("BofA") with respect to the Bank's right, title and interest to approximately twenty-one loan workout and collection matters brought in courts of the State of Florida, which had been reduced to judgment (the "Florida Judgments").

5. Premier purchased the Florida Judgments, and file materials related thereto, from the Bank on or about October 3, 2001.

6. Prior to such purchase, BofA's predecessor, NationsBank, N.A., entered into a written agreement dated December 23, 1998, with Florida attorney Kris E. Penzell. Upon information and belief, Mr. Penzell was principal of the Law Offices of Kris E. Penzell (the "Penzell Law Firm"),

Under the Agreement, Mr. Penzell represented Barnett Bank, NationsBank, N.A., and, subsequently, BofA, in the litigation giving rise to the Florida Judgments. In connection with the Agreement, the Bank and BofA transferred promissory notes, other commercial paper, and file materials to the Penzell Law Firm.

7. Kris E. and Beverly Johnson Penzell were husband and wife.

8. Upon information and belief, On March 8, 2000, Kris E. Penzell died. Penzell is Personal Representative of the estate of Kris E. Penzell in a probate matter now pending in the 11th Judicial Circuit of Florida, Miami-Dade County (No. 00-1320).

9. At all times relevant hereto, Penzell has been an employee and manager of the Penzell Law Firm. Upon information and belief, she is not an attorney. Yet, she has held out the Penzell Law Firm as a going concern with the capacity to provide legal services, including litigation-related collection services.

10. At all times prior to the filing of this action, Penzell so held out the Penzell Law Firm. Penzell never

disclosed to Premier that two attorneys, Victor K. Rones ("Rones") and Susan I. Noe ("Noe"), had acted as Inventory Attorneys under Florida law with a duty to wind down Kris E. Penzell's law practice. Rather, Penzell continued to purport to provide legal services to Premier as the Penzell Law Firm in connection with the Florida Judgments.

11. Subsequent to its purchase of the Florida Judgments, Premier sought frequently to contact Penzell at the Penzell Law Firm to protect Premier's interests. Such contacts included numerous letters and telephone and electronic mail messages. In addition, Penzell initiated contacts with Premier in Massachusetts.

12. After Premier contacted Penzell in early 2002, Penzell sent to Premier a contract with NationsBank dated December 23, 1998, which, she has contended herein, supports her counterclaim for attorney's fees Premier allegedly owes her (the "1998 Agreement").

13. In fact, a subsequent agreement dated December 6, 1999 with BofA governed the BofA-Penzell Law Firm relationship (the "!999 Agreement"). The 1999 Agreement contained a release curtailing Penzell's rights to her late husband's fees. Penzell intentionally withheld the 1999

4

Agreement from Premier before and during this civil action. She finally produced it on September 24, 2007.

14. As a result of its efforts to contact Penzell in 2002, Premier determined that certain legal services were not performed in the collection matters since at least the death of Kris E. Penzell, proximately causing damage to Premier's interests. Premier was able to so determine despite Penzell having largely ignored Premier's requests for information about the matters.

15. Premier made written demand of Penzell for return of the documents which together comprise the Florida Judgments, including notes and other file materials, commercial paper and other documents. However, she continued to retain all commercial paper and other documents comprising the Florida Judgments.

16. In or about November, 2004, Premier learned of the Inventory Attorneys, and made demand upon Noe and Rones for return of the Florida Judgment files to enable Premier to obtain successor counsel and move collection of the Judgments forward.

17. Noe and Rones sought judicial relief in Florida for "direction" respecting Premier's demand. In motion

papers, they asserted that there was "an attorney's lien on each file by [the Penzell Law Firm]."

18. Defendants had ever notified Premier that there were such liens. At no time did defendants submit invoices for past due legal fees to BofA, Premier, or any other party, pursuant to the termination provisions of the Agreement. Accordingly, there was no factual or legal basis for the assertion of an attorney's lien respecting any of the Florida Judgments.

19. Acting on the Noe and Rones motions, a Florida judge ordered the return of the Florida Judgment files to Premier. The Penzell Law Firm finally transmitted such files to Premier in mid-December, 2004.

20. During the period in which the defendants retained the Florida Judgment files and held themselves out as the Penzell Law Firm, the defendants engaged in acts and omissions which vitiated Premier's ability to collect on the Florida Judgments. But for such acts and omissions, certain of the Judgments would have been satisfied, in whole or in part. Such acts and omissions included, without limitation, the conduct outlined supra, and the following:

(a) failing to advise Premier that Inventory Attorneys had, in fact, been appointed to protect Premier's interests;

(b) failing to respond to Premier's demands for return of the Florida Judgment files, so that Premier could pursue collection with successor attorneys of Premier's choosing;

(c) failing to make bankruptcy filings in timely fashion, undermining Premier's ability to participate in distributions of debtor assets and resulting in discharge of judgment indebtedness;

(d) failing to timely file, record, and/or renew judgment liens respecting certain Judgments, enabling judgment debtors to convey their interests in real property without having to satisfy their judgment indebtedness first;

(e) materially breaching the 1999 Agreement by failing to adhere to its termination provisions, and subsequently asserting groundless attorney's liens;

(f) purporting to protect Premier's interests while failing to do so;

(g) retaining the Florida Judgment file materials, and ceasing cooperation with Premier; and

(h) intentionally failing to disclose to Premier the 1999 Agreement while falsely claiming the 1998 Agreement applied.

## Count I
### (Breach of Contract)

21. The allegations of paragraphs one though twenty are incorporated herein as if fully set forth.

22. By virtue of the conduct set forth above, the defendants, jointly and severally, materially breached the 1999 Agreement.

23. As a result of such material breach, Premier was, and continues to be, substantially damaged.

## Count II
### (Intentional Misrepresentation)

24. The allegations of paragraphs one though twenty-three are incorporated herein as if fully set forth.

25. By virtue of her conduct as set forth above, Penzell intentionally misrepresented her status, holding the Penzell Law Firm out as a going concern; failing to disclose the roles of Rones and Noe as Inventory Attorneys; failing to disclose the 1999 Agreement to Premier, while claiming the 1998 Agreement still governed; and failing to

act to protect Premier's interests until ordered to do so by a Florida judge.

26. Penzell intended Premier to rely on such misrepresentations. Premier reasonably so relied.

27. As a result of such intentional misrepresentations, Premier was, and continues to be, substantially damaged.

Count III
(Negligent Misrepresentation)

28. The allegations of paragraphs one though twenty-seven are incorporated herein as if fully set forth.

29. By virtue of her conduct as set forth above, Penzell negligently misrepresented her status, holding the Penzell Law Firm out as a going concern; failing to disclose the roles of Rones and Noe as Inventory Attorneys; failing to disclose the 1999 Agreement to Premier, while claiming the 1998 Agreement still governed; and failing to act to protect Premier's interests until ordered to do so by a Florida judge.

30. Premier reasonably relied on such misrepresentations.

31. As a result of such negligent misrepresentations, Premier was, and continues to be, substantially damaged.

### Count IV
### (Conversion)

32. The allegations of paragraphs one though thirty-one are incorporated herein as if fully set forth.

33. Penzell converted to her own use the Florida Judgment files in order to assert a claim for attorney's fees which she knew or should of known was baseless under the 1999 Agreement.

34. Such conduct by Penzell directly and proximately caused substantial damage to Premier.

### Count V
### (M.G.L. c.93A, Sections 2 and 11)

35. The allegations of paragraphs one though thirty-four are incorporated herein as if fully set forth.

36. At all times relevant hereto, the defendants engaged in trade or commerce within the Commonwealth.

37. Penzell's actions, as set forth above, including, but not limited to, the baseless assertion of attorney's

liens respecting the Florida Judgments; failing to disclose the 1999 Agreement; holding the Penzell Law Firm out as going concern; and her obstruction of Premier's efforts to transfer the Judgments to successor counsel, constitute unfair or deceptive acts or practices within the meaning of M.G.L. c.93A, Sections 2 and 11.

38. Such actions were performed willfully and knowingly.

39. As a result of the unfair or deceptive acts or practices described above, Premier sustained injury including, but not limited to, Premier's actual damages as set forth in this First Amended Complaint, and consequential damages including attorney's fees.

<u>Prayers For Relief</u>

WHEREFORE, Premier requests that the Court enter judgment in its favor and against Beverly Johnson Penzell, individually, d/b/a Law Office of Kris E. Penzell, and Beverly Johnson Penzell, as Personal Representative of the Estate of Kris E. Penzell, jointly and severally, as follows:

(1)  in the amount of Premier's actual damages, not less than $853,000.00, plus interest;

(2)   trebled, plus Premier's reasonable attorney's fees and costs, pursuant to M.G.L. c.93A, Sections 2 and 11; and

(3)   granting such further relief as the Court deems just.

                                          PREMIER CAPITAL, LLC

                                          By its attorney,

                                          /s/ Thomas James Morrissey
                                          Thomas James Morrissey
                                          BBO# 547077
                                          164 Strathmore Rd., Suite 25
                                          Post Office Box 1336
                                          Brookline, MA 02446
                                          Tel.: (617) 787-3434

Dated: October 8, 2007