UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. 03-CV-12497

| | |
|---|---|
| PREMIER CAPITAL, LLC | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BEVERLY JOHNSON PENZELL, | ) |
| d/b/a Law Office of Kris E. Penzell | ) |
| and BEVERLY JOHNSON | ) |
| PENZELL, as Personal | ) |
| Representative of the Estate of | ) |
| Kris E. Penzell | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF
DEFENDANT BEVERLY JOHNSON PENZELL'S
MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Defendant Beverly Johnson Penzell ("Ms. Penzell") is the widow of Kris E. Penzell, a creditor's rights attorney in Miami, Florida, who died on March 8, 2000. Plaintiff, Premier Capital, LLC, ("Premier") is a purchaser of distressed assets. In September 2001, Premier purchased from Bank of America 19 judgments that the Law Office of Kris Penzell had previously obtained on behalf of its clients, Barnett Bank and NationsBank. After purchasing these 19 judgments, Premier engaged in various tactics to collect on the judgments, including attempting to coerce free collection work and information from the Law Office of Kris Penzell and free legal services from two inventory attorneys appointed by the Florida Probate Court to wind down the affairs of Kris Penzell's legal practice.

When Ms. Penzell and the inventory attorneys refused to perform work without being retained, Premier demanded that Ms. Penzell, as the Personal Representative of the Estate of Kris Penzell ("the Estate"), produce copies of Kris Penzell's litigation files for the 19 judgments. Consistent with Florida law and with her fiduciary duty to the Estate, Ms. Penzell asserted a retaining lien over the files to secure payment for legal services previously rendered by Kris Penzell on the 19 judgments. Premier brought this action in Massachusetts alleging that Ms. Penzell converted Premier's litigation files (Count I) and that she had engaged in unfair and deceptive conduct under Chapter 93A (Count II).

Premier's claims fail as to both Counts. Premier cannot meet its burden of demonstrating conversion of the files belonging to the Law Office of Kris E. Penzell, P.A., as it cannot establish any of the underlying elements of conversion: (1) that Ms. Penzell exercised wrongful dominion or control (2) over property of Premier (3) that caused Premier damage. First, Ms. Penzell's retention of the files was entirely justified under controlling Florida law. Second, under Florida law, the files belonged to the Law Offices of Kris Penzell, not Premier. Finally, Ms. Penzell returned the files after seeking permission from the Florida Probate Court and Premier has absolutely no evidence that that it was harmed in any way by not having the file during the period of time that Ms. Penzell, on behalf of the Estate, properly exercised a retaining lien over the files.

As to the Chapter 93A Count, Premier has no reasonable expectation of establishing an unfair or deceptive act or practice on the part of Ms. Penzell whose conduct at all times was consistent with the requirements of Florida law with regard to the exercise of the retaining lien and the protection of the assets of the Estate. Moreover, none of the conduct complained of

2

occurred in Massachusetts, but rather in Florida, where the files were maintained, where Ms. Penzell committed the allegedly unfair acts and where Premier suffered its alleged loss.

**Factual Background**

A.    The Attorney-Client Relationship Between the Law Office of Kris E. Penzell, P.A. and Barnett Bank/NationsBank, N.A. and Bank of America.

Ms. Penzell's late husband, Kris E. Penzell, was a creditors' rights attorney who operated his own law firm, the Law Office of Kris E. Penzell, P.A. in Miami, Florida.  Mr. Penzell was the sole attorney who practiced at this firm and he performed collection work on behalf of Barnett Bank, a banking association chartered in Jacksonville, Florida.  Affidavit of Beverly Johnson Penzell ("Penzell Aff.") dated October 30, 2007 at ¶¶ 1-2 and Affidavit of Joseph W. Corrigan, Esq., ("Corrigan Aff.") in support of Defendant's Motion for Summary Judgment at Exhibit A, Deposition of Beverly J. Penzell ("Penzell") dated September 25, 2007 at 27, 30, 34. Barnett Bank then merged with NationsBank, N.A, a banking association chartered in Charlotte, North Carolina.  Penzell Aff. ¶ 2.

On December 23, 1998, the Law Office of Kris E. Penzell, P.A. entered into a contingency fee agreement with NationsBank (the "1998 Fee Agreement"), to perform collection work on certain accounts belonging to NationsBank.  Penzell Aff. ¶ 2 and Penzell Aff. Exhibit # 1.  Under the terms of the contingency fee agreement, Kris Penzell was entitled to 30% of amounts collected on the matters referred to it by NationsBank, N.A.  Id.  Subsequent to the signing of this contingency fee agreement, the assets of NationsBank, N.A. were sold to Bank of America, including the collection files on which the Law Office of Kris E. Penzell, P.A. performed collection work.  Id.  Among these assets were the judgments at issue in this case, which Kris Penzell had obtained for NationsBank or its predecessor, Barnett Bank.  Penzell Aff.

3

¶ 2 and Corrigan Aff., Exhibits D, Barnett Bank Judgments and Exhibit E, NationsBank Judgments.  Despite having performed periodic collection work on the files beginning in the early 1980s through his death in March 2000, Kris Penzell was unable to find assets to satisfy any of the judgments at issue in this case.  Corrigan Aff, Exhibit A, Penzell at 75-77, 79-80, 93-94.

In late 1999, Kris Penzell and Bank of America d/b/a Nationsbank, N.A. executed a settlement agreement and release (the "1999 Settlement Agreement and General Release") acknowledging that with respect to 18 of the 19 judgments at issue in this case, the 1998 Fee Agreement would serve as the contingency fee agreement controlling the relationship between Kris Penzell and Bank of America.[1]  Corrigan Aff, Exhibit A, Penzell at 125, 128-29 and Penzell Dep. Exhibit # 4, 1999 Settlement Agreement and General Release.

B.    The Death of Kris E. Penzell

Kris Penzell died on March 8, 2000 and his wife, Beverly E. Penzell, was appointed the Personal Representative of his estate.  Penzell Aff. ¶ 1.  On March 24, 2000, Victor Rones was appointed inventory attorney and charged under Florida law with winding down matters of the Law Office of Kris Penzell, P.A. on behalf of the Estate of Kris Penzell.  Corrigan Aff., Exhibit B, Deposition of Victor Rones ("Rones") dated September 24, 2007 at 10-12 and Exhibit C, Order Appointing Inventory Attorney dated March 24, 2000.  Two of the judgments at issue in this case were obtained after Kris Penzell passed by Victor Rones, acting in his role as inventory

---

[1] The Domingo and Maria Mazon/M&R Latin American, Inc., obtained by Penzell in 1989, was excluded from the list of cases on Exhibit B to the 1999 Agreement.  Corrigan Aff., Exhibit A, Penzell Dep. Exhibit 4, 1999 Settlement Agreement and General Release at Exhibit B as compared with Exhibits E and F (Penzell Judgments).  Under the terms of the 1999 Agreement, Kris Penzell was permitted to perform collection work only on those prior Barnet Bank matters listed on Exhibit B under the terms of the 1999 Agreement.

4

attorney.   Corrigan Aff., Exhibit F, NationBanks Judgments Obtained By Victor Rones as Inventory Attorney for Estate of Kris E. Penzell.

      C.    <u>Premier Capital Purchases the Barnett Bank and NationsBank, N.A. Judgments From Bank of America and Pursues Collection</u>

In September 2001, a year and a half after Kris Penzell died, Bank of America solicited private bids for 84 judgments, which it pooled together and referred to as a "distressed portfolio."   Corrigan Aff., Exhibit H, Select Documents Produced by Premier Regarding its Purchase of Bank of America Judgments at "Distress Portfolio Bid Form".   Among the pool of 84 judgments were the 19 judgments at issue in this case.  <u>Id</u>. at Loan Schedule; Penzell Aff. ¶ 8. Documents subpoenaed from the Bank of America demonstrate that Premier was successful bidder and paid $136,657.37 for the 84 judgments, which represented 3.02460% of the $4,518,193.04 outstanding legal balance on the judgments.  Corrigan Aff., Exhibit I, Letter from Bank of America dated January 11, 2007 Enclosing Premier Successful Bidder Information.

On September 19, 2001, Premier and Bank of America execute a Loan Sale Agreement. Corrigan Aff., Exhibit J, Deposition of Paul W. George ("George") March 23, 2007 at 52-53, 85-86, 88.   As part of the Loan Sale Agreement, Premier represented that within 30 days of the purchase of the judgments it would relieve counsel of record on all files involved in litigation, or enter into separate agreements with counsel of record with Bank of America's written consent. Corrigan Aff., Exhibit J George Dep. Exhibit # 6, Loan Sale Agreement (3.4 – **Pending Legal Proceedings**).   In addition, Premier was advised that the files were subject to contingency fee agreements and that Premier was purchasing the files subject to those contingency fee agreements.  <u>Id</u>.  (6.4  -  **Contingency Fee Agreement**.)   Finally, Premier was advised that the judgments it was purchasing likely had little to no liquidity and by signing the agreement

5

Premier acknowledged that it had "the financial wherewithal to own the Loans for an indefinite period of time and to bear the economic risk of an outright purchase of the Loans and a total loss of the Purchase Price of the Loans." Id. (9.3 – **Economic Risk**).

In November 2001, Premier, without notifying or copying the Penzell Law Office, began contacting each of the underlying debtors directly and offered to settle the outstanding judgments at a significantly reduced value, often times at less than 25% of the outstanding amount owed, in part, to avoid the expense of litigation and attorneys' fees. Penzell Aff. ¶ 12, Exhibit # 5.

On January 11, 2002, Premier contacted Ms. Penzell for the purpose of obtaining copies of the two judgments with respect to *NationsBank v. Arroyave* as well as the 1998 Fee Agreement between Kris Penzell and NatiosnBank. Ms. Penzell provided Premier with a copy of the judgments and fee agreement it requested that same day. Penzell Aff. ¶ 9 and Penzell Aff. Exhibits # 2-3. Ms. Penzell later discovered that Premier successfully negotiated a settlement with Mr. Arroyave (the debtor) in which Premier received over $25,000. Penzell Aff. ¶ 10. This settlement included the subordination of the judgments previously obtained against the debtor, including one obtained by the Law Office of Kris E. Penzell, P.A. Id. at ¶ 10, Exhibit # 4. Despite the fact that Premier settled with the debtor, it failed to disclose the settlement to Ms. Penzell and further, failed to pay the contingency fee due the Law Office of Kris Penzell, P.A. on those judgments. Id. at ¶ 10.

D.    Premier Attempted to Have the Law Office of Kris E. Penzell, P.A. Perform Collection Work on the Judgments Without Retaining its Services.

In January or February 2002, Nick Maimonis, an individual who identified himself as working for Premier, contacted the then inventory attorney, Victor Rones, and told him that Premier had purchased certain files that NationsBank had on which Kris Penzell had previously

6

performed collection work.  Mr. Rones identified himself as the inventory attorney representing the Estate of Kris Penzell, and informed Mr. Maimonis that if Premier had in fact purchased the files at issue, it would need to obtain counsel because Premier was not a client of the Law Office of Kris Penzell or Mr. Rones.  Corrigan Aff., Exhibit B, Rones at pp. 64-65, 70.

During this conversation, Mr. Maimonis indicated that Premier might want to hire Mr. Rones to perform collection work on the judgments, that Premier had a standard contingency fee agreement that it used and that he would forward it to Mr. Rones to review.  Mr. Rones agreed to review contingency fee agreement to see if he could live with it.  Mr. Maimonis called a second time and asked Mr. Rones for an update.  Mr. Rones reminded Mr. Maimonis again that Premier had to get its own counsel or send Mr. Rones a contingency fee agreement to review.  Mr. Maimonis again indicated that he would forward an agreement.  Despite Mr. Maimonis's representations, Premier never forwarded a contingency fee agreement to Mr. Rones.  Id. Premier never hired Mr. Rones or the Law Office of Kris Penzell to perform legal services while Mr. Rones was inventory attorney.  Corrigan Aff., Exhibit B, Rones at pp. 64-65, 70 and Exhibit A, Penzell at 256.  On April 29, 2002, Susan I. Noe was appointed as inventory attorney to the Estate of Kris E. Penzell and Victor Rones was substituted out as inventory counsel.  Corrigan Aff.,  Exhibit K, Order on Agreed Motion to Substitute Inventory Attorney dated April 29, 2002.

Beginning in April 2002, despite failing to present a fee agreement for review, Premier began a pattern of attempting to re-refer the 19 judgments it had purchased from the Bank of America to the Law Office of Kris E. Penzell, P.A.  Premier would send the law Office copies of materials it had with respect to some of the judgments previously obtained by Kris Penzell. Penzell Aff. ¶¶ 11-12 and Corrigan Aff., Exhibit A, Penzell at 158-160.  Despite having been informed that Premier needed to send a new retainer agreement for the inventory attorney to

7

review, Premier continued to try to coerce the Law Office to perform work without retaining the then inventory attorney, Susan Noe. Penzell Aff. ¶¶ 11-13 and Corrigan Aff., Exhibit A, Penzell at 141, 162-163, 165, 168, 170 and Exhibit G, Deposition of Susan I. Noe ("Noe") dated September 24, 2007 at 62-63, 67, 79, 87, 92, 101, 103-104.

On numerous occasions during 2002, Premier would demand that the then inventory attorney, Susan Noe, and Ms. Penzell provide information and updates on the collection files associated with the judgments Premier had purchased. Ms. Penzell repeatedly informed Premier that in order to have collection work performed, Premier would need to present the Law Office of Kris E. Penzell, P.A. with a retainer agreement that could be approved and executed by the inventory attorney, Susan Noe. For months, Premier failed and refused to provide a retainer agreement, but still demanded information and updates about the files. Corrigan Aff., Exhibit A, Penzell at 152 and Exhibit G, Noe at 62-63, 67, 79, 87, 92, 101, 103-104 and Penzell Aff. at ¶¶ 11-13.

Indeed in August 2002, inventory Attorney Susan Noe provided Premier with a comprehensive summary of the status of the various collection cases that the Law Office of Kris E. Penzell, P.A. had previously serviced for NationsBank, and set forth the terms under which Premier could retain her and the Law Office to perform collection work on the judgments it had purchased. Corrigan Aff., Exhibit G, Noe at 86-87 and Noe Dep. Exhibit 8 (Letter from Susan I. Noe, Esq. to Nick Maimonis (Premier), dated August 6, 2002). The Estate of Kris E. Penzell incurred additional expenses performing the background research to update Premier on the status of these various files in an effort to be retained by Premier to perform collection activity on the judgments Premier had purchased. Id.

Premier never hired Susan Noe or the Law Office of Kris Penzell, P.A. to perform work on Premier's behalf.  Corrigan Aff., Exhibit A, Penzell at 152, 210-213, 256; Exhibit G, Noe at 101, 103-104, 109 and Penzell Aff. ¶¶ 11, 13.

> E.  <u>Beverly Penzell, as Personal Representative of the Estate of Kris Penzell, Asserted a Retaining Lien on the Underlying Collection Files Maintained by the Law Office</u>.

On or about June 4, 2003, Premier, by and through its current counsel, demanded that Ms. Penzell release the Law Offices of Kris E. Penzell, P.A.'s files associated with the collection activities Kris Penzell had performed on behalf of Barnett Bank and NationsBank.  Penzell Aff. ¶ 14 and Corrigan Aff., Exhibit A, Penzell at 242-43 and Penzell Dep. Exhibit # 24 (June 4, 2003 letter from Thomas J. Morrissey to Beverly Penzell)

As set forth in that letter, Premier was aware as of June 4, 2003, that Ms. Penzell was asserting a retaining lien against the collection files in question to obtain fees due and owing to the Estate of Kris E. Penzell on the judgments Premier purchased for legal services provided by Kris Penzell.  As counsel for Premier stated in his letter:

> "As I understand your position, you have purported to continue to provide legal services to Premier regarding the matters, despite the following facts:  ***Premier has never entered into an agreement for legal services with your Office***; Mr. Penzell passed away before Premier purchased title to the matters from [Bank of America]. . ." (emphasis added)

<u>Id</u>.

Significantly, as of June 4, 2003, Premier acknowledged that there was no agreement between the parties, pursuant to which the Law Offices of Kris E. Penzell, P.A. agreed to represent Premier.  Ms. Penzell learned that Premier had settled the *Arroyave* case for at least $25,000 and failed to pay any amounts to the Law Offices of Kris E. Penzell, P.A, despite the fact that the Law Office obtained the underlying judgment and performed significant collection

9

work on the file.  Penzell Aff. ¶ 10 and Exhibit # 4, Subordination Agreements in *NationsBank v. Arroyave*.

Ms. Penzell refused to release the Law Offices of Kris E. Penzell's files due to the fact that Premier had not paid the Estate of Kris E. Penzell the 30% contingency fee due and owing with respect its collection on the *Arroyave* matter and otherwise pay for work previously performed by Kris Penzell on the underlying matters and attempting to obtain collection on them.  Penzell Aff. ¶ 10, 14 and Corrigan Aff., Exhibit A, Penzell at 109-114, 138, 265, 275-278.  Ms. Penzell was advised by the inventory attorneys that under Florida law she was required, as Personal Representative of the Estate of Kris E. Penzell, to retain the files as a retaining lien until the amounts due and owing were paid or adequate security was rendered by Premier.  Penzell Aff. ¶ 14 and Corrigan Aff., Exhibit A, Penzell at 153-54, Exhibit B, Rones at 69-71; Exhibit G, Noe at 118.  Ms. Penzell clearly advised Premier at that time that the files were not being released because she was asserting a retaining lien over them.  Corrigan Aff., Exhibit A, Penzell at 153-54.

F.    Premier Brought This Action Against Beverly Penzell, d/b/a the Law Offices of Kris E. Penzell and as Personal Representative of the Estate.

On August 21, 2003, Premier filed a two-count complaint against Beverly J. Penzell d/b/a as the Law Offices of Kris E. Penzell and Beverly Johnson Penzell in her capacity as the Personal Representative of the Estate of Kris E. Penzell.  Count I alleges:

"14.    Beverly Johnson Penzell converted to her own use, and/or for use in connection with the estate of Kris E. Penzell, Premier's case files and other litigation materials belonging to Premier.

15.    Upon information and belief, Beverly Johnson Penzell seeks to convert to her own use, and/or for use in connection with the estate of Kris E. Penzell, as purported legal fees, moneys [sic] received from litigants in connection with such files and materials.

10

Count II alleges that Ms. Penzell's conduct "including, but not limited to, her refusal to return the collection matters, constitute unfair or deceptive acts or practices within the meaning of M.G.L. c. 93A, Sections 2 and 11." Corrigan Aff., Exhibit L, Complaint at 4-5, ¶¶ 14, 15.

First, contrary to Premier's contention, the files are not and never have been "Premier's case files and other litigation materials belonging to Premier." Since Premier was never a client of the Law Office of Kris Penzell (or the inventory attorneys), the files were not Premier's case files and other litigation materials belonging to Premier, as alleged in the Complaint. Penzell Aff. ¶ 13 and Corrigan Aff., Exhibit A, Penzell at 153-154; Exhibit B, Rones at 68-71; Exhibit G, Noe at 109. Second, neither Ms. Penzell nor the Law Office of Kris Penzell, P.A. collected any monies on the 19 files since Premier purchased the judgments in September 2001. Penzell Aff. ¶¶ 3-7.

Perhaps the central purpose driving the litigation filed by Premier was to avoid paying the Estate of Kris Penzell contingency fees due on the *Arroyave* matters and to obtain copies of the files belonging to the Law Offices of Kris Penzell, P.A. containing the work product of Kris Penzell. If obtaining Kris Penzell's work product was Premier's purpose, however, it was achieved in December 2004, as a result of the Order of 11th Judicial Circuit in and for Miami-Dade County, Florida dated December 10, 2004.

G.  The 11th Judicial Circuit in and for Miami-Dade County, Florida Has Found That Premier Never Had an Attorney-Client Relationship with the Law Office of Kris E. Penzell or Either of the Inventory Attorneys.

To protect the estate of Kris E. Penzell's interests in any fees due and owing any and to avoid breaching any fiduciary duty owed to the Estate of Kris Penzell, the inventory attorneys and Ms. Penzell, as Personal Representative of Estate of Kris Penzell, submitted the matter to the

11

11th Judicial Circuit Court in and for Miami-Dade County, Florida, requesting permission to release copies of the files to Premier. Penzell Aff. ¶ 15 and Corrigan Aff., Exhibit G, Noe at 116-17 and Exhibit B, Rones at 79. Premier was represented by its current counsel in that matter and participated in the hearing held by the 11th Judicial Circuit Court on December 6, 2004. Penzell Aff. ¶¶ 15-16 and Exhibit M, Order at ¶ 4 (discussed below).

On December 10, 2004 the Court in Florida entered an order that made a number of findings and, in relevant part, provides:

1. Until his death on March 8, 2000, Kris Evan Penzell, Esq. primarily represented banks and other financial institutions, but neither he, in his individual capacity, nor Kris Evan Penzell, P.A. was neither retained to nor provided legal services to Premier.

2. Upon Mr. Penzell's death, Attorneys Victor Rones and Susan Irene Noe, pursuant to Rule 1-3.8, Rules Regulating the Florida Bar ("Rule"), were successively appointed as inventory attorneys for Kris Evan Penzell, P.A., with Mr. Rones acting as the first inventory attorney, and Ms. Noe the second and current inventory attorney.

3. Neither Mr. Rones nor Ms. Noe, on behalf of themselves, the Estate of Kris Evan Penzell or Kris Evan Penzell, P.A., ever entered into a written agreement or otherwise agreed to provide legal services to Premier.

4. With regard to the request by Premier for files maintained at Kris Evan Penzell, P.A. in connection with the accounts purchased by Premier from Bank of America, said files shall be copied forthwith by Kris Evan Penzell, P.A. and delivered directly to Premier's counsel in this proceeding, Thomas James Morrissey, Esq., c/o Premier Capital, LLC, 226 Lowell Street, Wilmington, Massachusetts 01887.

Exhibit M, Findings and Order of 11th Judicial Circuit Court.

Once permission was obtained through the Court's Order, the files belonging to the Law Offices of Kris E. Penzell, P.A., were copied and produced to counsel for Premier immediately following the issuance of this Order, and were accepted by counsel for Premier on December 16, 2004. Penzell Aff. ¶¶ 17-18.

12

The litigation in Massachusetts was rendered moot by the 11th Judicial Circuit Court's ruling permitting the Law Office of Kris E. Penzell, P.A. to release copies of its files to Premier.

H.    Premier Moved to Amend the Complaint to Assert Negligence Claims Against the Inventory Attorneys and the Law Office of Kris E. Penzell, Which Motion was Denied by This Court.

On January 20, 2005, Premier filed a Motion to Amend the Complaint, seeking to add the Florida inventory attorneys Victor K. Rones and Susan I. Noe as defendants in the action. In addition, Premier was no longer interested in pressing the claim for conversion. Indeed, even Premier recognized that this aspect of its case had been rendered moot, pointing out in the Motion to Amend that "[a] Probate Court judge ordered return of the files. To the best of Premier's understanding, therefore, Ms. Penzell no longer retains any files, and certain factual allegations of the Complaint in this action no longer obtain [sic]." Premier Capital, LLC's Motion to Amend dated January 10, 2005 at 5. Corrigan Aff., Exhibit N, Premier Capital, LLC's Motion to Amend dated January 10, 2005 at 5.

Instead, Premier sought to Amend the Complaint to assert claims against Beverly Penzell and the two inventory attorneys for breach of contract, intentional misrepresentation, negligent misrepresentation, negligence and violations of Chapter 93A.

The Court refused to allow Premier to amend the Complaint and in its Order held:

"denying Motion to Amend on a number of grounds: Plaintiff seeks to amend its complaint to add two 'inventory attorneys' who did not have an attorney client relationship with it, and as such, irrelevant to plaintiff's claims. In any event, even if there were a basis to join them, the existence and relationship of these two attorneys to the defendant were known by the fall of 2004; this motion should have been brought six months sooner."

Corrigan Aff, Exhibit O, Order dated March 28, 2005 (Gertner, J.).

ID # 486903v06/10105-40/ 10.31.2007

Accordingly, the only claims which exist against Beverly Penzell in this matter are for the alleged conversion of the Law Office of Kris Penzell, P.A.'s files, which were produced to Premier in December 2004, and an alleged violation of Chapter 93A.

## ARGUMENT

### The Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In seeking summary judgment, initially, the burden is on the moving party to aver "an absence of evidence to support the nonmoving party's case." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir.1993) (quotation omitted). Once the moving party satisfies that requirement, the burden shifts to the nonmoving party, who must oppose the motion by presenting facts showing that there is a "genuine issue for trial." Id. To oppose the motion successfully, the nonmoving party may not rest upon "mere allegation or denials of [its] pleading" or "conclusory allegations, improbable inferences, and unsupported speculation." Id. at 841-42 (quotations omitted).

Premier is unable to meet is burden of proof with respect to either Count I (Conversion) or Count II (Violation of Chapter 93A), and, accordingly, Ms. Penzell is entitled to summary judgment as a matter of law.

### A.      Premier is Unable to Meet its Burden of Demonstrating that Beverly Penzell Converted any Property of Premier.

Aside from Premier's own admission that its claims for conversion were rendered moot by the 11th Judicial Circuit Court's ruling, as a matter of law, Premier cannot meet its burden of demonstrating any alleged conversion of the files, which, belong to the Law Offices of Kris E. Penzell.

14

Under Massachusetts and Florida law, a plaintiff asserting a claim of conversion must show that: (1) the defendant intentionally and wrongfully exercised control or dominion over personal property; (2) that plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; and (3) the plaintiff was damaged by the defendant's conduct. See Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 806 F.Supp. 291, 296-97 (D.Mass.1992)(citing Magaw v. Beals, 272 Mass. 334, 172 N.E. 347 (1930); see also In re Halmar Distributors, Inc., 968 F.2d 121, 129 (1st Cir.1992) and Warshall v. Price, 629 So.2d 903, 904 (Fla. 4th DCA 1993) ("Conversion is an 'act of dominion wrongfully asserted over another's property inconsistent with his ownership therein."); United American Bank of Cent. Florida, Inc. v. Seligman, 599 So.2d 1014, 1017 (Fla. 5th DCA), rev. denied, 613 So.2d 7 (Fla.1992)("tort of conversion constitutes the exercise of wrongful dominion or control of the property to the detriment of the rights of its actual owner.")[2]

Since Premier has no reasonable expectation of establishing <u>any</u> of these elements of conversion, summary judgment is amply warranted.

1.   <u>The Assertion of the Retaining Lien Over the Files Was Fully Justified and Proper Under Florida Law</u>.

Premier is unable to meet its burden of establishing that Ms. Penzell's assertion of the retaining lien over the files belonging to the Law Offices of Kris E. Penzell was an intentional and wrongful exercise of control or dominion over Premier's property.  Indeed, the assertion of the retaining lien was fully justified and permissible under Florida law.  "An attorney's lien on a client's papers and files is a possessory lien that the attorney holds until the fee is paid or until

---

[2] Since the elements of conversion are the same under Massachusetts and Florida law, this Court need not undergo a choice of law analysis.

15

adequate security for payment is posted." <u>Andrew Hall and Associates v. Ghanem</u>, 679 So.2d 60, 61 (Fla. 4th DCA 1996); <u>Rosenberg v. Levin</u>, 409 So.2d 1016 (Fla. 1982).

With respect to contingency fee cases, the law in Florida is clear that an attorney is entitled to the reasonable value of his services rendered on a file if he is discharged or has withdrawn before the occurrence of the contingency. <u>Jay v. Tranzenfield</u>, 952 So.2d 635, 637, n.1 (Fla. 4th DCA 2007)(citing <u>Rosenberg v. Levin</u>, 409 So.2d at 1019, 1021). The record is undisputed that Kris Penzell (or the inventory attorney on his Estate's behalf) reduced each of the underlying 19 matters to judgment and performed collection services. Corrigan Aff, Exhibit D, E and F. The record is also clear that Premier refused to pay any amounts to Ms. Penzell as the Personal Representative of the Estate of Kris Penzell to account for the fees due Kris Penzell. Penzell Aff. ¶ 10. Indeed, Premier refused to pay the Estate despite collecting over $25,000 on the *Arroyave* matters from the debtor, only two days after having obtained copies of the judgments and 1998 Fee Agreement from Ms. Penzell, in her capacity as Personal Representative of the Estate of Kris Penzell. Penzell Aff. ¶ 10, Exhibit # 4, Subordination Agreements in *Arroyave*.

As Personal Representative of the Estate of Kris Penzell, Ms. Penzell was not only entitled, but had a fiduciary duty to the Estate of Kris Penzell to assert a lien over all of the underlying litigation files for the fees due for legal work performed on the 19 files by Kris Penzell. Florida Statutes § 733.602(1) ("A personal representative is under a duty to settle and distribute the estate of the decedent in accordance with the terms of the decedent's will and this code as expeditiously and efficiently as is consistent with the best interests of the estate") and § 733.612(20) (provides personal representative with the authority to "[p]rosecute or defend claims or proceedings in any jurisdiction for the protection of the estate . . .") (2007).

16

Premier's own expert, Richard Storfer, conceded that, to the extent Ms. Penzell establishes that she was properly asserting a retaining lien over the files in question, Premier has no claim for conversion. Specifically, Mr. Storfer testified as follows:

> "I mean, they can – I mean, that is their defense. I mean, their defense to the conversion action is, 'Hey, wait a minute. A conversion? I was legally holding those. I had a right to hold them,' that is the defense, but if we prove otherwise you lose. You prove that you are right, you win. That's the way it works."

Corrigan Aff, Exhibit P, Deposition of Richard Storfer (Storfer") dated September 26, 2007 at 136-137, 139. Ms. Penzell has presented uncontroverted evidence that she properly asserted a retaining lien over the 19 files as personal representative of Kris Penzell's estate. Based on this uncontroverted evidence and Premier's own expert's testimony, Premier's cannot establish that Ms. Penzell's conduct was wrongful.

2.    <u>The Files Were Not the Property of Premier as it was Never a Client of the Law Office Kris E. Penzell</u>.

In order to assert a valid claim for conversion, Premier must demonstrate that the property in question was the property of Premier, or that it had a possessory or ownership interest over the property at the time of the alleged conversion. <u>Evergreen Marine Corp.</u>, *supra* at 296-97 and <u>Warshall v. Price</u>, *supra* at 904.

In fact, the files were not Premier's property at all – the files properly belonged to the Law Office of Kris E. Penzell. First, Premier was never a client of the Law Office of Kris Penzell. Corrigan Aff., Exhibit A, Penzell at 153-154; Exhibit B, Rones at 68-71; Exhibit G, Noe at 109. The files represent collection work performed by the Law Office of Kris Penzell for Barnett Bank, NationsBank and Bank of America, not Premier. Second, under Florida law, case files are generally considered to be the property of the attorney, not the client. <u>Dowda and Fields, P.A. v. Cobb</u>, 452 So.2d 1140, 1142 (Fla. 5th DCA 1984).

17

In <u>Dowda</u>, a client sued his former attorney who had performed collection work to obtain the contents of the litigation file. As did Kris Penzell in this case, the attorney had performed collection work against a debtor for his client and was successful in reducing the underlying promissory note to a judgment. <u>Id</u>. at 1142. When the underlying debtor appealed the judgment, the client dismissed the attorney and obtained successor counsel to defend the appeal. <u>Id</u>. The trial court ordered the attorney to deliver his file to the client (with the exception of intra-office notices and memoranda) to successor. <u>Id</u>. On appeal, the Fifth District Court of Appeals reversed the trial court's decision, finding that the litigation file properly belonged to the lawyer, not the client. <u>Id</u>. at 1143.

A review of the Court's rationale in <u>Dowda</u> is instructive on the distinction between the client's papers and the lawyer's file:

> "In Florida, as in most states, an attorney has a possessory lien on his client's papers, money, securities and other property in his possession and, according to the circumstances, a charging lien on a judgment, award or decree secured by him, or other property recovered, for his client for fees and costs due him for services rendered to the client in recovering such judgment or property. The charging lien is not dependent upon possession, but is based on equitable principles; the client should not be allowed to appropriate the whole of a judgment, aware or decree if the attorney who has secured it has not been compensated.
>
> Attorneys normally maintain an office file relating to matters involving professional services performed for a particular client as to a particular matter. _This is commonly referred to as that client's file but it only relates to that client and the file and its contents is the personal property of the attorney._ The attorney's file may or may not contain documents or other property of the client . . ."

<u>Id</u>. at 1142.

Here, Premier was not even Kris Penzell's former client. Indeed, the Florida Court found -- and Premier has conceded -- that it never had an attorney-client relationship with the Law

18

Offices of Kris Penzell. Corrigan Aff., Exhibit A, Penzell at 242-43 and Penzell Dep. Exhibit #

24 (June 4, 2003 letter from Thomas J. Morrissey to Beverly Penzell). As such, the 19 files are

properly the property of the Law Offices of Kris Penzell, not Premier.[3] Even if Premier had been

Kris Penzell's client (which it clearly was not), there is no suggestion that any client papers were

in the Law Office of Kris Penzell's file. As in <u>Dowda</u>, the underlying promissory notes had been

reduced to judgments and, as such, it is unclear what Premier claims it needed from Kris

Penzell's files to collect on its judgments. See, <u>Dowda</u> at 1142. ("The client's promissory note

had been reduced to final judgment and the litigation is over except for the appeal. No reason

has been offered [the former counsel]'s office file is needed by the client or successor counsel in

order to defend the appeal, nor can we imagine one.")

Regardless of what Premier may claim it needed from the files, because Premier was

never a client, and because the 19 files are the property of the Law Offices of Kris Penzell,

Premier cannot establish conversion of its property.

      3.     <u>Premier Has No Evidence That it Was Damaged in Any Manner Between the
Time the Files Were Demanded and Produced</u>.

Assuming, *arguendo*, that Premier was somehow able to demonstrate the first two

elements of conversion with respect to the files, it cannot demonstrate that it was damaged in any

manner by not having possession of the case files belonging to the Law Office of Kris Penzell

between June 2003 and December 2004, when the files were produced to Premier. The evidence

demonstrates that as early as November 2001, Premier wrote to each of the debtors directly in an

attempt to reach reduced value settlements and to avoid incurring litigation fees. Penzell Aff., ¶

---

[3] Moreover, it is clear that Kris Penzell has a charging lien with respect to each of the 19 judgments he obtained and any other judgments he obtained for which Premier hasn't included in this action, such as the *Arroyave* matter. As Personal Representative of the Estate of Kris Penzell, Ms. Penzell is the appropriate party to assert that lien. Florida Statutes §§ 733.602(1) and 733.612(20) (2007).

12, Exhibit # 5.  Premier had sufficient information to contact each of these debtors and perform the necessary collection work without requiring anything from the Law Office of Kris Penzell's files.

Jerald A. Freshman, Esquire, an attorney with over 34 years of experience in Florida collection law, was designated to serve as the defense expert in this matter.  Mr. Freshman has authored and lectured for the Florida Bar on the subject of debtors' and creditors' rights on three separate occasions since 1979 and has testified as an expert witness on the subject of creditors' rights on approximately 12 occasions in his career.  Corrigan Aff., Exhibit Q, Deposition of Jerald Freshman, Esq. ("Freshman") dated September 27, 2007 at 5, 8-9.  Mr. Freshman has reviewed each of the underlying collection files in this case and concluded that Premier's claims of damage due to the absence of the files are entirely without merit.   In particular, Mr. Freshman testified that Premier has identified no assets against which it could collect on the judgments during the time in which it claims Ms. Penzell converted the 19 files.  Corrigan Aff., Exhibit Q, Freshman at 21-22, 60-61 and Freshman Dep. Exhibit # 2 (Expert Report of Jerald Freshman).

Through its expert, Premier makes the conclusory assertion that debtors were allowed to refinance or sell their real estate because judgments were not recorded against the property in question. Corrigan Aff., Exhibit P, Stofer Dep. Ex. # 2 (Storfer Report) at 5-10, 12, 14. However, as Mr. Freshman points out, under Florida law and the Florida Constitution, where the debtor identifies the property as his or her Homestead, it is exempt in that a judgment does not ever attach to Homestead property.  As Mr. Freshman testified:

> "[I]t is a principle that is well-settled here in Florida.  It is not a legislative principle, it is a Constitutional provision and it is unique because the homestead exemption means that unless you have a mortgage on your house or labor done which benefits your house, that if a party has a judgment the judgment does not attach to the homestead.

20

It is like a force field such that the judgment never affects or touches or has any impact on homestead property such that a party against whom a judgment is obtained would be able to refinance, resell or convey the property in any manner they would, without have to address payoff or in any way concern themselves with judgments that are not mortgages or judgment for improvement of real property."

Corrigan Aff., Exhibit Q, Freshman at 32-33, 38.

Mr. Freshman concludes that with respect to 9 of the 19 files (Kiambu Chaka, Multicare Medical Supplies, James Ward, Redlands Air Conditioning, Velma's Golden Needle, Carmen Brancaccio, Ramdata, Jeni Jayson and Domingo Mazon) Premier is unable to establish damage because the property was the debtor's homestead. Corrigan Aff, Exhibit Q, Freshman at 30, 38, 41-43, 50-51, 54-57, 63-64, 87, 92 and Freshman Dep. Ex. # 2, (Freshman Report) at 2-4, 6-9, 15-16.

With respect to two of the files (Lanear Gibson, Bradley Boat Repair) Premier asserts that garnishment of the wages of the underlying debtors would have produced a recovery for Premier. Corrigan Aff., Exhibit P, Stofer Dep. Ex. # 2 (Storfer Report) at 9, 11. However, in both of these instances Mr. Freshman points out that the debtors were the head of households and thus exempt from garnishment under Florida law. Corrigan Aff, Exhibit Q, Freshman at 51-52, 67.

With respect to the 8 remaining files (Wisteria Branch, Top Ten Card, Hiram Martinez, Antonio Lioy, Design Homes Remodeling, Thomas Kenworthy, Supernet Online, Inc. and Ricardo Rios) Premier's expert failed to identify any assets, and in indeed, Premier's own internal asset search demonstrated that Premier was unable to find assets for these debtors and in several of the instances the debtors were no longer residing in Florida. Id. at 45-48, 65-66, 77-81, 93-94 and Freshman Dep. Exhibit # 2, (Freshman Report) at 14 re: Kenworthy.

21

Significantly, Premier's own expert testified that as a matter of law, Mr. Freshman's application of Florida law to these files was correct as to issues of the debtors' homestead and wage garnishment.    Corrigan Aff., Exhibit P, Storfer at 94, 120-121.    Mr. Freshman's conclusions, as conceded by Premier's expert, are further evidence that Premier has used this litigation in an effort to recover monies on judgments that in the real world would never have been collectible and to avoid fees due the Estate of Kris Penzell.

In fact, during the entire period of discovery of this case, including the exchange of interrogatories, expert interrogatories, expert reports and expert depositions, Premier has yet to identify a single asset in all 19 cases that dissipated or was otherwise beyond Premier's reach due to Ms. Penzell's retention of the files between the time that the demand was made in June of 2003 and the files were produced in December of 2004.  Without damage, Premier has no hope of establishing conversion and judgment should enter in favor of the defendants.

4.    <u>Premier's "Demand" for the Files Was Satisfied as the Files Were Produced in December 2004</u>.

Under Massachusetts's law, if the defendant legitimately acquired possession of the property under a good-faith claim of right, a party asserting a claim for conversion must show that its demand for return of the property was refused.  See <u>Evergreen Marine Corp. v. Six Consignments of Frozen Scallops</u>, 806 F.Supp. 291, 296-97 (D.Mass.1992)(citing <u>Magaw v. Beals</u>, 272 Mass. 334, 172 N.E. 347 (1930).  Here, Premier cannot meet its burden, as Ms. Penzell released copies of the files to Premier in December, 2004.

In an effort to protect the Estate's interest in any fees due and owing to the Law Office of Kris Penzell and to avoid breaching any fiduciary duty owed to the Estate, Ms. Penzell, as Personal Representative of the Estate, along with the court appointed inventory attorneys,

ID # 486903v06/10105-40/ 10.31.2007

requested permission to produce the copies of the files to Premier from the 11th Judicial Circuit Court in and for Miami-Dade County, Florida.  See Penzell Aff. ¶ 15; Corrigan Aff., Exhibit G, Noe at 116-17 and Exhibit B, Rones at 79.  A hearing was held by the Florida Court on December 6, 2004.  Premier was represented by its current counsel who participated in the hearing on its behalf.  Penzell Aff. ¶ 15-16 and Exhibit M, Order at ¶ 4 (discussed below).

The Court considered the request and the relative positions the parties and on December 12, 2004, issued an order, permitting Ms. Penzell to release copies of the 19 files to Premier.  Ms. Penzell immediately produced copies of the files to Premier in mid-December 2004.  As the files were produced within a reasonable time after the parties submitted the dispute for determination by the court in Florida, Premier is unable to demonstrate that its "demand" for Law Office of Kris Penzell's files was not satisfied.  Accordingly, its claim for conversion cannot be maintained under Massachusetts law.  See Evergreen Marine Corp. *supra* at 296-97.

## B.    Premier is Unable to Meet its Burden of Establishing Liability Under Chapter 93A.

### 1.    Ms. Penzell's Conduct was Not Unfair or Deceptive as a Matter of Law.

Premier is unable to demonstrate any Chapter 93A violation.  In light of the fact that Premier cannot succeed on its conversion claim, its Chapter 93A claim also fails as a matter of law.

The undisputed facts establish that Beverly Penzell did not convert any property belonging to Premier.  As Personal Representative of the Estate of Kris Penzell, Ms. Penzell was obligated to preserve assets and collect on accounts receivable.  Her conduct was fully justified under Florida law.  The retaining lien, authorized under Florida law, was a means to preserve the Estate's assets and collect on fees due the Estate on these files.    Before releasing the files to

23

Premier, Ms. Penzell sought permission from the same Florida Court in which she was appointed as Personal Representative. Once the Florida Court ordered the copying of the files for production to Premier, Ms. Penzell immediately complied with this order. There is no evidence to support the claim that her conduct was unfair or deceptive.

        2.    <u>The Alleged Conduct Did Not Occur Primarily and Substantially Within the Commonwealth of Massachusetts</u>.

Even assuming, *arguendo*, that Premier can establish that withholding the files was unfair or deceptive, that conduct occurred exclusively in Miami, Florida, where Ms. Penzell resides, where the Law Offices of Kris Penzell is located, where the files were maintained and where Premier suffered its alleged loss.

Chapter 93A § 11, eighth paragraph, states:

> "No action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily or substantially within the commonwealth."

In interpreting this statute, the Appeals Court has taken a "functional approach" in which it considers whether "the preponderance of the wrongful conduct. . . and . . . the essential elements of the transaction . . . took place in Massachusetts." <u>Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.</u>, 25 Mass. App. Ct. 302, 311 (1988).

The First Circuit has adopted a three-prong balancing test that looks to (1) where the defendant commits the unfair or deceptive practice; (2) where the plaintiff receives or acts on the wrongful conduct; and (3) where the plaintiff sustained the losses caused by the wrongful conduct. See <u>Play Time, Inc. v. LDDS Metromedia Communications, Inc.</u>, 123 F.3d 23, 33 (1st Cir. 1997); <u>Roche v. Royal Bank</u>, 109 F.3d 820, 829, 831 (1st Cir. 1997); <u>Clinton Hosp. Ass'n v. Corson Group, Inc.</u>, 907 F.2d 1260, 1265-1266 (1st Cir. 1990).

24

However, the Federal courts have had a tendency to decide the issue by looking at where the "bulk" of the relevant transactions or conduct occurred. See, e.g., <u>Roche v. Royal Bank</u>, *supra* at 803 ("bulk" of wrongful acts; "slightly more" misrepresentations received in Canada); <u>Computer Sys. Eng'g, Inc. v. Quantel Corp.</u>, 571 F.Supp. 1365, 1372 (D.Mass.1983), aff'd, 740 F.2d 50 (1st Cir. 1984) ("more of the relevant transactions and action occurred within Massachusetts"); <u>Evans v. Yegen Assocs., Inc.</u>, 556 F.Supp. 1219, 1228 (D.Mass.1982) (same).

Since the alleged conduct complained of by Premier and Premier's alleged losses occurred exclusively in Florida, the 93A claim is subject to dismissal. The files belonged to the Law Office of Kris Penzell, which is located in Miami, Florida. The files were located in Florida and so too was Ms. Penzell when she rightfully asserted the retaining lien over these files pursuant to Florida law, in her capacity as the Personal Representative of the Estate. The files pertained to Florida judgments obtained against debtors in Florida. Premier's alleged loss -- its alleged inability to levy on Florida assets due to the absence of the files -- was suffered entirely in Florida.

All of the relevant conduct in question occurred in Florida, not the Commonwealth of Massachusetts, and as such Penzell is entitled to Summary Judgment on Premier's Chapter 93A claim.

## **CONCLUSION**

For the foregoing reasons, Premier's complaint asserting claims for conversion and relief under Chapter 93A fails as a matter of law and summary judgment should enter in favor of Defendant Beverly Johnson Penzell.

ID # 486903v06/10105-40/ 10.31.2007

Respectfully submitted,

BEVERLY JOHNSON PENZELL,
By her attorneys,


/s/  Joseph W. Corrigan
Catherine J. Savoie, BBO#544599
Joseph Corrigan, BBO#647393
POSTERNAK, BLANKSTEIN & LUND, L.L.P.
Prudential Tower
800 Boylston Street
Boston, MA  02199-8004
Dated: October 31, 2007        617.973.6100

ID # 486903v06/10105-40/ 10.31.2007