UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. 03-CV-12497

PREMIER CAPITAL, LLC             )
              Plaintiff,       )
                               )
              v.               )
                               )
BEVERLY JOHNSON PENZELL,         )
d/b/a Law Office of Kris E. Penzell   )
and BEVERLY JOHNSON              )
PENZELL, as Personal             )
Representative of the Estate of       )
Kris E. Penzell                  )
              Defendants.      )

## DEFENDANT BEVERLY JOHNSON PENZELL'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT

1.      Kris E. Penzell was a creditors' attorney in Miami, Florida, and the Law Office of Kris E. Penzell, P.A. was established in the late 1970s and early 1980s, his practice consisted generally of representing clients in creditor's rights matters in Florida.   Corrigan Aff., Exhibit A, Deposition of Beverly Penzell ("Penzell") dated September 25, 2007 at 27, 30, 34; Penzell Aff. ¶ 1.

2.      Beverly Johnson Penzell, ("Ms. Penzell"), the defendant in the current action, was married to Kris E. Penzell.  Corrigan Aff., Exhibit A, Penzell at 29.  Kris Penzell died on March 8, 2000.  Corrigan Aff., Exhibit A, Penzell at 36; Penzell Aff. ¶ 1.  The Law Office of Kris Penzell, P.A. was always located in Miami, Florida up to the time of Kris Penzell's death in 2000.  Corrigan Aff., Exhibit A, Penzell at 44.

3.      Ms. Penzell was appointed the Personal Representative of the Estate of Kris E. Penzell on March 30, 2000, in the probate matter which is currently pending in the 11th Judicial Circuit of Florida, Miami-Dade County, Case No. 00-1320.  Penzell Aff. ¶ 1; Corrigan Aff., Exhibit A, Penzell at 37, 45.

4.      In conjunction with the probate matter, on March 24, 2000, an administrative judge appointed Victor K. Rones as inventory attorney to oversee the winding down of the Law Office of Kris E. Penzell, P.A.  Corrigan Aff., Exhibit B, Deposition of Victor Rones ("Rones") dated September 24, 2007 at 10-12 and Exhibit C, Order Appointing Inventory Attorney dated March 24, 2000.

5.      The Law Office of Kris E. Penzell, P.A. had previously provided services for Barnett Bank, a banking association chartered in Jacksonville, Florida.  Penzell Aff. ¶ 2; Corrigan Aff., Exhibit A, Penzell at 75-76 and Penzell Dep. Exhibit # 2, ¶ 13.  Barnett Bank thereafter merged with NationsBank, N.A. ("NationsBank"), a banking association chartered in Charlotte, North Carolina.  Penzell Aff. ¶ 2.

6.      Kris Penzell obtained 12 of the 19 judgments at issue in this case on behalf of Barnett Bank in the 1980s.  Corrigan Aff., Exhibit D, Barnett Bank Judgments.  With respect to the other two judgments obtained on behalf of Barnett Bank, Penzell obtained one in 1991 and the other in 1998.  Id.  The following list outlines the judgments obtained on behalf of Barnett Bank, including judgments in the following matters:

| FILE NAME | JUDGMENT OBTAINED BY PENZELL |
|---|---|
| (1)  Kiambu and Idella Chaka | 8/03/1987 |
| (2)  James Ward/Metropolitan Industries | 10/31/1988 |
| (3)  Jack D. Hardee/Redlands Air Conditioning | 04/27/1989 |
| (4)  Gary & Jennair West/Top Ten Card Co. Inc. | 10/02/1987 |
| (5)  Lanier Gibson/Lanier & Sons Steam Clean | 08/11/1997 |
| (6)  Clifford Butler, Jr./Velma's Golden Needle, Inc. | 04/28/1999 |

|  |  |
|---|---|
| (7)  Carmen Brancaccio d/b/a Golden Razor Barber Salon | 08/03/1987 |
| (8)  Harold Edelstein and Louis Grilla/Design Home Remodeling | 03/31/1987 |
| (9)  Hiram Martinez | 02/20/1987 |
| (10)  Antonio Lioy | 10/24/1988 |
| (11) Thomas W. Kenworthy | 07/08/1986 |
| (12) Jeni L. Jayson d/b/a Infant Wear | 11/30/1989 |
| (13) Ricardo Rios and Ben Gross | 11/27/1984 |
| (14) Domingo and Maria Mazon/M&R Latin American, Inc. | 06/18/1989 |

Corrigan Aff., Exhibit D, Barnett Bank Judgments.

7.      On December 23, 1998, the Law Office of Kris E. Penzell, P.A. entered into a contingency fee agreement with NationsBank (the "1998 Fee Agreement"), pursuant to which the Law Office of Kris E. Penzell, P.A. agreed to prosecute certain collection matters in Florida arising from certain collection accounts of NationsBank (the "collection accounts").  Penzell Aff. ¶ 2 and Penzell Aff., Exhibit # 1.  The contingency fee agreement itself provides that it was executed in North Carolina and is governed by North Carolina law.  Id.  Three of the judgments at issue in this case were obtained by Kris Penzell on behalf of NationsBank after the execution of the 1998 Fee Agreement and are listed below:

| FILE NAME | JUDGMENT OBTAINED BY PENZELL |
|---|---|
| (1)  Multicare Medical Supplies/Pedro and Maria Garcia | 12/1/1999 |
| (2)  Bradley Boat Repairs/Andrew and Therese Bradley | 1/4/1999 |
| (3)  Richard Ramos/Ramdata | 7/27/1999 |

Corrigan Aff., Exhibit E, NationsBank Judgments Obtained by Kris Penzell.

Two judgments were obtained by Victor Rones after Kris Penzell died, in his role as inventory attorney for the Estate of Kris Penzell, those judgments are the following:

| FILE NAME | JUDGMENT OBTAINED BY INVENTORY ATTORNEY |
|---|---|
| (1) Supernet Online, Inc. | 12/19/2000 |
| (2) Wisteria Branch/William Gerald | 02/02/2001 |

Corrigan Aff., Exhibit F, NationsBank Judgments Obtained by Victor Rones as Inventory Attorney for the Law Office of Kris E. Penzell.

Despite having performed periodic collection work on the files beginning in the early 1980s up through the time of his death in March 2000, Kris Penzell was unable to find assets to satisfy the judgments in any of the files at issue in this case. Corrigan Aff., Exhibit A, Penzell at 75-77, 79-80, 93-94.

8.    Subsequent to the execution of 1998 Fee Agreement between NationsBank and the Law Office of Kris E. Penzell, P.A., the assets of NationsBank, including the 19 judgments at issue in this case were acquired by Bank of America, a banking association chartered in Charlotte, North Carolina. Penzell Aff. ¶ 2; Corrigan Aff., Exhibit A, Penzell at 77-78.

9.    In late 1999, Kris Penzell and Bank of America d/b/a Nationsbank, N.A. executed a settlement agreement and release (the "1999 Settlement Agreement and Release") acknowledging that with respect to 18 of the 19 judgments at issue in this case, the 1998 Fee Agreement would serve as the contingency fee agreement controlling the relationship between Kris Penzell and Bank of America.[1] Corrigan Aff, Exhibit A, Penzell at 125, 128-29 and Penzell Dep. Exhibit # 4, 1999 Settlement Agreement and Release.

10.    At some time subsequent to Kris Penzell's death, all or substantially all of the files at issue in this case had been "no-asseted" by either NationsBank or Bank of America, which meant that the inventory attorney was not to perform further work on the matter without the bank's express permission. Corrigan Aff., Exhibit B, Rones at 22-24; Exhibit A, Penzell at 147 and Exhibit G, Deposition of Susan I. Noe ("Noe") dated September 24, 2007 at 50-51. This

---

[1] With respect to one file, Domingo and Maria Mazon/M&R Latin American, Inc., in which the judgment was obtained in 1989, Kris Penzell gave the Bank of America a release with respect to his attorneys' fees incurred by the Law Office of Kris Penzell and the parties agreed that no further collection work would occur on the matter unless the Bank of America provided its consent in writing. See Exhibit A, Penzell Dep. Exhibit # 4, 1999 Settlement Agreement and Release.

typically indicated that the bank was preparing to sell the file.  Corrigan Aff., Exhibit A, Penzell at 147; Exhibit G, Noe at 50-51.

11.    In September 2001, a year and a half after Kris E. Penzell died, Bank of America solicited private bids for 84 judgments, which it pooled together and referred to as a "distressed portfolio."  Corrigan Aff., Exhibit H at "Distressed Portfolio Bid Form".  Among the pool of 84 judgments were the 19 judgments previously obtained by the Law Offices of Kris Penzell and in dispute here.  Id. at "Loan Schedule".

12.    According to records subpoenaed by Ms. Penzell from the Bank of America, Premier was the successful bidder and paid $136,657.37 for the 84 judgments, which represented 3.02460% of the $4,518,193.04 outstanding legal balance on the judgments.  Corrigan Aff., Exhibit I, Letter from Bank of America dated January 11, 2007 in Response to Ms. Penzell's Subpoena Enclosing Bank of America Bidder Closing Summary for Pool # 101 in Offering #DP010912.

13.    On September 19, 2001, Premier and Bank of America executed a Loan Sale Agreement.  Corrigan Aff., Exhibit J, George Dep. at 52-53, 85-86, 88 and George Dep. Exhibit # 6, Loan Sale Agreement.  The Loan Sale Agreement provides, in relevant part, the following provisions:

> 3.4  **Pending Legal Proceedings.**  With respect to any Loan that is, as of the Transfer Date, the subject of litigation, arbitration, bankruptcy, foreclosure or other legal proceeding, Buyer agrees that is shall, to the extent applicable, at its own cost, with thirty (30) days after the Transfer Date, (i) notify the Clerk of Court, any foreclosing trustee and all counsel of record in each such proceeding of the transfer of the Loan from Seller to Buyer, ***(ii) file pleadings to relieve seller's counsel of record from further responsibility in such litigation (unless said counsel has agreed, with Seller's written consent, to represent Buyer in said proceedings at Buyer's expense)***, and (iii) remove Seller as a party in such action and substitute Buyer as the real party-in-interest, and change the caption thereof accordingly.  (See p. 8)  (emphasis added)
>
> . . .

5

6.4    **Contingency Fee Agreement.**  This sale includes Loans that are the subject of a contingency fee agreement or arrangement with counsel representing Seller.  Buyer shall purchase such Loans subject to and shall assume all obligations of the contingency fee agreement.  (See p. 10.)

. . .

7.10    **Status of Buyer.**  Buyer represents, warrants and certifies to Seller that it is (i) a financial institution, (ii) an institutional purchaser including a sophisticated purchaser that is in the business of buying or originating loans of the type being purchased or that otherwise deals in such loans in the ordinary course of the Buyer's business, or (iii) an entity that is defined as an accredited investor under the federal securities laws . . . (See p. 12)

. . .

9.3    **Economic Risk.  *Buyer acknowledges that the Loans, the Transfer Documents and the Collateral may have limited or no liquidity and Buyer has the financial wherewithal to own the Loans for an indefinite period of time and to bear the economic risk of an outright purchase of the Loans and a total loss of the Purchase Price of the Loans.***  (See p. 14) (emphasis added)

Corrigan Aff., Exhibit J, George Dep. at 52-53, 85-86, 88 and George Dep. Exhibit # 6, Loan

Sale Agreement.

14.    In November 2001, Premier, without notifying or copying the Penzell Law Office,

began writing to each of the underlying debtors directly and offered to settle the outstanding

judgments at significantly reduced value, often times at less than 25% of the outstanding amount

owed.   Penzell Aff., ¶ 12 and Exhibit # 5 (Copies of the various letters sent by Premier to

Judgment Debtors).

15.    On or about the last quarter of 2001, Ms. Penzell was contacted by Nick

Maimonis, identifying himself as someone working for Premier, which had purchased certain

judgments from the Bank of America.  Mr. Maimonis acknowledge that certain of the judgments

Premier had purchase, had been obtained by Kris Penzell.  Ms. Penzell advised Mr. Maimonis

that Kris Penzell was her husband, that he had passed away in 2000, that she was not an attorney.

She further advised Mr. Maimonis that she was Personal Representative of Kris Penzell's Estate and that was working with an inventory attorney to wind down the affairs of Kris Penzell's law practice, including the Barnett Bank/NationsBank/Bank of America matters.  Penzell Aff. ¶ 8.

16.    On January 11, 2002, Mr. Maimonis, on behalf of Premier, contacted Ms. Penzell for the purpose of obtaining copies of two judgments regarding the *NationsBank v. Arroyave* matters and a copy of the 1998 Fee Agreement between Kris Penzell and NationsBank.  Ms. Penzell assisted Premier and that same day forwarded Premier a copy of the judgments and fee agreement it requested.  Penzell Aff. ¶ 9, Exhibit # 2 (Facsimile from Beverly Penzell, Personal Representative of the Estate of Kris Penzell to Nick Maimonis dated January 11, 2002); Corrigan Aff., Exhibit A, Penzell at 183-184.

17.    In January or February 2002, Nick Maimonis, an individual who identified himself as working for Premier, contacted the then inventory attorney, Victor Rones, and indicated that Premier had purchased certain judgments that NationsBank had on which Kris Penzell had previously performed collections work.  Mr. Rones identified himself as the inventory attorney representing the Estate of Kris Penzell, and indicated that if Premier had in fact purchased the files at issue, it would need to obtain counsel because Premier was not a client of the Law Office of Kris Penzell, or Mr. Rones.  Mr. Maimonis indicated that Premier might want to retain Victor Rones to perform collections work for Premier with respect to the files. Corrigan Aff., Exhibit B, Rones at pp 64-65, 70.

18.    During this conversation, Mr. Maimonis indicated that Premier had a standard contingency fee agreement that it used with respect to all lawyers it hired to work on Premier's files and that he would forward it to Mr. Rones to review.  Mr. Rones agreed to review a proposed contingency fee agreement to see if he could live with it.  Mr. Maimonis called a

second time and asked Mr. Rones for an update. Mr. Rones reminded Mr. Maimonis again that Premier had to get its own counsel or send Mr. Rones a contingency fee agreement to review. Mr. Maimonis again indicated that he would forward an agreement. Despite Mr. Maimonis's representations, Premier never forwarded a contingency fee agreement to Mr. Rones. Corrigan Aff., Exhibit B, Rones at pp 64-65, 70.

19.     Premier never hired Mr. Rones or the Law Office of Kris Penzell, P.A. to perform legal services while Mr. Rones was inventory attorney. Corrigan Aff., Exhibit B, Rones at pp. 64-65, 70 and Exhibit A, Penzell at 256; Penzell Aff. ¶ 13.

20.     On April 29, 2002, Susan I. Noe was appointed as inventory attorney to the Estate of Kris E. Penzell and Victor Rones was substituted out as inventory counsel. Corrigan Aff., Exhibit K, Order on Agreed Motion to Substitute Inventory Attorney dated April 29, 2002.

21.     Beginning in April 2002, despite failing to present a fee agreement for review, Premier began a pattern of attempting to re-refer the 19 judgments it had purchased from the Bank of America to the Law Office of Kris E. Penzell, P.A. Premier would send the Law Office copies of materials it had with respect to some of the judgments previously obtained by Kris Penzell. Corrigan Aff., Exhibit A, Penzell at 158-160. Despite having been informed that Premier needed to send a new retainer agreement for the inventory attorney to review, Premier continued to try to coerce the Law Office to perform work retaining the then inventory attorney, Susan Noe. Penzell Aff. ¶¶ 11-13; Corrigan Aff., Exhibit A, Penzell at 141, 162-163, 165, 168, 170 and Exhibit G, Noe at 62-63, 67, 79, 87, 92, 101, 103-104.

22.     On numerous occasions during 2002, Premier would demand that the then inventory attorney, Susan Noe, and Ms. Penzell provide information and updates on the collection files associated with the judgments Premier had purchased. Ms. Penzell repeatedly

informed Premier that in order to have collection work performed, Premier would need to present the Law Office of Kris E. Penzell, P.A. with a retainer agreement that could be approved and executed by the inventory attorney, Susan Noe.  For months, Premier failed and refused to provide a retainer agreement, but still demanded information and updates about the files. Corrigan Aff., Exhibit A, Penzell at 152 and Exhibit G, Noe at 62-63, 67, 79, 87, 92, 101, 103-104; Penzell Aff. at ¶¶ 11, 13.

23.     Indeed in August 2002, inventory Attorney Susan Noe provided Premier with a comprehensive summary of the status of the various collections cases that the Law Office of Kris E. Penzell, P.A. had previously serviced for NationsBank, and set forth the terms under which Premier could retain the law office to perform collections work on the judgments it had purchased.  Corrigan Aff., Exhibit G, Noe at 86-87 and Noe Dep. Exhibit # 8 (Letter from Susan I. Noe, Esq. to Nick Maimonis (Premier), dated August 6, 2002).  The Estate of Kris E. Penzell incurred additional expenses performing the background research to update Premier on the status of these various files in an effort to be retained by Premier to perform collection activity on these accounts.  Exhibit G, Noe at 89-90, 100.

24.     On September 25, 2002, in response to Premier's request that the Law Office of Kris E. Penzell, P.A. perform work on the accounts purchased by Premier, Ms. Penzell sent a letter reminding Premier that a retainer agreement would need to be presented to the inventory attorney for approval before work could be performed.  Corrigan Aff., Exhibit A, Penzell at 182 and Penzell Dep. Exhibit # 11 (Letter from Beverly Penzell to Nick Maimonis dated September 25, 2002).

25.     Premier never hired Attorney Noe or the Law Office of Kris Penzell, P.A. to perform work on Premier's behalf.  Corrigan Aff., Exhibit A, Penzell at 152, 210-213, 256; see

Exhibit G, Noe at 101, 103-104, 109.   Although Premier did eventually forward a retainer agreement to Ms. Noe for review in April 2003, sixteen months after promising to forward one to Mr. Rones, the terms of that contingency fee agreement were not acceptable to Ms. Noe.  Exhibit G, Noe at 92, 109.

26.     On or about June 4, 2003, Premier Capital, LLC, by and through its current counsel, demanded that Ms. Penzell release the collections files associated with the collection activities Kris E. Penzell had performed on behalf of Barnett Bank and NationsBank.   Penzell Aff. ¶ 14; Corrigan Aff., Exhibit A, Penzell at 242-43 and Penzell Dep. Exhibit # 24 (June 4, 2003 letter from Thomas J. Morrissey to Beverly Penzell).

27.     As set forth in that letter, Premier was aware as of June 4, 2003, that Ms. Penzell was asserting a retaining lien against the collection files in question to obtain fees due and owing to the estate of Kris E. Penzell on the files purchased by Premier.  As counsel for Premier stated in his letter:

> "As I understand your position, you have purported to continue to provide legal services to Premier regarding the matters, despite the following facts:  *Premier has never entered into an agreement for legal services with your office; Mr. Penzell passed away before Premier purchased title to the matters from [Bank of America]. . .*"

Id. (emphasis added).

28.     Ms. Penzell learned that Premier had succeeded in collecting over $25,000 on the *Arroyave* matters and did so by subordinating the judgments previously obtained, including one judgment obtained by the Law Office of Kris Penzell, P.A.  Penzell Aff., ¶ 10 and Exhibit # 4, Subordination Agreements in *NationsBank v. Arroyave*; Corrigan Aff., Exhibit A, Penzell at 275-78.  Premier failed to disclose the settlement reached on January 15, 2002 to Ms. Penzell and further failed to pay the contingency fees due the Law Offices of Kris E. Penzell, P.A, despite

the fact that Kris Penzell performed legal services on the underlying matters, including significant collection work on both judgments.  Penzell Aff. ¶ 10; Corrigan Aff., Exhibit A, Penzell at 138-39, 142-44, 150, 265, 275-78.

29.    Ms. Penzell refused to release the Law Offices of Kris E. Penzell's files due to the fact that Premier had not paid the Estate of Kris E. Penzell the 30% contingency fee due and owing with respect its collection on the *Arroyave* matters and for other work Kris Penzell had performed on the various files on behalf of Barnett Bank and NationsBank which Premier purchased.  Penzell Aff. ¶14; Corrigan Aff., Exhibit A, Penzell at 109-114, 138, 265, 275-278. Ms. Penzell was advised by the inventory attorneys and her own probate counsel that under Florida law she was required, as personal representative of the Estate of Kris E. Penzell, to retain the files as a retaining lien until the amounts due and owing were paid or adequate security was rendered by Premier.  Penzell Aff. ¶ 14; Corrigan Aff., Exhibit A, Penzell at 153-54.  Ms. Penzell clearly advised Premier that she was asserting a retaining lien on the files and that was the basis of her refusal to produce copies those files to Premier.  Corrigan Aff., Exhibit A, Penzell at 153-54.

30.    Victor Rones and Susan Noe, both lawyers who are admitted to practice law in Florida, testified that a lawyer who performs services on a matter in Florida is entitled to assert a retaining lien against the file for the value of the services rendered on the matter.  Corrigan Aff., Exhibit B, Rones at 69-71; Exhibit G, Noe at 118.  With respect to contingency fee cases, if the contingency has substantially occurred, then the attorney is entitled to the percentage set forth in the contingency fee agreement, if not, then the lawyer is entitled to recover his fees on an hourly basis.  Exhibit B, Rones at 71.

31.     On August 21, 2003, Premier filed a two-count complaint against Beverly J. Penzell d/b/a as the Law Offices of Kris E. Penzell and Beverly Johnson Penzell, as Personal Representative of the Estate of Kris E. Penzell.  Count I, alleges:

> "14.     Beverly Johnson Penzell converted to her own use, and/or for use in connection with the estate of Kris E. Penzell, Premier's case files and other litigation materials belonging to Premier.
>
> 15.     Upon information and belief, Beverly Johnson Penzell seeks to convert to her own use, and/or for use in connection with the estate of Kris E. Penzell, as purported legal fees, moneys [sic] received from litigants in connection with such files and materials.

Corrigan Aff., Exhibit L, Complaint at 4-5, ¶¶ 14, 15.

32.     Count II alleges that Ms. Penzell's conduct "including, but not limited to, her refusal to return the collection matters, constitute unfair or deceptive acts or practices within the meaning of M.G.L. c. 93A, Sections 2 and 11."  Corrigan Aff., Exhibit L, Complaint at 5, ¶ 18.

33.     Since Premier was never a client of the Law Office of Kris Penzell (or the inventory attorneys), the files were not Premier's case files and other litigation materials belonging to Premier, as alleged in the Complaint.  Corrigan Aff., Exhibit A, Penzell at 153-154; Exhibit B, Rones at 68-71; Exhibit G, Noe at 109.  Moreover, neither Ms. Penzell nor the Law Office of Kris Penzell, P.A. collected any monies on any of the 19 judgment obtained the Law Office of Kris Penzell, P.A. since Premier purchased the judgments in 2001.  Penzell Aff., ¶¶ 4-7.

34.     To protect the estate of Kris E. Penzell's interests in any fees due and owing and to avoid breaching any fiduciary duty owed to the Estate of Kris Penzell, the inventory attorneys, Ms. Penzell, as Personal Representative of Estate of Kris Penzell, submitted the matter to the 11th Judicial Circuit in and for Miami-Dade County, Florida, requesting permission to have the files produced to Premier.  Penzell Aff. ¶ 15; Corrigan Aff., Exhibit G, Noe at 116-17 and

Exhibit B, Rones at 79. A hearing was held by the 11th Judicial Circuit Court on December 6, 2004 and Premier was represented by its current counsel in that matter and participated in the hearing. Penzell Aff. ¶¶ 15-16 and Exhibit M, Order at ¶ 4 (discussed below).

35.    On December 10, 2004 the 11th Judicial Circuit Court in Florida entered an Order, which made a number of findings and, in relevant part, provides:

1.    Until his death on March 8, 2000, Kris Evan Penzell, Esq. primarily represented banks and other financial institutions, but neither he, in his individual capacity, nor Kris Evan Penzell, P.A. was neither retained to nor provided legal services to Premier.

2.    Upon Mr. Penzell's death, Attorneys Victor Rones and Susan Irene Noe, pursuant to Rule 1-3.8, Rules Regulating the Florid Bar ("Rule"), were successively appointed as inventory attorneys for Kris Evan Penzell, P.A., with Mr. Rones acting as the first inventory attorney, and Ms. Noe the second and current inventory attorney.

3.    Neither Mr. Rones nor Ms. Noe, on behalf of themselves, the Estate of Kris Evan Penzell or Kris Evan Penzell, P.A., ever entered into a written agreement or otherwise agreed to provide legal services to Premier.

4.    With regard to the request by Premier for files maintained at Kris Evan Penzell, P.A. in connection with the accounts purchase by Premier from Bank of America, said files shall be copied forthwith by Kris Evan Penzell, P.A. and delivered directly to Premier's counsel in this proceeding, Thomas James Morrissey, Esq., c/o Premier Capital, LLC, 226 Lowell Street, Wilmington, Massachusetts 01887.

Corrigan Aff., Exhibit M, Findings and Order.

36.    After the 11th Judicial Circuit granted Ms. Penzell permission to release copies of the Law Office of Kris E. Penzell's files to Premier, she immediately produced the files to counsel for Premier, which were accepted on December 16, 2004. Penzell Aff., ¶¶ 17-18.

37.    On January 20, 2005, Premier filed a Motion to Amend the Complaint, seeking to add the Florida inventory attorneys Victor K. Rones and Susan I. Noe as defendants in this action. In addition, Premier was no longer interested in pressing the claim for conversion. Indeed, even Premier recognized that the conversion aspect of their case had been rendered

moot, pointing out in its Motion to Amend that "[a] Probate Court judge ordered return of the files. To the best of Premier's understanding, therefore, Ms. Penzell no longer retains any files, and certain factual allegations of the Complaint in this action no longer obtain [sic]." Corrigan Aff., Exhibit N, Premier Capital, LLC's Motion to Amend dated January 10, 2005 at 5.

38.    Instead, Premier sought to Amend the Complaint to assert claims against Beverly Penzell and the two inventory attorneys for breach of contract, intentional misrepresentation, negligent misrepresentation, negligence and violations of Chapter 93A.

The Court refused to allow Premier to amend the Complaint and in its Order held:

"denying Motion to Amend on a number of grounds: Plaintiff seeks to amend its complaint to add two 'inventory attorneys' who did not have an attorney client relationship with it, and as such, irrelevant to plaintiff's claims. In any event, even if there were a basis to join them, the existence and relationship of these two attorneys to the defendant were known by the fall of 2004; this motion should have been brought six months sooner."

Corrigan Aff, Exhibit O, Order dated March 28, 2005 (Gertner, J.).

39.    Premier's own expert, Richard Storfer, testified that to the extent Ms. Penzell was retaining the files in question on the basis of a retaining lien for fees owed the Law Office of Kris Penzell, then that would defeat Premier's claim for conversion, because Ms. Penzell's withholding of the files would be lawful -- not wrongful as required under the tort of conversion. Corrigan Aff, Exhibit P, Deposition of Richard Storfer (Storfer") dated September 26, 2007 at 136-137, 139. Specifically, Mr. Storfer testified as follows:

"I mean, they can – I mean, that is their defense. I mean, their defense to the conversion action is, 'Hey, wait a minute. A conversion? I was legally holding those. I had a right to hold them,' that is the defense, but if we prove otherwise you lose. You prove that you are right, you win. That's the way it works."

Id. at 137.

40.     Mr. Storfer further acknowledged that there was no written attorney-client agreement between Premier and the Law Office of Kris Penzell.  Corrigan Aff, Exhibit P, Storfer at 77.  Moreover, Mr. Storfer acknowledged that it appeared the parties were never able to enter into an agreement.  Id. at 77-80.

41.     In contrast, Mr. Storfer also acknowledged that Premier hired him and other counsel while the Law Office of Kris Penzell were still counsel of record on the Premier files. Id. at 165-167, 173-174.  Mr. Storfer admitted that because judgments had been obtained in all of these cases, Premier did not need the Law Office of Kris Penzell to substitute itself out. According to Mr. Storfer, Premier was free to hire any lawyer of its choosing at any time since the time of Premier's purchase of the judgments in September 2001.  Id. at 165-166.

42.     Ms. Penzell's expert, Jerald Freshman, has been practicing law in Florida since 1973.   Corrigan Aff., Exhibit Q, Deposition of Jerald Freshman, Esq. ("Freshman") dated September 27, 2007 at 8. Mr. Freshman has authored and lectured for the Florida Bar on the subject of debtors' and creditors' rights on three separate occasions since 1979.  Id. at 9.  In addition, Mr. Freshman has testified as an expert witness on the subject of creditors' rights on approximately 12 occasions in his career.  Id. at 5.

43.     Mr. Freshman testified consistent with the expert report he issued in this matter, in which he concluded that in each of the underlying 19 files, Premier failed to establish that assets were dissipated or that property available for collection was lost because of the alleged conversion.   Specifically, Mr. Freshman concluded in each instance that the property cited by Premier as lost was exempt property under Florida law and would not have been available for execution by Premier.  Corrigan Aff., Exhibit Q, Freshman at 21-22, 60-61 and Freshman Dep. Exhibit # 2 (Expert Report of Jerald Freshman).

44.     In many instances Premier aasserts that debtors were allowed to refinance or sell their homes because judgments were not recorded against the property in question.  However, as Mr. Freshman points out, under Florida law and the Florida Consitution, where the debtor identifies the property as his or her Homestead, it is exempt in that a judgment does not ever attach to Homestead property.  As Mr. Freshman testified:

> "[I]t is a principle that is well-settled here in Florida.  It is not a legislative principle, it is a Constitutional provision and it is unique because the homestead exemption means that unless you have a mortgage on your house or labor done which benefits your house, that if a party has a judgment the judgment does not attach to the homestead.
>
> It is like a force field such that the judgment never affects or touches or has any impact on homestead property such that a party against whom a judgment is obtained would be able to refinance, resell or convey the property in any manner they would, without have to address payoff or in any way concern themselves with judgments that are not mortgages or judgment for improvement of real property."

Corrigan Aff., Exhibit Q, Freshman at 32-33, 38.

Mr. Freshman concludes that with respect to 9 of the 19 files (Kiambu Chaka, Multicare Medical Supplies, James Ward, Redlands Air Conditioning, Velma's Golden Needle, Carmen Brancaccio, Ramdata, Jeni Jayson and Domingo Mazon) Premier's claims fail, because the property was the debtor's homestead.  Corrigan Aff, Exhibit Q, Freshman at 30, 38, 41-43, 50-51, 54-57, 63-64, 87, 92 and Freshman Dep. Ex. # 2, (Freshman Report) at 2-4, 6-9, 15-16.

45.     With respect to two of the files (Linear Gibson, Bradley Boat Repair) Premier asserts that garnishment should have occurred with respect to the wages of the underlying debtors.  However, in both of these instances Mr. Freshman points out that the debtors were the head of household and thus exempt from garnishment under Florida law.  Corrigan Aff, Exhibit Q, Freshman at 51-52, 67.

46.    With respect to the 8 remaining files (Wisteria Branch, Top Ten Card, Hiram Martinez, Antonio Lioy, Design Homes Remodeling, Thomas Kenworthy, Supernet Online, Inc. and Ricardo Rios) Premier's expert failed to identify any assets, and in indeed, Premier's own internal asset search demonstrated that Premier was unable to find assets for these debtors and in several of the instances the debtors were no longer residing in Florida.  Id. at 45-48, 65-66, 77-81, 93-94 and Dep. Exhibit # 2, (Freshman Report) at 14 re: Kenworthy.

47.    Significantly, Premier's own expert testified that as a matter of law, Mr. Freshman's application of Florida law to these files was correct as to issues of the debtors' homestead and wage garnishment.  Corrigan Aff., Exhibit P, Storfer at 94, 120-121.

48.    With respect to eight of the files (Multi Care Medical, James Ward, Velma's Golden Needle, Carmine Brancaccio, Bradley Boat Repair, Design Home Remodeling and Jenni Jayson) Premier appears to assert that there was an act or omission prior to its purchase of the judgments that affected its rights.  Corrigan Aff, Exhibit P, Storfer Dep. Exhibit # 2, (Storfer Report dated April 29, 2005).  Premier has no claim for malpractice in this case.  Corrigan Aff, Exhibit P, Storfer at 61-62.

> Respectfully submitted,
>
> BEVERLY JOHNSON PENZELL,
> By her attorneys,
>
> /s/  Joseph W. Corrigan
> Catherine J. Savoie, BBO# 544599
> Joseph Corrigan, BBO#647393
> POSTERNAK, BLANKSTEIN & LUND, L.L.P.
> Prudential Tower
> 800 Boylston Street
> Boston, MA  02199-8004
> 617.973.6100

Dated: October 31, 2007