UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 JAN 21 A II: 27

U.S. DISTRICT COURT
DISTRICT OF MASS.

PREMIER CAPITAL, LLC,            )
                                 )
          Plaintiff,             )
                                 )    Civil Action No.
     v.                          )    03-CV-12497-NG
                                 )
BEVERLY JOHNSON PENZELL, d/b/a,  )
et al.,                          )
                                 )
          Defendants.            )

## MOTION TO AMEND COMPLAINT OF
## PLAINTIFF PREMIER CAPITAL, LLC

Pursuant to Rule 15(a), Federal Rules of Civil
Procedure, plaintiff Premier Capital, LLC ("Premier"), moves
to amend its Complaint in this matter to revise its claim of
damages, and to add two additional defendants, Victor K.
Rones ("Rones") and Susan I. Noe ("Noe").  In support of its
motion, Premier submits the Affidavit of Richard Gleicher
("Gleicher Affidavit").  A proposed First Amended Complaint
is filed herewith.

### FACTUAL AND PROCEDURAL BACKGROUND

Premier is a Delaware limited liability corporation,
with offices at 226 Lowell Street, Wilmington, MA.  See
Counterclaim, para. 2.  Premier is in the business, inter
alia, of purchasing and collecting upon distressed financial
assets.  Such assets included a group of approximately 21
Florida state court judgments (the "Florida Judgments"),
purchased by Premier from Bank of America ("BofA").  Id.

Defendant and plaintiff-in-counterclaim Beverly Johnson Penzell is Personal Representative of the Estate of her late husband, Florida attorney Kris E. Penzell. Id., para. 1. Mr. Penzell represented BofA in the litigation which gave rise to the Florida Judgments. Id.

Mr. Penzell had "a fee agreement with" BofA. Id., para. 2. It appears undisputed that, on or about December 23, 1998, Kris E. Penzell, individually, entered into a written "Contingency Fee Agreement" ("Agreement") to perform legal services for NationsBank, N.A. (the "Bank"). A true and accurate copy of the Agreement is attached to the Gleicher Affidavit as Exhibit A. BofA is successor-in-interest to NationsBank, N.A. (the latter having been absorbed by BofA, id., para. 4).

BofA terminated Kris E. Penzell's services pursuant to the Agreement. Counterclaim, para. 4. The Agreement contained provisions requiring BofA "to pay Attorney Penzell upon [BofA's] termination of his services." Id.

Kris E. Penzell died on March 8, 2000. Affidavit of Beverly Johnson Penzell In Support of Her Motion To Dismiss

("Penzell Affidavit"), para. 9.  Premier purchased the
Florida Judgments under a written Loan Sale Agreement from
BofA on or about October 3, 2001.  Gleicher Affidavit, para.
3.  That month, Ms. Penzell learned of the purchase.
Affidavit of Beverly Johnson Penzell In Support of Her
Motion To Dismiss, para. 15.

    During the period 2001-late 2003, when this action was
filed, Premier engaged in extensive correspondence regarding
the Florida Judgments with three persons: Beverly Johnson
Penzell, Susan I. Noe, and Victor Rones.  All of these
persons held themselves out as practicing law as part of the
"Law Offices of Kris E. Penzell."  Documents evincing this
conduct are attached to the Gleicher Affidavit as Exs. B
and C.  At no time did any of these persons indicate that
the firm was no longer in business.  At no time did Ms.
Penzell, Rones, or Noe notify Premier that they were acting
in any capacity other than as attorneys with the firm (apart
from one letter, in which Ms. Penzell expressly termed
herself her late husband's personal representative).

    During this 2001-2003 time frame, Rones and Noe
provided, or purported to provide, legal services to Premier
respecting the Florida Judgments.  Gleicher Affidavit, para.
9.

In late Fall, 2004, during discovery in this action, Premier learned that Rones and Noe acted, successively, as Florida Probate Court-appointed "Inventory Attorneys" with respect to Mr. Penzell's practice. Id., para. 16. Premier had not been previously apprised by anyone that Rones and Noe were acting in this role.

The relationships which the "Law Offices of Kris E. Penzell", Ms. Penzell, Rones, and Noe, respectively, had with Premier are not entirely clear. These persons consistently represented the firm to be a going concern, and represented that they played a continuing role at the firm. They perfomed legal work for Premier respecting the Florida Judgments. It now appears, however, that Rones and Noe had, or may have had, independent roles and duties vis-à-vis Premier as court-appointed "Inventory Attorneys." They may, or may not, contend that they acted as part of the Penzell law firm. They may, or may not, be found to have done so by this Court.

In December, 2004, Premier advised Noe in writing that it had learned she was Inventory Attorney, and demanded she return the Florida Judgment files to Premier. (These matters are documented in Ms. Penzell's recent motion to

assert a counterclaim in this matter.)  Noe sought the Florida Probate Court's "direction", indicating that she declined to return such files on her own initiative in light of Ms. Penzell's purported "attorney's lien[s]".  A Probate Court judge ordered return of the files.  To the best of Premier's understanding, therefore, Ms. Penzell no longer retains any of the files, and certain factual allegations of the Complaint in this action no longer obtain.

ARGUMENT

Under The Permissive Standards Governing Rule 15(a)
Motions, Premier Should Be Permitted to Amend Its Complaint.

Rule 15(a) states in part that leave to amend "shall be freely given when justice so requires."  "Generally, Rule 15 advises the court that 'leave shall be freely given when justice so requires.'  This policy is 'to be applied with extreme liberality.'"  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Rule 15(a)) (citations omitted).  In Foman v. Davis, 371 U.S. 178, 182 (1962), the Supreme Court outlined the factors the district court should weigh in deciding a Rule 15 motion:

> In the absence of any apparent or declared reason-
> such as undue delay, bad faith or dilatory motive
> on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance
> of the amendment, futility of amendment, etc.- the
> leave sought should, as the rules require, be 'freely
> given.'

"Absent prejudice, or a strong showing of any of the
remaining Foman factors, there exists a presumption under
Rule 15(a) in favor of granting leave to amend." Eminence
Capital, LLC v. Aspeon, Inc., supra, 316 F.3d at 1052
(citations omitted).  See also Eastern Food Services, Inc.
v. Pontifical Catholic Univ. Services Assn., Inc., 357 F.3d
1, 8 (1st Cir. 2004) ("in general permission [to amend] is
liberally granted where there is no prejudice").

     None of the Foman factors subsist here.  Premier seeks
to amend at an early stage of this litigation.  Discovery
has begun, but is not advanced: only two depositions have
begun, both of Rule 30(b)(6) deponents, and those
depositions are suspended, uncompleted.  Accordingly, the
additional defendants face no prejudice in defending
Premier's claims.  Contrast Grant v. News Group Boston,
Inc., 55 F.3d 1, 5 (1st Cir. 1995) (affirming denial of
leave to amend where "discovery was already complete").

     No "undue delay" or like dilatory conduct has occurred.
Premier discovered the status of Ms. Noe and Mr. Rones as
"Inventory Attorneys" during discovery in late Fall, 2004.
Neither of those persons advised Premier of their status;
rather, they each held themselves out as attorneys in the
"Law Offices of Kris E. Penzell".  Gleicher Affidavit,

6

paras. 10-12 and Ex. B.    Therefore, until very recently,
these lawyers were each represented themselves to be part of
the firm, which in turn reasonably appeared to be a going
concern.    Premier has reacted promptly to amend its
Complaint to reflect what it recently learned about Rones
and Noe.    Contrast Larocca v. Borden, Inc., 276 F.3d 22, 32
(1st Cir. 2002) (leave to amend properly denied where
discovery complete and plaintiffs had twice been permitted
to amend their complaint).

    Finally, the proposed revisions with respect to damages
reflect the return of the files in the Florida litigation
matters to Premier, pursuant to the December, 2004, Order of
a Florida probate court judge.    The nature of the relief
Premier seeks has changed, to reflect damage to its
interests during the period in which Ms. Penzell wrongfully
retained the files in Florida.    Here, too, Premier has acted
promptly.    Further, Ms. Penzell having been allowed to file
a Counterclaim just last month, considerations of fairness
should guide this Court in allowing Premier's Rule 15(a)
motion, enabling all issues to be joined and litigated in
one proceeding.

## Conclusion

For all of these reasons, Premier requests that the Court grant it leave to amend its Complaint under Rule 15(a).

> Respectfully submitted,
>
> PREMIER CAPITAL, LLC
>
> By its attorneys,
>
> Miles E. Hoisington
> BBO# 545184
> Thomas James Morrissey
> BBO# 547077
> Hoisington & Morrissey P.A.
> 1506 Drift Road
> Westport, MA 02790
> Tel.: (508) 636-7363

Dated:  January 20, 2005

## CERTIFICATE OF SERVICE

The undersigned, counsel for the plaintiff Premier Capital, Inc., certify that I served a copy of the foregoing Motion and the Affidavit of Richard Gleicher in support thereof upon counsel of record for defendant Beverly Johnson Penzell, Catherine Savoie, Esq., Posternak, Blankstein & Lund, L.L.P., Prudential Tower, 800 Boylston Street, Boston, Massachusetts 02199-8004, and Steven A. Sussman, Esq., 6 Beacon Street, Suite 400, Boston, MA 02108 by overnight mail, postage prepaid, this 20th day of January, 2005.

> Thomas James Morrissey
> BBO# 547077

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PREMIER CAPITAL, LLC,                )
                                     )
            Plaintiff,               )
                                     )
      v.                             )    Civil Action No.
                                     )    03-CV-12497-NG
BEVERLY JOHNSON PENZELL, d/b/a       )
Law Office of Kris E. Penzell;       )
and BEVERLY JOHNSON PENZELL, as      )
Personal Representative of the       )
Estate of Kris E. Penzell,           )
SUSAN I. NOE, and VICTOR K.          )
RONES,                               )
                                     )
            Defendants.              )

## FIRST AMENDED COMPLAINT

### Jurisdiction and Venue

1.  This Court has subject matter jurisdiction in this
diversity action pursuant to 28 U.S.C. Section 1332(a)(1).
Venue is appropriate under 28 U.S.C. Section 1391(a)(2) and
(3).  This action was initially filed in Massachusetts
Superior Court and subsequently removed to this Court by
defendant Beverly Johnson Penzell, pursuant to 28 U.S.C.
Sections 1441(a)-(b) and 1446(d).

### Parties

2.  The plaintiff, Premier Capital, LLC ("Premier"), is
a Delaware limited liability corporation with a principal
place of business at 226 Lowell Street, Wilmington,
Middlesex County, Massachusetts 01887.

3.   Beverly Johnson Penzell is a defendant in two separate capacities.  Beverly Johnson Penzell is a defendant, individually, d/b/a Law Office of Kris E. Penzell.  She is also a defendant in her capacity as Personal Representative of the estate of Kris E. Penzell. (She is referred to herein, in both capacities, as "Beverly Johnson Penzell.")  Her address is 316 West Rivo Alto Drive, Miami Beach, Florida 33139.

4.   Defendant Susan I. Noe ("Noe") is an individual with an address of 1440 JFK Causeway, Suite 321, North Bay Village, Florida 22141.  Upon information and belief, Noe is an attorney admitted to practice in the State of Florida.

5.   Defendant Victor K. Rones ("Rones") is an individual with an address of 16105 N.E. 18th Avenue, North Miami Beach, Florida 33162.  Upon information and belief, Rones is an attorney admitted to practice in the State of Florida.

### Allegations

6.   Premier is successor-in-interest to Bank of America ("BofA") with respect to the Bank's right, title and interest to approximately twenty-one loan workout and collection matters brought in courts of the State of

2

Florida, which had been reduced to judgment (the "Florida Judgments").

7.   Premier purchased the Florida Judgments, and file materials related thereto, from the Bank on or about October 3, 2001.

8.   Prior to such purchase, BofA's predecessor, NationsBank, N.A., entered into a written agreement dated December 23, 1998, with Florida attorney Kris E. Penzell. Upon information and belief, Mr. Penzell was principal of the Law Offices of Kris E. Penzell (the "Penzell Law Firm"), Under the Agreement, Mr. Penzell represented NationsBank, N.A., and, subsequently, BofA, in the litigation giving rise to the Florida Judgments.   In connection with the Agreement, the Bank and BofA transferred promissory notes, other commercial paper, and file materials to the Penzell Law Firm.

9.   Upon information and belief, Kris E. and Beverly Johnson Penzell were husband and wife.

10.   Upon information and belief, On March 8, 2000, Kris E. Penzell died.   Upon information and belief, Beverly Johnson Penzell is Personal Representative of the estate of

3

Kris E. Penzell in a probate matter now pending in the 11th Judicial Circuit of Florida, Miami-Dade County (No. 00-1320).

11.  At all times relevant hereto, Beverly Johnson Penzell has been an employee of the Penzell Law Firm.  Upon information and belief, she is not an attorney.  Yet, she has held out the Penzell Law Firm as a going concern with the capacity to provide legal services, including litigation-related collection services.

12.  Rones was an associate of Kris E. Penzell in the Penzell Law Firm.  Upon information and belief, on March 24, 2000, Rones was appointed Inventory Attorney respecting Mr. Penzell's law practice by the Probate Division of the 11th Judicial Circuit of Florida, Miami-Dade County.

13.  Upon information and belief, Noe was appointed substitute Inventory Attorney, replacing Rones, on April 29, 2002.

14.  The duties of Inventory Attorneys are set forth in the Rules Regulating The Florida Bar.  Such duties include "tak[ing] such action as seems indicated to protect the interests of the clients of the subject attorney" and

4

"avoid[ing] prejudice to the clients of the subject
attorney" [i.e., Mr. Penzell].

15.  At all times prior to the filing of this action,
the respective defendants held themselves out as practicing
law as the Penzell Law Firm.  Neither Rones, nor Noe, ever
provided notice to BofA or, later, to Premier of their
appointment or status as Inventory Attorneys.  Rather,
Rones, Noe, and Beverly Johnson Penzell continued to purport
to provide legal services to Premier as the Penzell Law Firm
in connection with the Florida Judgments.

16.  Subsequent to its purchase of the Florida
Judgments, Premier sought frequently to contact defendants
Noe and Beverly Johnson Penzell at the Penzell Law Firm to
protect Premier's interests.  Such contacts included
numerous letters and telephone and electronic mail messages.
In addition, each of the defendants initiated contacts with
Premier in Massachusetts.

17.  As a result of such contacts, Premier determined
that certain legal services were not performed in the
collection matters since at least the death of Kris E.
Penzell, proximately causing damage to Premier's interests.
Premier was able to so determine despite defendants Noe and

Beverly Johnson Penzell having largely ignored Premier's request for information about the matters.

18.   Finally, Premier made written demand of defendant Beverly Johnson Penzell for return of the documents which together comprise the Florida Judgments, including notes and other file materials, commercial paper and other documents. However, she continued to retain all commercial paper and other documents comprising the Florida Judgments.

19.   In or about November, 2004, Premier learned that Rones and Noe were, in fact, Inventory Attorneys.  Premier made prompt written demand upon them, in such capacities, for return of the Florida Judgment files to enable Premier to obtain successor counsel and move collection of the Judgments forward.

20.   Noe and Rones subsequently moved for relief in Florida, seeking "direction" respecting to Premier's demand. In their motion papers, they asserted that there was "an attorney's lien on each file by [the Penzell Law Firm."

21.   None of the defendants had ever notified Premier that there were such liens.  Moreover, the Agreement had terminated, and at no time did any of the defendants submit invoices for past due legal fees to BofA or to Premier, pursuant to the termination provisions of the Agreement.

6

Accordingly, there was no factual or legal basis for the assertion of an attorney's lien respecting any of the Florida Judgments.

22.  Following the Noe and Rones motions, a Florida Judge ordered the return of the Florida Judgment files to Premier.  Premier received such files from the Penzell Law Firm in mid-December, 2004.

23.  During the period in which the defendants retained the Florida Judgment files and held themselves out as the Penzell Law Firm, the defendants engaged in acts and omissions which vitiated Premier's ability to collect on the Florida Judgments.  But for such acts and omissions, certain of the Judgments would have been satisfied, in whole or in part.  Such acts and omissions included, without limitation, the conduct outlined supra, and the following:

    (a)   failing to advise Premier that Inventory Attorneys had, in fact, been appointed to protect Premier's interests;

    (b)   failing to respond to Premier's demands for return of the Florida Judgment files, so that Premier could pursue collection with successor attorneys of Premier's choosing;

(c)  failing to make bankruptcy filings in timely
     fashion, undermining Premier's ability to
     participate in distributions of debtor assets and
     resulting in discharge of judgment indebtedness;

(d)  failing to timely file, record, and/or renew
     judgment liens respecting certain Judgments,
     enabling judgment debtors to convey their
     interests in real property without having to
     satisfy their judgment indebtedness first;

(e)  materially breaching the Agreement by failing to
     adhere to its termination provisions, and
     subsequently asserting groundless attorney's
     liens;

(f)  purporting to protect Premier's interests whjile
     failing to do so; and

(g)  retaining the Florida Judgment file materials,
     and ceasing cooperation with Premier.

### Count I
#### (Breach of Contract)

24.  The allegations of paragraphs one though twenty-
three are incorporated herein as if fully set forth.

8

25. By virtue of the conduct set forth above, the defendants, jointly and severally, materially breached the Agreement.

26. As a result of such material breach, Premier was, and continues to be, substantially damaged.

## Count II
### (Intentional Misrepresentation)

27. The allegations of paragraphs one though twenty-six are incorporated herein as if fully set forth.

28. By virtue of their conduct as set forth above, the defendants, jointly and severally, intentionally misrepresented their status, purporting to practice as part of the Penzell Law Firm, failing to disclose the roles of Rones and Noe as Inventory Attorneys, and failing to act to protect Premier's interests until ordered to do so by a Florida judge.

29. Such defendants intended Premier to rely on such misrepresentations. Premier reasonably so relied.

9

30.   As a result of such intentional misrepresentations, Premier was, and continues to be, substantially damaged.

### Count III
(Negligent Misrepresentation)

31.   The allegations of paragraphs one though thirty are incorporated herein as if fully set forth.

32.   By virtue of their conduct as set forth above, the defendants, jointly and severally, negligently misrepresented their status, purporting to practice as part of the Penzell Law Firm, failing to disclose the roles of Rones and Noe as Inventory Attorneys, and failing to act to protect Premier's interests until ordered to do so by a Florida judge.

33.   Premier reasonably relied on such misrepresentations.

34.   As a result of such negligent misrepresentations, Premier was, and continues to be, substantially damaged.

Count IV
(Negligence)

35.   The allegations of paragraphs one though thirty-four are incorporated herein as if fully set forth.

36.   By virtue of their conduct as set forth above, the defendants, jointly and severally, breached duties of care owed to Premier.  Such duties of care exist at common law and, in the case of Rones and Noe, are in addition framed by the provisions of the Rules Regulating The Florida Bar.

37.   In their conduct in representing Premier and its predecessor-in-interest, BofA, in the Florida collection matters, Rones and Noe, respectively, materially breached the standard of reasonable care and skill applicable to a member of the legal profession.

38.   Such material breach by Rones and Noe, respectively, directly and proximately caused substantial damage to Premier.

Count V
(M.G.L. c.93A, Sections 2 and 11)

39.   The allegations of paragraphs one though thirty-eight are incorporated herein as if fully set forth.

11

40.  At all times relevant hereto, the defendants engaged in trade or commerce within the Commonwealth.

41.  The defendants' actions, as set forth above, including, but not limited to, the baseless assertion of attorney's liens respecting the Florida Judgments, the defendants' purporting to do business as the Penzell Law Firm, and their obstruction of Premier's efforts to transfer the Judgments to successor counsel, constitute unfair or deceptive acts or practices within the meaning of M.G.L. c.93A, Sections 2 and 11.

42.  Such actions were performed willfully and knowingly.

43.  As a result of the unfair or deceptive acts or practices described above, Premier sustained injury including, but not limited to, Premier's actual damages as set forth in this First Amended Complaint, and consequential damages including attorney's fees.

Prayers For Relief

WHEREFORE, Premier requests that the Court enter judgment in its favor and against the defendants, jointly and severally, as follows:

(1)   in the amount of Premier's actual damages, not less than $462,995.76, plus interest;

(2)   trebled, plus Premier's reasonable attorney's fees and costs, pursuant to M.G.L. c.93A, Sections 2 and 11;

(3)   and granting such further relief as the Court deems just.

PREMIER CAPITAL, LLC

By its attorneys,

Miles E. Hoisington
BBO# 545184
Thomas James Morrissey
BBO# 547077
Hoisington and Morrissey P.A.
1506 Drift Road
Westport, MA 02790
Tel.: (508) 636-7363

Dated:   January 20, 2005