UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. 03-CV-12497

| | |
|---|---|
| PREMIER CAPITAL, LLC | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BEVERLY JOHNSON PENZELL, | ) |
| d/b/a Law Office of Kris E. Penzell | ) |
| and BEVERLY JOHNSON | ) |
| PENZELL, as Personal | ) |
| Representative of the Estate of | ) |
| Kris E. Penzell | ) |
|     Defendants. | ) |

**AFFIDAVIT OF BEVERLY JOHNSON PENZELL
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

I, Beverly Johnson Penzell, being duly sworn depose and say as follows:

1.  I am the defendant in the above-captioned action. My husband, Kris Penzell, was a creditor's rights attorney in Miami, Florida, through his solo practice, the Law Office of Kris Penzell, P.A. Kris Penzell died on March 8, 2000 and I was appointed Personal Representative of his Estate on March 30, 2000.

2.  The Law Office of Kris Penzell, P.A., provided services for Barnett Bank, a banking association chartered in Jacksonville, Florida. These services were performed solely in Florida. Barnett Bank thereafter merged with NationsBank, N.A. ("NationsBank"), a banking association chartered in Charlotte, North Carolina. On December 23, 1998, the Law Office of Kris Penzell, P.A., entered into a contingency fee agreement with NationsBank, pursuant to which the Law Office of Kris Penzel agreed to prosecute certain collection matters in Florida

arising from certain collection accounts ("the collection accounts") of NationsBank. Attached hereto, as Exhibit # 1, is a true an accurate copy of the 1998 Fee Agreement. Subsequent to the agreement between NationsBank and Law Office of Kris Penzell, P.A., the assets of NationsBank, including the collection accounts, were sold to Bank of America, a banking association chartered in Charlotte, North Carolina.

     3.     I have reviewed Premier's Complaint in this action.

     4.     In paragraph 15 of the Complaint, Premier alleges the following:

"Upon information and belief, Beverly Johnson Penzell seeks to convert to her own use, and/or for use in connection with the estate of Kris E. Penzell, as purported legal fees, moneys [sic] received from litigants in connection with such files and materials."

     5.     Premier's allegation is false.

     6.     From the time Premier purchased the 19 judgments at issue in this case from the Bank of America in September 2001 to the present, no monies have been collected by the Law Offices of Kris Penzell, P.A., by me individually, or by me in my capacity as Personal Representative of the Estate of Kris Penzell on any of the 19 judgments.

     7.     It is my understanding that Premier has produced no evidence during discovery to support its allegation that I made any collections with respect to the judgments it purchased.

     8.     On or about the last quarter of 2001, I was contacted by Nick Maimonis, identifying himself as someone working for Premier, which had purchased certain judgments from the Bank of America. Mr. Maimonis acknowledged that certain of the judgments Premier had purchased, had been obtained by Kris Penzell. My first comment to Mr. Maimonis was to advise that Kris Penzell was my husband, that he had passed away in 2000, that I was not an attorney, but rather was the Personal Representative of his Estate. I further advised him that I

2

was working with an inventory attorney to wind down the affairs of my late husband's law practice, including the Barnett Bank/NationsBank/Bank of America matters.

9. On January 11, 2002, Mr. Maimonis called me again, and specifically requested that I provide him copies of "both *Arroyave* judgments" and "the Fee Agreement". That same day, I forwarded to Mr. Maimonis copies of the two judgments in the *NationsBank v. Arroyave* matters and the 1998 Fee Agreement. A true and accurate copy of my facsimile of January 11, 2002 to Nick Maimonis forwarding the *Arroyave* judgments and the 1998 Fee Agreement is attached hereto as Exhibit # 2. True copies of the *Arroyave* judgments are attached hereto as Exhibit # 3. As stated above, a true copy of the 1998 Fee Agreement between Kris Penzell and NationsBank is attached as Exhibit # 1.

10. I later learned that a few days after I forwarded Mr. Maimonis the judgments and 1998 Fee Agreement, Premier collected in excess of $25,000 from the underlying debtor (Mr. Arroyave) and did so by subordinating the prior judgments, including one judgment obtained by Kris Penzell and the other having been referred to Kris Penzell for collection post judgment by NationsBank. The Subordination Agreements regarding the *Arroyave* matters are effectuated by Nick Maimonis of Premier and appear to be notarized by Premier's counsel in this action, Thomas J. Morrissey. True copies of the Subordination Agreements are attached as Exhibit # 4. Premier failed to disclose the settlement to me, despite being aware of the existence of Kris Penzell's 1998 Fee Agreement with NationsBank. Premier continues to refuse to pay the contingency fee owed on the *Arroyave* matters and any fees due on the 19 files it purchased from Bank of America on which Kris Penzell provided legal services.

11. Beginning in March or April 2002, Premier began a pattern of attempting to re-refer for collection work certain judgments that Kris Penzell had obtained for Barnett Bank and

NationsBank. Despite the fact that both inventory attorneys, Victor Rones and Susan Noe, and I, had on numerous separate occasions informed Nick Maimonis of Premier that he needed to send a contingency fee agreement to the inventory attorneys to review and approve before collection work would be done on the matters, he persistently contacted the Law Office and demanded information and updates regarding the various judgments.

12. Contained in the materials that Premier sent to the Law Office of Kris Penzell, P.A., in 2002, were various letters that Premier sent directly to the judgment debtors offering to settle the judgments for a greatly reduced sum, often times less than 25% of the outstanding judgment amount. As Premier writes in these letters, it made these offers to the various debtors to avoid potential future litigation costs and attorneys' fees. True and accurate copies of various letters that Premier sent to some of the underlying debtors are attached as Exhibit # 5.

13. Throughout 2002, Premier periodically made threatening calls to me and sent letters alleging that the Law Office of Kris Penzell was somehow responsible to perform work for Premier. Premier made these threats, yet failed to hire the inventory attorneys to perform the work. Throughout 2002 and 2003, Premier made repeated demands that I release the Law Office of Kris Penzel's files with respect to the 19 judgments to Premier. To my understanding, Premier was never a client of Kris Penzell's, and moreover, Premier refused to pay fees due Kris Penzell for past legal services rendered on the judgments Premier purchased.

14. In June of 2003, Premier demanded through its counsel, Mr. Morrissey, that I produce copies of the Law Office of Kris Penzell's files to Premier. I was advised by the inventory attorneys and my own counsel that I had a duty as Personal Representative of the Estate of Kris Penzell to not produce the files to Premier on the basis that a retaining lien was

being asserted on the files as security for the unpaid fees owed the Estate of Kris Penzell for past legal services rendered on the 19 judgments purchased by Premier.

15. To protect the estate of Kris E. Penzell's interests in any fees due and owing and to avoid breaching any fiduciary duty owed to the Estate of Kris Penzell, the inventory attorneys and I, as Personal Representative of Estate of Kris Penzell, submitted the matter to the 11th Judicial Circuit in and for Miami-Dade County, Florida, requesting permission to have the files produced to Premier. Premier was represented by its current counsel in that matter and participated in the hearing held by the 11th Judicial Circuit Court on December 6, 2004.

16. Judge Farina specifically questioned Thomas Morrissey, Esquire as to whether or not Premier Capital, LLC had collected any monies against any of the judgments on which the Law Offices of Kris E. Penzell had performed legal services. Mr. Morrissey said that Premier Capital had not collected any monies on any of the judgments on which the Law Offices of Kris E. Penzell, P.A. had performed legal services.

17. Immediately after the December 6, 2004 hearing, and prior to Judge Schwartz signing the Order on said Motions, I had the files photocopied. I forwarded these files to counsel for Premier, Thomas Morrissey, Esquire, c/o Premier Capital LLC, 226 Lowell Street, Wilmington, MA  01887 on December 14, 2004. A copy of the Federal Express Airbill dated December 14, 2004 is attached hereto as Exhibit # 6.

18. On December 16, 2004, Federal Express delivered the files to 226 Lowell Street, which were accepted by M. Nadeau pursuant to the proof of delivery provided by Federal Express, a copy of which is attached as Exhibit # 7.

6

Signed under the pains and penalties of perjury, this 30th day of October, 2007.

                                                /s/  Beverly Johnson Penzell  
                                                Beverly Johnson Penzell