UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. 03-CV-12497

PREMIER CAPITAL, LLC )
      Plaintiff, )
       )
      v. )
       )
BEVERLY JOHNSON PENZELL, )
d/b/a Law Office of Kris E. Penzell )
and BEVERLY JOHNSON )
PENZELL, as Personal )
Representative of the Estate of )
Kris E. Penzell )
      Defendants. )

**DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

Defendant Beverly Johnson Penzell, as the Personal Representative of the Estate of Kris Penzell ("Ms. Penzell"), hereby opposes Plaintiff Premier Capital, LLC ("Premier")'s Motion to Amend the Complaint ("Motion to Amend"). In support of her opposition, Ms. Penzell submits the following Memorandum.

**I.    Introduction**

Premier seeks to amend its complaint in this action for a second time—over four and half years after filing the original complaint, two and half years after this Court denied Premier's first motion to amend to add parties and additional claims on the basis that it was untimely, two years after the expiration of the discovery deadline, and on the eve of Ms. Penzell's filing for summary judgment. Premier's untimely and now second proposed Amended Complaint would add three

new, meritless, causes of action against Ms. Penzell—breach of contract and intentional and negligent misrepresentation.

Premier asserts that its right to amend stems from a 1999 Settlement Agreement and General Release ("1999 Agreement") between Kris Penzell and Bank of America. A true copy of the 1999 Agreement is attached as Exhibit "A". Kris Penzell was a creditors' rights attorney in Miami, Florida who operated a solo practice (the Law Office of Kris Penzell), up to the time of his death on March 8, 2000. Ms. Penzell, the defendant in this action, is Kris Penzell's widow and the Personal Representative of his Estate. In September 2001, Premier purchased 19 judgments that had been previously obtained by Kris Penzell on behalf of his then clients, Barnett Bank and NationsBanks, both predecessors to Bank of America. These 19 judgments form the basis for Premier's current action.

Despite the fact that Premier is not a party to the 1999 Agreement between Kris Penzell and Bank of America, it now seeks to add a breach of contract claim, presumably for breach of the 1999 Agreement (although this is not articulated anywhere in Premier's motion or proposed Amended Complaint). The 1999 Agreement provides that a preexisting 1998 fee agreement between Bank of America's predecessor, NationsBank, and Kris Penzell will be used as the fee agreement between Bank of America and Penzell. (Exh. A, ¶2). By Premier's own admission, it has been aware of the existence of this 1998 fee agreement since at least 2002, and yet never before brought a claim for breach of contract in this action. Likewise, Premier makes no effort to explain to this Court why it is now entitled to add counts for misrepresentation.

Premier's untimely and substantively futile motion should be denied. First, Premier has provided no good cause why this Court should excuse its failure to comply with this Court's Fed. R. Civ. P. 16 scheduling order, which required all motions to amend the pleadings to be filed by

January 20, 2005.[1]  Second, Premier's new claims are subject to dismissal.  Premier was not a party to the 1999 Agreement and, accordingly, has no claim for its breach.  Further, there is no reasonable basis for Premier's claims of misrepresentation and Premier made no attempt to articulate in its motion why these proposed new claims are now appropriate.  Premier has failed to state its claim for fraudulent misrepresentation with sufficient particularity, failed to state a prima facie claim for negligent misrepresentation, and can establish no harm due to the alleged misrepresentation in any event.  Accordingly, the Court should deny Premier's Motion to Amend.

> **A.    Premier Misstates the Standard to be Applied by the Court in Considering the Motion to Amend.**

Premier claims that its Motion to Amend should be granted under the "liberal standards" of Rule 15(a).  Motion to Amend at 4.  However, the "freely given" standard of Rule 15(a) is inapposite in this case because Premier's Motion to Amend was brought well after the deadline for amendments to the pleadings under this Court's scheduling order.  See Steir v. Girl Scouts of the USA, 383 F.3d 7, 11-12 (1st Cir.2004).  As a result, the burden is "more exacting," requiring Premier to satisfy the "more demanding 'good cause' standard of Fed. R. Civ. P. 16(b)."  Id. (citing O'Connell v. Hyatt Hotels of Peurto Rico, 357 F.3d 152, 154-55 (1st Cir.2004).

The stricter standard of Rule 16(b), which "preserves the integrity and effectiveness of Rule 16(b) scheduling orders," O'Connell, 357 F.3d at 155, alters the Court's focus in deciding Premier's Motion to Amend.  As the First Circuit has explained: "Unlike Rule 15(a)'s 'freely given' standard, which focuses mostly on the bad faith of the moving party and the prejudice to

---

[1] See Court's Rule 16 Scheduling Order dated 12/23/3004.  Although the parties did jointly move to amend the discovery schedule on July 22, 2005, this scheduling amendment was well after the deadline for filing amendments to pleadings and addressed only written discovery and depositions.  See Joint Motion to Amend Discovery Schedule dated 07/22/2005.

3

the opposing party, Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment." Id. at 152 (citation omitted); see also Fed. R. Civ. P. 16(b) ("A schedule shall not be modified except upon a showing of good cause and by leave of the district judge. . . .") and Advisory Committee Notes to the 1983 Amendments to Fed. R. Civ. P. 16(b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). Although prejudice to the opposing party remains relevant, it is not the "dominant criterion" in considering the motion to amend. Id. at 155. Rather, "'indifference' by the moving party 'seals off this avenue of relief' irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause." Id.

### B.   Premier cannot meet the good cause standard of Rule 16(b).

The Rule 16(b) good cause standard focuses on the diligence, of the party seeking the amendment of the complaint. Premier has been anything but diligent. Its Motion to Amend was filed: (i) four and half years after the initial filing of the lawsuit; (ii) two and half years after this Court denied its first motion to amend to add new parties and claims – *on the basis that it was untimely*;[2] and (iii) well after the deadline for completing discovery had passed (including the extended period of time which the parties added by agreement to conduct depositions in Florida). Premier's protracted delay can only be due to lack of diligence, justifying denial of its Motion. As the First Circuit has explained, "[r]egardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is *itself* a sufficient reason for the court to withhold permission to amend." Steir, 383 F.3d at 12 (emphasis added). Premier has unduly delayed in seeking

---

[2] See Court's Order on Premier's Motion to Amend dated 3/28/2005.

amendment of its complaint and, thus, cannot demonstrate the diligence necessary to meet the good cause standard of Rule 16(b).

Recognizing its own significant delay in moving forward, Premier claims that it only recently discovered the evidence that forms the basis of the claims it seeks to add to its complaint, implying that it could not have sought amendment sooner than it did. Premier's argument fails for two reasons: first, Premier has not established how the claims it seeks to add are in any manner related to the so-called "new evidence" it claims it has found; and, second, it is clear that Premier could have asserted these entirely unrelated claims at the outset of this litigation.

Premier's claims are untimely, as the 1999 Agreement only serves to incorporate the terms of a preexisting 1998 fee agreement, which Premier has known about since at least 2002. Specifically, the 1999 Settlement Agreement provides:

> 1. All Old Barnett Agreements are hereby terminated and hereinafter null and void.
> 2. All matters referred to Penzell for collection-related legal services on or after December 23, 1998 will be governed by the *New Agreement*.
> 3. Penzell may provide collection-related services on the matters listed on Exhibit B attached hereto and incorporated herein by reference and receive compensation therefrom pursuant to the terms of the New Agreement.

Exh. A (emphasis added). The "New Agreement" is defined as the fee agreement dated December 23, 1998 (the "1998 Fee Agreement"), between Kris Penzell and NationsBank which is attached as Exhibit A to the 1999 Agreement.

Premier's agent, Thomas DiFrancesco, has sworn under oath that Premier has been aware of the existence of 1998 Fee Agreement since early 2002. See Exhibit B, Affidavit of Thomas DiFrancesco dated October 9, 2007 at 2, ¶ 4. Mr. DiFrancesco acknowledges that he reviewed the 1998 Fee Agreement when it was faxed to Premier by the Penzell Law Office in early 2002.

5

Id. In this regard, if Premier believed that the 1998 Fee Agreement provided any basis for a breach of contract claim against Ms. Penzell in this lawsuit, it was aware of the existence of 1998 Fee Agreement when it filed this action in 2003 and could have filed such a claim at that time. Premier's failure to file a breach of contract claim when it initiated this action in 2003 bars any such claim by Premier as this late hour.

      **C.    Premier's Motion to Amend Should also be Denied Because the New Claims Against Ms. Penzell are Subject to Dismissal.**

Motions to amend are routinely denied on the basis of futility. "A 'proposed amendment is futile if it serves no legitimate purpose or is without legal merit.'" Resnick v. Copyright Clearance Center, Inc., 422 F.Supp.2d 252, 256 (D.Mass.2006) (quoting Savoy v. White, 139 F.R.D. 265, 267 (D.Mass.1991)).

There is no legitimate purpose for Premier's proposed amendments. Premier was not party to the 1999 Agreement and, indeed, has failed to articulate any basis under which it can claim affirmative rights in that agreement. In order to state a prima facie claim for breach of contract under Massachusetts law, a party must demonstrate: (1) that a contract existed between the parties; (2) that one party failed to perform an obligation under the contract; and (3) that the non-breaching party suffered damages as a result of the failure to perform. See Guckenberger v. Boston Univ., 957 F. Supp. 306, 316 (D. Mass. 1997). Premier has failed to allege that it is a party to the 1999 Agreement, or that Penzell breached an obligation under the agreement that caused damage to Premier. Based on Premier's failure to allege a prima facie case for breach of contact, its Motion to Amend should be denied, as it would be immediately subject to a Rule 12(b)(6) motion for a failure to state a claim upon which relief could be granted.

ID # 535108v04/10105-40/ 10.31.2007

Likewise, the circumstances under which the 1999 Agreement was produced to Premier do not create a colorable claim for misrepresentation. As with its proposed claims for breach of contract, Premier fails to allege sufficient facts to state a prima facie claim for misrepresentation. In order to state a cause of action for misrepresentation, a Plaintiff must prove that the "defendant (1) made a false representation of a material fact (2) with knowledge of its falsity (3) for the purpose of inducing the plaintiff to act thereon, (4) and the plaintiff relied upon the representation as true and (5) acted upon it to his damage. See <u>Kennedy v. Josephthal & Co.</u>, 814 F.2d 798, 805 (1st Cir.1987).

Finally, Premier's claims for fraudulent misrepresentation are not plead with sufficient particularity. The procedure for pleading fraud in federal courts in all diversity suits is governed by the special pleading requirements of Federal Rule of Civil Procedure 9(b). See <u>Simcox v. San Juan Shipyard, Inc.</u>, 754 F.2d 430, 439, n. 9 (1st Cir.1985); 5 C. Wright and A. Miller, Federal Practice and Procedure, Secs. 1204, 1296 (1969). Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Premier's proposed allegations with respect to fraudulent misrepresentation are woefully inadequate to satisfy the Rule 9(b) requirements and are therefore subject to dismissal.

### D. Premier Did Not Suffer Any Harm Due To Its "Late" Discovery of 1999 Agreement.

Premier appears to be claiming that the 1999 Agreement was fraudulently withheld by Ms. Penzell, and that Premier was somehow harmed as a result. There is no basis for Premier's claim of harm. Premier had the 1999 Agreement during the Florida depositions in September 2007 and had the opportunity to depose each witness about the document. (See, Deposition of

Beverly J. Penzell attached hereto as Exhibit "B", p. 125-127).  Premier deposed Ms. Penzell about the 1999 Agreement and learned that she only discovered its existence in August 2006. Ms. Penzell didn't mislead Premier with regard to whether the 1999 Agreement existed by failing to produce it prior to that time; she wasn't even aware of it.  See, Exhibit B, Deposition of Beverly J. Penzell dated September 25, 2007 at 125-129.

Premier asserts that the existence of the 1999 Settlement Agreement and General Release *may* affect *Ms. Penzell's* rights with respect to her counterclaim.  Premier's Motion to Amend at 4.  If this is true, Premier now has the document and to the extent it forms the basis of any defense to Ms. Penzell's counterclaim, Premier can rely on it in this action.  Premier is not entitled to amend the complaint to add claims for an alleged misrepresentation which caused no damage to Premier.[3]

## Conclusion

The Defendant Beverly Johnson Penzell respectfully requests that this Court deny Premier's untimely and meritless Motion to Amend.

---

[3] Premier also claims that the 1999 Fee Agreement contains a release by Kris Penzell of Bank of America of claims for attorneys' fees incurred by Penzell prior to executing the 1999 Agreement.  In fact, any release is largely irrelevant to this case because, by its terms, it extends only to matters not listed on Exhibit B, attached to the 1999 Agreement.  !8 of the 19 cases at issue in this litigation are listed on Exhibit B.  Therefore, the release scarcely "vitiates" Penzell's counterclaim, as Premier asserts.

                                        Respectfully submitted,

                                        BEVERLY JOHNSON PENZELL,
By her attorneys,


/s/ Joseph W. Corrigan
Catherine J. Savoie, BBO#544599
Joseph W. Corrigan, BBO#647393
POSTERNAK, BLANKSTEIN & LUND, L.L.P.
Prudential Tower
800 Boylston Street
Boston, MA  02199-8004
617.973.6100

Dated:  October 31, 2007

## CERTIFICATE OF SERVICE

    I Joseph W. Corrigan, Esq. hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 31, 2007.

                                        /s/Joseph Corrigan_____
                                        Joseph W. Corrigan

ID # 535108v04/10105-40/ 10.31.2007