UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CASE NO. C.A. 03-CV-12497

PREMIER CAPITAL, LLC,

      Plaintiff,

-vs-

BEVERLY JOHNSON PENZELL, d/b/a
Law Office of Kris E. Penzell
and BEVERLY JOHNSON PENZELL, as
Personal Representative of the
Estate of Kris E. Penzell,

      Defendants.
_____/

DEPOSITION OF BEVERLY PENZELL

VOLUME II

Tuesday, September 25, 2007
1:15 p.m. - 5:30 p.m.

9155 S. Dadeland Blvd., Suite 1014
Miami, Florida 33156

Reported By:
MARGARET PHILLIPS, Court Reporter
Notary Public, State of Florida
Klein, Bury, Reif, Applebaum & Associates
Miami Office
Phone - (305) 373.8404

```
1              MR. SUSSMAN:  Excuse me.  Could I interject
2     something?
3              MR. MORRISSEY:  Sure.
4              MR. SUSSMAN:  I think what he is asking you
5     is have your beliefs changed since you signed the
6     answers to interrogatories.
7              THE WITNESS:  No.
8              MR. MORRISSEY:  Thank you.  Moving to the
9     next numbered exhibit.
10        Q.   Could you identify that for the record,
11    please?
12        A.   Settlement agreement and general release.
13             MR. MORRISSEY:  I have to tell you I don't
14    think I have seen that before.  If I have I stand
15    corrected if you produced it to them.
16             MR. CORRIGAN:  I think Steve might have
17    produced it.  I know I got it from him, I think.
18             MR. MORRISSEY:  I know this copy doesn't
19    bear a Bates stamped number which is not
20    necessarily significant, but I don't recall ever
21    having seen it before.
22             (Discussion off the record)
23             MR. CORRIGAN:  Let's go on the record now
24    because we are discussing a 1999 agreement between
25    the Law Offices of Kris Penzell and Bank of
```

```
 1    America which adopts the 1998 agreement.  I
 2    believe Victor Rones talked about this agreement
 3    in his testimony yesterday.  I know we raised it
 4    on the record.  I know we offered to make a copy
 5    available for the purposes of having the witnesses
 6    questioned on the issue.
 7         That opportunity wasn't acknowledged or
 8    taken by counsel for Premier.  I don't think it
 9    changes legally anything relative to Premier's
10    relationship to the Law Offices of Kris Penzell.
11         That aside, here it is.  Feel free to ask
12    Ms. Penzell anything you'd like about it.
13         MR. MORRISSEY:  Well, I am happy to have
14    the opportunity to question Ms. Penzell about the
15    document.  To the extent that I have been
16    prejudiced in my ability to prepare for her
17    examination by virtue of the failure to produce
18    the document, apparently, the document having
19    originated with counsel for Ms. Penzell, I
20    certainly object to that and reserve any and all
21    rights I may have with respect to that failure to
22    produce.
23         With respect to the impact that the failure
24    to produce the document may have, it really
25    depends upon its materiality as established by
```

1  Ms. Penzell in her answers.  If it is a mere
2  bagatelle that has no relevance to any issues in
3  the case, then no harm, no foul.
4      If it is a document that purports to affect
5  the rights and liabilities of my client I am very
6  much going to object to its late production and
7  reserve any and all rights and remedies I may have
8  with respect to it.
9      MR. CORRIGAN:  We are not crossing the
10 Rubicon here.  This is a legal document to which
11 your client was not a party.  It either existed or
12 didn't exist.  The witnesses who testified
13 yesterday acknowledged its existence.  It was
14 offered to you yesterday.  You didn't take the
15 opportunity to ask questions about it.
16      To the extent you have been prejudiced it
17 was at your own risk and I will insist that those
18 witnesses yesterday could offer no further insight
19 to this agreement, since they were not parties to
20 it.
21      So to the extent you want to ask questions
22 about the law office's involvement to that
23 agreement you have the appropriate witness.  All
24 the other witnesses are no longer with us.
25

```
 1   BY MR. MORRISSEY:
 2        Q.   Have you seen this document before,
 3   Ms. Penzell?
 4        A.   Yes, sir. I have.
 5        Q.   With apologies if I just asked this
 6   question, when did you first see it?
 7        A.   I don't remember. Probably close to that
 8   date on the top of there, August of '06.
 9        Q.   OK. And what date are you referring to,
10   ma'am?
11        A.   The fax identification, August 3rd, 2006.
12   I mean, I have seen the exhibit before.
13        Q.   What exhibit are you referring to?
14        A.   Exhibit B to the agreement.
15        Q.   Just to be clear for the record, ma'am, is
16   that ---
17        A.   Exhibit B is a list of files with my
18   husband's initials at the bottom.
19        Q.   Is that, in fact, the penultimate, the next
20   to last page of the document?
21        A.   The whom?
22        Q.   Is that the next to the last page of the
23   exhibit?
24        A.   Yes, it is.
25        Q.   By the way, there are signatures on the
```

1   final page?
2       A.   Yes.
3       Q.   Whose signatures, if you can tell?
4       A.   Cynthia Fisher from Bank of America.
5       Q.   And is there another signature there?
6       A.   These are notary signatures.  Cynthia
7   Fisher was a notary and Denise Chardiet is another
8   notary.
9       Q.   With apologies for looking over your
10  shoulder because it is the only copy.
11           How about on the third to the last page, is
12  there another signature there?
13      A.   It was signed by Steven Mayo of
14  NationsBank.
15      Q.   Anyone else?
16      A.   And my husband, Kris E. Penzell.
17      Q.   Was this a document that you encountered in
18  your files in 2006?
19      A.   Yes.
20      Q.   At that time, did you produce it to your
21  counsel?
22      A.   Yes.
23      Q.   Do you recall the circumstances under which
24  you found that?
25      A.   Not exactly.