```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
```

PREMIER CAPITAL, LLC,                )
                                     )
        Plaintiff,                   )
                                     )        Civil Action No.
        v.                           )        03-CV-12497-NG
                                     )
BEVERLY JOHNSON PENZELL, d/b/a       )
Law Office of Kris E. Penzell,       )
et al.,                              )
                                     )
        Defendants.                  )

AFFIDAVIT OF RICHARD B. STORFER IN SUPPORT OF
PLAINTIFF/DEFENDANT-IN-COUNTERCLAIM
PREMIER CAPITAL, LLC'S OPPOSITION TO
DEFENDANT BEVERLY JOHNSON PENZELL'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

MIAMI-DADE, ss:

I, RICHARD B. STORFER, being duly sworn, do hereby depose and state that:

1. I am an attorney admitted and in good standing before the Bar of the State of Florida. I have been retained as an expert witness by plaintiff/defendant-in-counterclaim Premier Capital, LLC ("Premier") in connection with post-judgment collection law and practice in the State of Florida. I make this affidavit on my personal knowledge and in support of Premier's Opposition to the Motion For Summary Judgment of defendant Beverly Johnson Penzell ("Penzell").

2. I am a graduate of the University of Florida (B.A., 1989), and Nova University law School (J.D., 1993), where I

was a staff member of the Nova Law Review.  I am partner in the Fort Lauderdale, Florida, firm of Rothstein, Rosenfeldt, Adler.

    3.  I have reviewed the Florida litigation matters at issue in this case.  I executed an expert report for Premier pursuant to Fed. R. Civ. P. 26(a)(2) in this action.

    4.  Several of the judgments at issue involve judgment debtors with real estate holdings in the State of Florida.  It is customary for attorneys to record judgments as liens against the realty of judgment debtors.

    5.  In my years of practice in post-judgment collection work, it is my experience that, where judgment debtors choose to sell their Florida realty, and where they simply refinance mortgage debt respecting such realty, such judgment debtors pay off the judgment amounts in connection with such transactions at least ninety-five per cent of the time.

    6.  This is the case irrespective of whether such judgment debtors enjoy a homestead exemption as a matter of Florida law.  Despite such exemption, judgment debtors almost invariably find it in their interest to pay of old judgments as part of the transactions referred to above.

    7.  Several of Premier's Florida judgments involve such transactions.  In Chaka Kiambu, for example, Premier's unsatisfied Judgment is in the amount of $64,418.85, and

dated April 13, 1987; under Florida law, simple interest at the rate of 10 per cent accrues thereon.  The judgment debtor owned real property at 12774 SW 263rd Terrace Homestead, Fla., with a value of $130,000 (according to data obtained from Homeradar.com).  Such realty was encumbered by mortgages in the amount of $113,823.  The property was refinanced in March, 2004, according to credit report data.  The realty had $58,000 in equity when refinanced; however, it now has only $16,177 in equity.  As of March 2004, Premier's judgment balance was $174,054.44.  Had the Penzell Law Firm properly recorded and/or renewed Premier's judgment lien, Premier's judgment debt likely would have been paid, in whole or in part, at the time of the refinancing.

    8.  In James Ward, Ms. Noe agreed with Premier to attend a Section 341 creditor's meeting.  Premier prepared her with questions to ask at the examination of the debtor; she appears not to have attended the examination on Premier's behalf nor taken any other steps to protect Premier's interests.  The debtor was granted a discharge under Chapter 7. The debtor refinanced real property in March 2001; at the time of the refinancing, Premier's Judgment balance was $58,546.14.  The Judgment was in the original amount of $26,107.93, as of October 31, 1988.  The Judgment balance, as of April 28, 2005, is $69,211.05. Penzell's inactivity and retention of Premier's files

resulted in Premier's judgment remaining unpaid at the time of the refinancing.

9.   A similar set of facts prevails in the Redland Air Conditioning/Hardee matter.  Here, Premier's Judgment is dated April 27, 1989, in the amount of $13,317.98; the balance is $31,694.30, as of April 28, 2005.  The judgment debtor refinanced realty in 2004 at 513 Richlyne St., Temple Terrance, Fla., with a value of $98,510, according to county public website data, which was encumbered with a mortgage in the amount of $47,029, according to Lexis and other credit report data sources.  Through her retention of the Premier files and inactivity, Penzell failed to protect and enforce Premier's interests under the judgment in 2004.  As a result, the judgment remaining unpaid at the time of this transaction.

10.   Similarly, the judgment debtor in Velma's Golden Needle sold real property on or about January 31, 2003, for $131,500.00; such realty had a mortgage balance of $49,000 at time of such sale, resulting in surplus proceeds from the sale of approximately $82,500.00.  Premier's Judgment was obtained on April 29, 1991; it was recorded in Miami-Dade County on May 23, 1991.  Under Florida law at that time, a judgment acted as a lien on real property for 7 years, unless timely renewed.  The Penzell Law Firm sought to renew the Judgment on May 31, 2001, some three years after the

judgment lien on the above realty expired, and one month after the 10-year period for enforceability of the Judgment expired. For these reasons, a title company found Premier's lien to have expired and been unenforceable at the time of the above sale. At the time of the sale, the Judgment balance was $23,009.83; the amount owed to Premier as of April 26, 2005, is $25,572.34. But for Penzell's inaction and retention of the Premier files, impeding collection activity, Premier would have recovered 100% of the Judgment balance at the time of the sale.

    11. In the Carmine Brancaccio matter, Premier's Judgment is in the original amount of $9,752.68, and dated August 3, 1987. Defendant owned realty which was refinanced on or about December 31, 2001. According to county public website data, the value of such realty was $172,760, subject to a mortgage in the amount of $98,388. The realty thus had equity in the amount of $74,372. The balance of the Judgment was $28,890.06 on the date of the refinancing. Here, too, Penzell's retention of the Premier files and inaction resulted in its Judgment remaining unpaid. (Premier later settled with Brancaccio for a de minimus amount.)

    12. In Domingo Mazon, Premier's Judgment is dated June 18, 1989, in the amount of $85,827.08. One of the judgment debtors sold realty at 7340 SW 158th Avenue, Miami, on or

about August 8, 2003; both debtors had or have an interest in Mr. Latin American, Inc. Penzell's inaction and retention of the Premier files prevented its being paid the judgment balance, in full or in substantial part.

13. I have chosen in this Affidavit to highlight a small number of the unpaid Premier judgments for purposes of helping to show a triable issue in response to Penzell's dispositive motion. However, there are other judgments at issue in this action on which Premier would have been paid, in whole or in part, but for Penzell's inactivity and retention of the Premier files.

14. The aggregate amount of the specific judgments referenced in this Affidavit, inclusive of interest at the Florida statutory rate, is $506,330.92.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY this 14th day of November, 2007.

_____
Richard B. Storfer, Esq.,
As Plaintiff's Expert