UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. 03-CV-12497

| | |
|---|---|
| PREMIER CAPITAL, LLC | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BEVERLY JOHNSON PENZELL, | ) |
| d/b/a Law Office of Kris E. Penzell | ) |
| and BEVERLY JOHNSON | ) |
| PENZELL, as Personal | ) |
| Representative of the Estate of | ) |
| Kris E. Penzell | ) |
|     Defendants. | ) |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT BEVERLY JOHNSON PENZELL'S
<u>MOTION FOR SUMMARY JUDGMENT</u>
(LEAVE TO FILE GRANTED ON 11/27/07)**

Defendant Beverly Johnson Penzell, as Personal Representative of the Estate of Kris E. Penzell ("Ms. Penzell"), hereby submits this Reply to Premier's Opposition to her Motion for Summary Judgment. In support of this Reply, Ms. Penzell submits the affidavit of Joseph W. Corrigan, to which is attached deposition testimony of Premier's expert, Richard Storfer, deposition testimony of Premier's agent, Richard Gleicher, and various business records and admissions of Premier.

**I.     Premier's Failure to Controvert Ms. Penzell's Statement of Material Facts
Renders Those Facts Admitted Pursuant to Local Rule 56.1.**

Local Rule 56.1 provides that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for the purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by

opposing parties." Premier's Opposition did not contain a "concise statement of material facts of record as to which it is contended that there exists a genuine issue to be tried[.]" Id. In fact, Premier does not make any effort to controvert the material facts set forth in Ms. Penzell's Statement in its Opposition. Opposition at 2-8. Moreover, while Premier filed its Opposition on November 14th (the date set by this Court for Premier's Opposition), Premier failed to file any affidavits in support of its Opposition at that time.[1] In light of Premier's failure to timely submit any affidavits or other appropriate citation to the factual record in support of its Opposition, the Court should find that Premier has failed to meet the requirements of Fed. R. Civ. P. 56(e) and Local Rule 56.1. Due to Premier's failure to counter Ms. Penzell's Statement of Material Facts the Court must accept Ms. Penzell's Statement of Material Facts as admitted pursuant to Local Rule 56.1.

## II.     Premier's "Facts" Contradict Premier's Own Expert's Opinion.

Premier's procedurally inadequate "facts" support the entry of summary judgment in Ms. Penzell's favor. Specifically, Premier admits that, without receiving any files from Ms. Penzell and without a substitution of counsel from the Law Office of Kris Penzell, Premier allegedly hired counsel to obtain a recovery in the Arroyave matter in January 2002. Opposition at 5. This admission by Premier is fatal to its claims: if Premier was able to hire counsel to obtain a recovery in Arroyave, there is no good reason on this record that it could not have hired other counsel to pursue the debtors in these 19 files.

Indeed, Premier's own expert, Richard Storfer, admitted that Premier hired him to perform collection work on one of the files in May 2004, before the Florida court granted Ms. Penzell permission to produce Kris Penzell's files to Premier. Exhibit A, Affidavit of Joseph W.

---

[1] The Affidavit of Richard Storfer was filed on November 15, 2007. The Affidavits of Thomas Morrisey and Richard Gleicher were filed on November 16, 2007.

Corrigan ("Corrigan Aff.") in Support of Reply at Exhibit 1, Deposition of Richard Storfer ("Storfer") dated September 26, 2007 at 164-166.  Mr. Storfer acknowledged that he did not need anything from Kris Penzell's files and did not need a substitution of counsel, and as early as May 2004, he was able to file a garnishment of wages against the debtor on Premier's behalf.  Id. at 166.  Significantly, Mr. Storfer admits that Premier could have hired counsel *to pursue the underlying debtors at any time beginning as early as 2001*.  Id. at 165-167.  Mr. Storfer testified that Premier made "a business decision" not hire counsel to pursue collection efforts against the debtors.  Id. at 167.  Instead Premier elected to file this baseless lawsuit against Ms. Penzell.

The record is clear that Premier did not need anything from Ms. Penzell or the Law Office of Kris Penzell to pursue the underlying debtors on these 19 files.  Premier's own expert acknowledges that Premier did not need the files or substitution of counsel to hire him or any other lawyer to work these files.  Thus, the alleged conversion of files caused Premier no damage and the Court should properly enter summary judgment on both counts of Premier's complaint.

**III.   The 1999 Settlement Agreement and General Release Does Not Affect Ms. Penzell's Lien as Personal Representative For Kris Penzell's Legal Fees.**

In its Opposition, Premier argues that Ms. Penzell never had a valid retaining lien over the 19 files in this case because Kris Penzell released his right to receive fees on those files through the 1999 Settlement Agreement and General Release ("1999 Agreement").  See Opposition to Motion for Summary Judgment at 10-11.  Premier misconstrues the plain language of the 1999 Agreement, which provides that the 1998 Fee Agreement (between NationsBank and Kris Penzell) is the operative fee agreement between Bank of America (a successor to NationsBank) and Kris Penzell.  A true copy of the 1999 Agreement is attached as Exhibit B for the Court's convenience.  Specifically, the 1999 Settlement Agreement provides:

1. All Old Barnett Agreements are hereby terminated and hereinafter null and void.

3

>2. All matters referred to Penzell for collection-related legal services on or after December 23, 1998 will be governed by the *New Agreement* [i.e., the 1998 Fee Agreement].
>
>3. Penzell may provide collection-related services on the matters listed on Exhibit B attached hereto and incorporated herein by reference and receive compensation therefrom pursuant to the terms of the New Agreement.

Exhibit A, 1999 Agreement (emphasis added). Eighteen of the 19 files at issue in this case are listed on Exhibit B and therefore are subject to the 1998 Fee Agreement. Defendant's Statement of Material Facts ("DSMF") at ¶¶ 6-9.

Further, the 1999 Agreement demonstrates that Premier's argument that Kris Penzell waived his right to fees is specious. The 1999 Agreement provides:

>"5. Unless the Bank gives Penzell written permission as stated in paragraph 4, Penzel hereby and forever releases the Bank, it predecessors, officers, managers, directors, shareholders, employees, agents, attorneys, representatives, parent corporations, subsidiaries and affiliates, from any and all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, off sets, rights, actions and causes of action, expenses, including, but not limited to reasonable attorneys' fees and disbursements Penzell has sustained or may hereinafter sustain, which relate in any way to the Old Barnett Matters, **_not listed in Exhibit B_**."

Id. (emphasis added). Contrary to Premier's assertions, Kris Penzell never released his right to receive the reasonable value of his fees incurred as a result of the legal work he performed on 18 of these files. Moreover, the release in the 1999 Settlement ran in favor of Bank of America and there has been no suggestion that Premier acquired rights in the 1999 Settlement Agreement that encompasses the release. Accordingly, Premier has failed to demonstrate that Kris Penzell released Premier from liability for his fees.

Premier's argument that it cannot be held liable for Kris Penzell's fees because it was not a client of the Law Office of Kris Penzell is incorrect under Florida law, which provides that the performance of services and a resulting judgment or settlement brings the lien into existence. Nichols v. Kroelinger, 46 So.2d 722, 724 (Fla.1950.) In Nichols an attorney secured a judgment

4

for his client and allowed the judgment to lie dormant for eighteen years.  Id. at 723.  The client died eleven years after the judgment was obtained.  Id.  It was not until after the statute of limitations for administration of the estate had passed that the attorney moved for the appointment of an administrator of the estate to collect his fee.  Id.  Though barred by the statute of limitations from proceeding against the estate, the court held that the attorney could move against the still unexecuted judgment then held by the decedent's wife to satisfy his lien for services.  Id. at 724.  In reaching its holding, the Court in Nicholas stated, "[t]he lien inheres in the judgment so long as it is kept alive, regardless of who holds it."  Id. at 724.

Premier's contention that the 1999 Agreement extinguishes Kris Penzell's right to fees is baseless; summary judgment should enter in favor of Ms. Penzell.

**IV.    The Affidavit of Premier's Expert, Richard Storfer, Should Be Stricken as it is Untimely, Unrelated to Premier's Claims and Lacks Foundation in The Facts.**

**A.    Mr. Storfer's Affidavit is Untimely.**

A day after Premier's Opposition to Ms. Penzell's Motion for Summary was due it filed the affidavit Richard B. Storfer, Premier's designated expert in this matter.  As an initial matter, Mr. Storfer's affidavit should be stricken as untimely, having been filed after the deadline for Premier's Opposition and supporting affidavits.  Scheduling Order dated 10/10/07.

**B.    Mr. Storfer's Affidavit Should Be Stricken as it Does Not "Fit" Premier's Claims.**

The untimely submission of Mr. Storfer's affidavit aside, the affidavit should also be stricken to the extent that it addresses a negligence claim absent from this case.  Specifically, Mr. Storfer opines that if the Law Office of Kris Penzell had recorded Premier's judgments against the debtors' property in this case, these debtors likely would have paid the judgments, and because that did not occur here, Premier has been damaged.  Id. at ¶¶ 7-12.

Mr. Storfer's testimony describes an alleged duty and breach of duty on behalf of the Law Office, which are elements of a claim of negligence -- a claim absent from this case. Mr. Storfer is well aware that Premier has no claim of negligence in this case as he testified at his deposition that Premier had alleged no such claim in its Complaint. Exhibit A, Corrigan Aff. at Exhibit 1, Storfer at 114-15. In order to be admissible, Premier's expert's opinions must be relevant and fit the facts of the case. Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 2799 (1993). "The concept of 'fit' requires that a valid connection exist between the expert's testimony and a disputed issue." U.S. v. Shay, 57 F.3d 126, 133, n.5 (1st Cir.1994). To the extent that Premier's expert's testimony describes a claim of negligence against the Law Office, it is neither relevant to Premier's claims, nor fits the facts of the case and is therefore inadmissible under Daubert and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999) (extending gatekeeping function in Daubert to technical and other specialized knowledge in addition to scientific testimony).

  **C. Premier's Expert Testimony Lacks Foundation in The Facts and is Therefore Unreliable.**

Even if Mr. Storfer's testimony "fit" Premier's claims (which it doesn't), it should nevertheless be excluded as unreliable and based on pure speculation. In contrast to the conclusory testimony offered in his affidavit that debtors generally pay judgments, Mr. Storfer testified in his deposition that he has no way of knowing whether or not the judgment debtors in *this case* would have paid if the judgments had been recorded against the Homestead property, despite their lack of a legal obligation to pay. Id. at 106. Summary judgment is appropriate against the nonmoving party where that party relies on "conclusory allegations, improbably inferences, and unsupported speculation." Orient Overseas v. John T. Clark & Sons of Boston, 229 F.Supp.2d 4 (D.Mass.2002)(quoting DeNovellis v. Shalala, 124 F.3d 298, 306 (1st

6

Cir.1997)). The same principle applies to expert affidavits. Id. As the Court in Orient Overseas held:

> "In order to defeat summary judgment, the expert opinion must be more than a conclusory assertion about ultimate legal issues. In other words, [the] expert must do more than present a conclusory statement. Thus [w]here an expert presents nothing but conclusions – no facts, no hint of an inferential process, no discussion of hypothesis considered and rejected, such testimony will be insufficient to defeat a motion for summary judgment."

Id. (internal quotes and citations omitted).

Mr. Storfer has admitted at deposition that he has no way of knowing whether the debtors in this case would have paid, yet in his affidavit he concludes, without foundation, that since a high percentage of them usually pay, the judgment debtors in this case would have paid. Compare, Storfer Affidavit at ¶¶ 4-12 with Exhibit A, Corrigan Aff. at Exhibit 1, Storfer at 106. "It is the Court's responsibility to determine whether the underlying factual evidence is sufficient to support the expert's ultimate conclusion. The expert's expression of the ultimate conclusion alone does not improve the plaintiff's case against summary judgment or directed verdict." Carapellucci v. Town of Winchester, 707 F.Supp. 611, 620 (D.Mass.1989). The Court should strike Mr. Storfer's affidavit as unreliable and based on insufficient facts under Rule 702, particularly in light of his testimony at his deposition that he simply has no way of determining whether the debtor's in *this case* would have paid. By Mr. Storfer's own admission, the facts don't support the conclusion Premier now seeks to elicit from him and the Court should therefore disregard the opinions offered in his affidavit.

    **V.**    **The Affidavit of Richard Gleicher Should be Stricken as Untimely, and Because it Contradicts Premier's Own Expert's Testimony, Contradicts Mr. Gleicher's Own Prior Sworn Testimony and Contradicts Premier's Business Records.**

    **A.**    **Mr. Gleicher's Affidavit is Untimely.**

On November 16, 2007, two days after Premier's deadline for filing its Opposition to Ms. Penzell's Motion for Summary Judgment, it filed two affidavits, one by its attorney, Thomas J. Morrissey, and the other by Premier's agent, Richard Gleicher.  Both affidavits should be stricken by the Court as untimely, having been filed two days after this Court's deadline for serving Premier's Opposition.  Premier's disregard for this Court's deadlines is unacceptable, particularly where it is faced with opposing a motion that could cause the Court to dismiss its claims in this case.  Mr. Gleicher's affidavit is riddled with factual assertions that contradicts the opinions expressed by Premier's own expert and contradicts Mr. Gleicher's *own* prior testimony and contradicts information obtained from Premier's files.  Based on these contradictions it appears Mr. Gleicher's affidavit may have been filed in bad faith.  In any event, Mr. Gleicher's affidavit fails to create a genuine issue of material fact.

      **B.**      **Mr. Gleicher's Affidavit Contradicts Premier's Own Expert's Testimony.**

Most glaringly, Mr. Gleicher swears under oath that Premier could not proceed with collection on the files or hiring new counsel to perform work on those matters until Premier had Kris Penzell's files produced to it.  Affidavit of Richard Gleicher at ¶¶ 18, 20.  This testimony contradicts Premier's expert who testified that Premier did not need the Law Office to provide substitutions of counsel, did not need pleadings that could be obtained from the Court, and, in fact, Premier had hired Richard Storfer himself to perform collection work on some of the matters at issue in this case ***prior to*** the Florida Court approving Ms. Penzell's request to produce copies of Kris Penzell's files to Premier.  Exhibit A, Corrigan Aff. at Exhibit 1, Storfer at 147, 164-167 and 175.  Moreover, the affidavit is inconsistent with itself, since Mr. Gleicher states in his affidavit that Premier was able to hire an attorney on the Arroyave matter.  Gleicher Aff. at ¶ 11.  Mr. Gleicher does not explain how Premier was able to retain counsel in the Arroyave

8

matter, particularly in light of the allegations later in his affidavit that Premier was "unable to obtain new counsel" and "[n]either Premier, nor potential counsel in Florida whom Premier contacted, could proceed with further collection until Premier's dispute with Penzell was resolved through return of the files." Gleicher Aff. at ¶¶ 18, 20.

### C. Mr. Gleicher's Affidavit Contradicts His Own Prior Sworn Testimony and, in Any Event, Fails to Create a Genuine Issue as to Any Material Fact.

#### 1. Mr. Gleicher's Statements Regarding Alleged Conversations With Ms. Penzell Are Not Based on Mr. Gleicher's Personal Knowledge and Should be Disregarded.

Mr. Gleicher's affidavit also contradicts his own prior sworn testimony in this case. Significantly, Mr. Gleicher testified at his deposition that he has never had a conversation with Beverly Penzell. Exhibit A, Corrigan Aff. at Exhibit 2, 30(b)(6) Deposition of Premier Capital, LLC By Richard Gleicher ("Gleicher") dated October 27, 2004 at 34. Despite this testimony, Mr. Gleicher makes numerous allegations in his affidavit regarding statements Ms. Penzell allegedly made. Gleicher Aff. at ¶¶ 8-9, 12, 15-16. These allegations are not based on Mr. Gleicher's personal knowledge and thus should be disregarded by this Court.

#### 2. Mr. Gleicher's Affidavit With Respect to The 1998 Fee Agreement is Contradicted By His Prior Testimony.

Mr. Gleicher swears in his affidavit that Premier was unaware of the existence of the 1998 Fee Agreement between Kris Penzell and NationsBank until a copy of the agreement was faxed by Ms. Penzell to Premier in 2002. Gleicher Aff. at ¶¶ 9-10. However, Mr. Gleicher admitted in his deposition over two years ago that in the late summer or Fall 2001 he had seen the 1998 Fee Agreement while performing due diligence for Premier at Bank of America's offices in Oklahoma ***before*** Premier purchased these files. Corrigan Aff. at Exhibit 2, Gleicher at 36-38, 54-55. Regarding the agreement, Mr. Gleicher testified:

9

> "Q: Was it your understanding that when you looked at this contingent fee agreement, that Premier would be assuming the rights and obligations under this agreement?
>
> A: Yes, that is my understanding.
>
> Q: When you were reading this contingent fee agreement, you were reading it with the view in mind that Premier would likely, if they consummated the transaction, become bound by this agreement, is that right?
>
> A: I was reading with the view that I hoped that this agreement would be in force and effect and I hoped that we would be able to continue with our relationship that Bank of America or NationsBank had with Mr. Penzell."

Id. at 54-55.

Mr. Gleicher further admitted that to the extent Kris Penzell performed services from which Premier benefited, Mr. Penzell should be compensated for those services. Specifically, Mr. Gleicher testified as follows:

> "The question is not about the files, that's not the issue. The issue is agreements and contracts between Bank of America and Kris Penzell, Kris Penzell who is defined as the attorney. That's the agreement.
>   Now Premier bought a bunch of loans from Bank of America. It took those loans agreeing to honor whatever contingent fee agreements were in place; and if Mr. Penzell performed services on behalf of Premier that Premier benefited and Premier approved of, Mr. Penzell is entitled to be compensated for those services. If Mr. Penzell performed services on behalf of Bank of American [sic] and didn't benefit Premier and was supposed to get compensated by Bank of America, then I would say Kris Penzell would owe, Bank of America would owe Mr. Penzell the money."

Id. at 46-47.

### 3. Mr. Gleicher's Statements Regarding The Arroyave Settlement Are Contradicted By Premier's Business Records and Admissions.

Mr. Gleicher testified that because the Law Office of Kris Penzell did not respond to a bankruptcy filing by the debtor, Premier was forced to hire counsel to protect its rights and the fees Premier paid that lawyer exceeded Premier's recovery. Gleicher Aff. at ¶¶ 10-11. According to the bankruptcy notice contained in Premier's business records regarding the

Arroyave matter, Arroyave did not file for bankruptcy until April 25, 2002, not in January 2001 as Mr. Gleicher alleges in his affidavit. Corrigan Aff. at Exhibit 3(a), Notice Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines.

Premier's business records further reflect that Premier negotiated a settlement with Arroyave during January 2002 through which Premier recovered $25,600 and deposited those funds into its Sovereign Bank account on or about January 24, 2002. Corrigan Aff. at Exhibit 3(c), Letter from John D. Cummings to Juan Martinez, Esq. dated May 19, 2004 and Attached Checks/Premier Deposit Slip.[2] In fact, it was Premier's receipt of this money from Arroyave that prompted the Trustee in Bankruptcy to seek return of the settlement payment as a preference made by the debtor within 90 days of the filing of bankruptcy. Corrigan Aff. at Exhibit 3(b), Letter from Juan Martinez, Esq. to John D. Cummings dated May 17, 2004. Moreover, Premier's Proof of Claim in the Arroyave bankruptcy was filed in September 2004 and signed by its bookkeeper, Melissa Nadeau, not an attorney. Corrigan Aff. at Exhibit 3(d), Premier Proof of Claim. In correspondence between Premier and the Trustee in bankruptcy Mr. Cummings states that although "[w]e do have counsel of record on this matter, Juan Martinez, [we] would prefer to keep our legal expenses to a minimum in light of the fact that we are accepting a discounted amount on our claim." Corrigan Aff. at Exhibit 3(e), Letter from John D. Cummings to Alan L. Goldberg dated January 10, 2005. This correspondence suggests that Premier reached a negotiated settlement and expected to receive $63,000 from the Arroyave bankruptcy. Id.

Mr. Gleicher's allegation that Premier incurred legal expenses in hiring counsel in excess of what Premier recovered from Arroyave appears to be false. Premier's business records produced during discovery regarding legal fees paid on the Arroyave file demonstrates that Premier has paid Juan Martinez $9,249.54 and did not start incurring fees for his services until

---

[2] Mr. Cummings' letters constitutes admissions by Premier and encloses business records of Premier.

11

September 2002, not in January 2002, as Mr. Gleicher alleges in his affidavit. Corrigan Aff. at Exhibit 4, Legal Costs Form Report. Moreover, when Premier recovered $25,600 from Arroyave in January 2002, it had not incurred any legal fees. Id. Arroyave did not even file for bankruptcy for another 3 months after the settlement and Premier's own documents suggest that it didn't incur any legal fees until September 2002. Regardless, Premier's fees were clearly less than Premier's recovery from Arroyave in January 2002 and also less than the $63,000 Premier negotiated for and expected to recover from Arroyave's bankruptcy.

      **4.     Mr. Gleicher's Affidavit Fails to Create a Genuine Issue of Material Fact as to Premier's Claims.**

Mr. Gleicher's affidavit fails to create a genuine issue of material fact as to Premier's claims. In deciding whether a factual dispute is genuine, this court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Orient Overseas v. John T. Clark & Sons of Boston, 229 F.Supp.2d 4, 8 (D.Mass.2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) and Aponte-Santiago v. Lopez-Rivera, 957 F.2d 40, 41 (1st Cir.1992)). "A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." Id. (quoting Beck v. Somerset Technologies, Inc., 882 F.2d 993, 996 (5th Cir.1989)). Moreover, "[a] party cannot create a disputed issue of fact by the expedient of contradicting by affidavit his own statements previously made under oath at a deposition." Williams v. Raytheon Co., 45 F.Supp.2d 124 (D.Mass.1999)(citing Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir.1994).

Mr. Gleicher's affidavit contradicts the opinions of Premier's own expert, contradicts his own prior sworn testimony, and contradicts Premier's business records and admissions. Premier has failed to create any genuine issue of material fact and summary judgment should enter in Ms. Penzell's favor. Moreover, due to the numerous contradictions in Mr. Gleicher's affidavit it

12

appears that it may have been filed in bad faith.  Accordingly, Premier should be sanctioned for submitting Mr. Gleicher's affidavit.

## CONCLUSION

Premier failed to timely or properly controvert Ms. Penzell Statement of Material Facts, and moreover, improperly submitted a factually baseless affidavit with the goal of defeating Ms. Penzell's motion for summary judgment.  Premier's misconduct should be sanctioned in accordance with the discretion afforded this Court under Fed. R. Civ. P. 56(g).  Specifically, Ms. Penzell respectfully requests her attorney fees' and costs associated with prosecuting this Motion for Summary Judgment against Premier's baseless claims and requests that this Court grants such further relief as it deems just under the circumstances.  Premier's conduct aside, it has failed to raise any genuine issue of material fact and summary judgment is therefore appropriate.

Based on the foregoing, and for the reasons set forth in Ms. Penzell's Motion for Summary Judgment, summary judgment should enter in favor of Ms. Penzell on both Counts I and II of Premier's Complaint.

    Respectfully submitted,

    BEVERLY JOHNSON PENZELL,
    By her attorneys,


    /s/  Joseph W. Corrigan
    Catherine J. Savoie, BBO#544599
    Joseph Corrigan, BBO#647393
    POSTERNAK, BLANKSTEIN & LUND, L.L.P.
    Prudential Tower
    800 Boylston Street
    Boston, MA  02199-8004
    617.973.6100

Dated: November 30, 2007

**CERTIFICATE OF SERVICE**

    I, Joseph W. Corrigan, Esq. hereby certify that the above document was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 30, 2007.

                                              /s/Joseph Corrigan_____
                                              Joseph W. Corrigan