## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Release") is made this the ____ day of _____, 1999 by and between Bank of America, N.A. d/b/a NationsBank, N.A. successor to Barnett Bank, N.A., successor to Barnett Bank of South Florida, its subsidiaries, parents and affiliates ("Bank") and Kris Penzell, P.A. and Kris Penzell, individually, ("Penzell"), hereinafter collectively referred to as the "Parties".

WHEREAS, prior to December 23, 1998, the Bank and Penzell entered into agreement(s) wherein Penzell agreed to provide collection-related legal services on certain accounts referred to him by the Bank and the Bank agreed to pay Penzell a certain fee upon collection ("Old Barnett Agreement").

WHEREAS, prior to December 23, 1998, the Bank referred certain accounts to Penzell to provide collection-related legal services pursuant to the terms of the Old Barnett Agreement ("Old Barnett Matters").

WHEREAS, on December 23, 1998, the Bank and Penzell entered into a new agreement, attached hereto and incorporated herein as Exhibit A, regarding the terms and conditions under which Penzell would provide collection-related legal services on accounts referred to him by the Bank and Penzell's compensation therefrom ("New Agreement").

WHEREAS, a dispute has arisen between the Parties regarding the terms and conditions under which Penzell is providing collection-related legal services on accounts referred to him by the Bank and Penzell's compensation therefrom ("Dispute").

WHEREAS, the Parties in order to resolve the Dispute and avoid confusion, desire to clarify the terms and conditions under which Penzell will provide collection-related legal services on accounts referred to him by the Bank and Penzell's compensation therefrom.

NOW, in consideration of the foregoing and other good and valuable consideration, the Parties intend to be legally bound by this Release, agree as follows:

1. All Old Barnett Agreements are hereby terminated and are hereinafter null and void.

2. All matters referred to Penzell for collection-related legal services on or after December 23, 1998 will be governed by the New Agreement.

3. Penzell may provide collection-related legal services on the matters listed on Exhibit B attached hereto and incorporated herein by reference and receive compensation therefrom pursuant to the terms of the New Agreement.

4. If Penzell desires to continue providing collection-related legal services on any of the Old Barnett Matters, which are not listed on Exhibit B, Penzell must obtain written permission from the Bank to do so. If Penzell obtains such written permission from the Bank,



PLAINTIFF'S EXHIBIT
BP 4
MP 9-25-07

the terms and conditions of the New Agreement will apply. The Bank reserves the right, without explanation and in its sole discretion, to withhold permission for any reason.

  5. Unless the Bank gives Penzell written permission as stated in paragraph 4, Penzell hereby and forever releases the Bank, its predecessors, officers, managers, directors, shareholders, employees, agents, attorneys, representatives, parent corporations, subsidiaries and affiliates, from any and all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, off sets, rights, actions and causes of action of any nature whatsoever, including, without limitation, all claims, demands, causes of action, expenses, including, but not limited to reasonable attorneys' fees and disbursements Penzell has sustained or may hereinafter sustain, which relate in any way to Old Barnett Matters, not listed on Exhibit B.

  6. Penzell hereby and forever releases the Bank, its predecessors, officers, managers, directors, shareholders, employees, agents, attorneys, representatives, parent corporations, subsidiaries and affiliates from any and all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, liabilities, accounts, off sets, rights, actions and causes of action of any nature whatsoever, including, without limitation, all claims, demands, causes of action, expenses, including, but not limited to reasonable attorneys' fees and disbursements Penzell has sustained or may hereinafter sustain, which relate in any way to the Old Barnett Agreements or collection efforts related thereto.

  7. The Parties execution of this Release is not in any way based upon any reliance upon any representation, understanding or agreement not expressly set forth herein and neither party has made any representations to the other not expressly set forth herein.

  8. The Parties execute this Release as a free and voluntary act without any duress, coercion or undue influence exerted by or on behalf of either party.

  9. This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina and the laws of the United States of America applicable to such transactions within such state, including without limitation in relation to all matters of formation, interpretation, construction, validity, performance and enforcement.

  10. In the event of any question or dispute under this Agreement, the Parties agree that the terms of this Agreement shall not be construed against the drafter but shall be construed as though all parties were the drafter.

  11. This Release is a compromise of a disputed claim and this Release is not to be construed as an admission of liability by either party.

  12. If any term, provision or condition of this Release is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the Release shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

13. This Release is binding upon the Parties, their heirs, executors, administrators, assigns, successors in interest, predecessors in interest and anyone claiming by and through or under any of them.

14. This Release constitutes the entire agreement between the Parties and is a final and complete release of those matters set forth herein and supersedes all prior agreements and understandings, if any, relating to the subject matter hereof.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement and General Release as of the date set forth above.

BANK OF AMERICA, N.A. d/b/a NationsBank, N.A., successor to Barnett Bank, N.A., successor to Barnett Bank of South Florida

By: *Jacqueline Cristiam*
Name: Jacqueline Cristiam
Title: Vice President
Date: Dec 6, 1999

Kris Penzell, P.A.

By: *[signature]*
Title: *[illegible]*
Date: Nov 29, 1999

*[signature]*
Kris Penzell

EXHIBIT A

## CONTINGENCY FEE AGREEMENT

This Contingency Fee Agreement ("Agreement") is entered into this __23__ day of __December__, 199_8_, by and between NationsBank, N.A. ("Bank") and _____Kris Penzell_____ (the "Attorney").

I. **FEES AND COSTS.**

    A. **Fees.**

The Attorney's fees for matters forwarded pursuant to this Agreement and the Contingency Attorney Referral attached hereto as Exhibit A ("Matters") shall be wholly contingent upon collection and shall be at the rate of thirty percent (30%) contingency basis on all amounts collected, unless otherwise designated in writing by Bank.

    B. **Costs.**

In no event shall the Attorney incur any reasonable expenses in excess of $250.00 with respect to any matter without the Bank's prior approval. Costs shall include actual costs incurred in connection with the preparation and prosecution of the Matter and must be within the limits set forth in the Bank's Procedures for Outside Counsel, which are hereby incorporated by reference. Costs shall be billed each month and identified as to each corresponding Matter.

    C. **Application of Collected Funds.**

In the event that the Attorney collects any funds as the result of prosecution of a Matter, the Firm shall be entitled to apply said funds as follows: (i) first, to reimbursement of any costs incurred and not previously reimbursed, (ii) second, to reimburse Bank for any costs already billed and paid by Bank, (iii) third, to the Attorney to pay the thirty percent (30%) contingency fee, and (iv) to the Bank.

    D. **Remittance of Funds.**

The Attorney shall be responsible for collection of all monies due from debtors on all Matters subject to this Agreement. The Firm shall be permitted to deduct the agreed costs and contingency fees from the funds collected and must remit the remaining balance of all such funds collected to Bank no later than fifteen (15) days from receipt of each payment in the Attorney's office. The Attorney shall provide the Bank with a full accounting of each such remittance at the time of payment

AUG. 03. 2006(THU) 10:22  PENZELL ASSOC          8055315175        PAGE 11
DEC 16 1998 16:58 FR B OF A LEGAL DEPT.   704 388 7342 TO 913055315175    P.04/10

thereof. In addition to the above, the Attorney shall provide to the Bank a monthly accounting of all monies received and all payments made with respect to each Matter during the prior month. In the event the Bank directly receives funds on a Matter, Bank agrees to process such payment and forward to the Firm the appropriate contingency fee within thirty (30) days from receipt thereof.

II.  **WORK TO BE PERFORMED.**

Each Matter subject to this Agreement may require one or more of the following types of collection efforts. In addition, other methods of collection may be required. The time deadlines indicated below in Section II of this Agreement can be modified with the express consent of the Bank.

A.  **Review Credit File and Determine Litigation Probability.**

Within thirty (30) days of receipt of the Matter, the Attorney will review the credit and collateral files applicable to each Matter and will prepare a written summary report to reflect the status of the file and the Bank's position. This review includes a recommendation as to whether action, including litigation, against the collateral and/or the obligors is feasible. If it is determined that the debt is uncollectable or that the costs to collect the debt outweigh the benefits of collection, the Attorney agrees to return the file to the Bank at no charge.

B.  **Demand On Debtor.**

The Attorney will make formal written demand on the debtor for payment of the indebtedness within forty-five (45) days of receipt of the Matter.

C.  **Litigation.**

Within ninety (90) days of receipt of the Matter, if the Bank expressly determines that litigation should be filed against the debtor, the Attorney will investigate the facts necessary to prepare the lawsuit, file the lawsuit and prepare and file an initial set of discovery requests.

D.  **Bankruptcy.**

If a debtor files for bankruptcy protection, the Attorney will immediately notify the Bank in writing and will thereafter file a Notice of Appearance. With the permission and assistance of the Bank, the Attorney will file a Proof of Claim, even if the bankruptcy

notice indicates that the Matter is a "no asset" case, and Motion For Relief From Stay as required under the circumstances.

E. <u>Post-Judgment Collection Efforts</u>.

Once a final judgment has been entered against a debtor, the Attorney agrees to initiate appropriate post-judgment proceedings, including, but not limited to, recording judgments in the appropriate jurisdictions, post-judgment discovery, garnishment proceedings, obtaining writs of execution and other proceedings as may be appropriate in the applicable jurisdiction.

III. <u>STATUS REPORTS</u>.

The Attorney shall keep the Bank informed of the status of each Matter by timely sending the Bank a copy of all correspondence and pleadings involved in each Matter. In addition upon request, the Attorney shall provide the Bank a status report on any or all Matters that the Attorney is handling in the form attached as Exhibit B.

IV. <u>SETTLEMENTS</u>.

In the event that the debtor in a particular Matter indicates a willingness to resolve the Matter for less than the full amount of the debt owed to Bank, the Attorney may settle such Matter only with the written consent of Bank.

V. <u>COUNTERCLAIMS</u>.

In the event a counterclaim should be filed against the Bank in any Matter, the Attorney shall immediately notify Bank of the same and Bank shall have the right to elect to transfer the Matter to another counsel of Bank's choice. On such transfer, the Firm shall provide Bank with a written invoice showing the number of hours expended on the Matter at an hourly rate of $110.00 per hour, and Bank may elect to either (i) pay the invoice in full satisfaction of the Attorney's claims as to the Matter, or (ii) pay the Attorney a reduced contingency fee of fifteen percent (15%) of all funds collected by Bank following transfer. In the event a counterclaim which has resulted in a transfer is later resolved, Bank may elect to return the Matter to the Attorney at the Attorney's regular contingency rate, and to the extent Bank has paid the Attorney an hourly fee as set forth above, the amount of said hourly fee paid shall be deducted from the contingency amount upon any later collection of Bank's claim. In the event the Matter remains

3

with the Attorney, the manner in which the counterclaim shall be handled shall be determined on a case by case basis.

VI. TERMINATION.

A. For Cause.

In the event the Attorney fails to timely or fully remit any amount due to Bank, or fails to do any other act required by this Agreement or fails to perform said act in a timely manner, Bank may at any time notify the Firm in writing of its concerns and objections. The Firm shall have thirty (30) days from the date of such notice to take corrective action. If, at the end of the thirty (30) day period, all problems have not been resolved to Bank's full satisfaction, Bank shall have the unilateral right, in its sole and absolute discretion to terminate this Agreement by notice to the Firm in writing, and to withdraw any and all files Bank deems necessary to effect the termination.

B. Without Cause.

At any time after one (1) year following the date of this Agreement, Bank may terminate this Agreement for any reason or for no reason at all. Notice of termination shall be in writing and shall be effective thirty (30) days after receipt.

C. Bank Recall.

From time to time, Bank may recall a Matter for any reason or no reason at all from Attorney and reserves the right to take such action. In such instances, the Attorney agrees to return all original files and documents related to the recalled Matter within fifteen (15) days from notification. If a matter is recalled, Attorney will be compensated as indicated in paragraph D below.

D. Payment Upon Termination.

Upon termination as set forth in Section A above, the Attorney shall be entitled to compensation as follows: (i) as to any Matters in which a payment agreement has been previously reached with the debtor, the Attorney shall be entitled to collect its agreed contingency fee and all funds collected under such payment agreement; and (ii) as to Matters in which no payment agreement has been reached prior to termination, the Attorney shall provide the Bank with a written invoice for each terminated Matter showing the number of hours expended on each

terminated Matter at the hourly rate of $110.00 per hour and as to each individual Matter Bank may thereupon elect to either (i) pay said invoice in full satisfaction of the Firm's claims to each terminated Matter or (ii) pay the Attorney at a reduced contingency fee of fifteen percent (15%) of all funds collected by Bank, if any, following termination.

Upon termination as set forth in Sections B and C above, the Attorney shall be entitled to compensation as follows: (i) as to any Matters in which a payment agreement has been previously reached with the Debtor, the Attorney shall be entitled to collect its agreed contingency fee and all funds collected under such payment agreement; and (ii) as to Matters in which no payment agreement has been reached prior to termination, the Attorney shall provide the Bank with a written invoice for each terminated Matter showing the number of hours expended on each terminated Matter at the hourly rate of $110.00 per hour, and as to each individual Matter Bank may pay said invoice in full satisfaction of the firm's claims to each terminated Matter.

E.    **Attorney's Right To Terminate**.

The Attorney has the right to terminate this Agreement by providing Bank with ninety (90) days' written notice of such termination. However, upon any such termination initiated by the Attorney, contingency fees for payment made after a termination date are waived.

VII.    **RETENTION AND RETURN OF FILES**

When a Matter is completed through collection or when collection efforts are abandoned, the Attorney shall maintain all records related thereto for a period of five (5) years. If this Agreement is terminated as set forth above, the Attorney shall return all original files and documents to Bank along with a complete set of all pleadings filed in the case within thirty (30) days from the date of termination.

VIII.    **OTHERS MATTERS**

A.    **Matters Outside Attorney's Service Area**:

In the event Attorney is unable to handle a particular matter due to a defendant being located outside Attorney's usual service area, Attorney shall immediately contact Bank in writing to advise Bank of the circumstances. Bank shall thereupon have the option of authorizing attorney to employ the assistance of legal counsel in the area where

the defendant is located, subject to the Bank's prior written approval. In no event shall the Bank be responsible for fees beyond the agreed contingency fees set forth herein above and any proposed agreement with outside counsel engaged by Attorney shall be subject to prior written approval by Bank.

B.  Geographic Areas.

The Attorney will handle matters under this Agreement in the following areas: _____

The Attorney acknowledges that this Agreement is not an agreement for exclusive representation of the Bank by the Attorney in the Geographic Area and that the Bank reserves the right to send matters in the Geographic Area to other attorneys.

C.  Liability.

The Attorney will review the Bank's file and submit an accurate report based on the documents contained in the file. Since the file review is limited to the documents available in the Bank's file, the Attorney will not represent that the information is complete. Unless specifically engaged, the Attorney is not expected to search records or public filings not contained in the Bank's file. Unless expressly noted in the report, the report submitted is not a legal opinion on the perfection or priority of the Bank's lien on the collateral.

D.  Hold Harmless.

The Attorney agrees to comply with all laws, federal, state or local and, without limitation, the Fair Debt Collection Practices Act. The Attorney agrees to indemnify, release and hold the Bank harmless from any and all damages, claims, liability, debts, causes of action, claims for relief or loss of any kind, including all attorneys' fees, legal costs and expenses, arising from the Attorney's acts or omissions, the Attorney's violation of any law or the Attorney's negligence. The Attorney also holds the Bank harmless from the acts of the Attorney's servants, employees, agents, agencies or independent contractors. The Bank agrees to indemnify, release and hold the Attorney harmless from any and all damages, claims, liability, debts, causes of action, claims for relief or loss of any kind, including all attorney's fees, legal costs and expenses arising from the Bank's acts or omissions, Bank's violation of any law or Bank's negligence. Bank also holds the Attorney

6

harmless from the acts of Bank's servants, employees, agents, agencies or independent contractors.

E. <u>Full and Complete Agreement</u>.

This Agreement represents the full and complete understanding of the parties with respect to the subject matter hereof. This fully integrated Agreement shall supersede all prior and contemporaneous negotiations, discussions, representations, agreements and accords that are not expressly incorporated herein.

F. <u>Successors and Assigns</u>.

This Agreement shall inure to the benefit of each of the parties hereto shall be fully binding upon them and their respective heirs, personal representatives, and successors. In no event shall this Agreement be assignable by the Attorney.

G. <u>Applicable Law</u>.

This Agreement has been negotiated, executed and delivered, and shall be deemed to have been made in the State of North Carolina, and the validity of this Agreement, its construction, its interpretation and enforcement and the rights of the parties hereunder, shall be determined under, and governed by and construed in accordance with the laws of the State of North Carolina.

H. <u>Counterparts</u>

This Agreement may be executed in one or more counterparts, each of which shall be deemed an original. Said counterparts shall constitute but one in the same instrument and it shall be binding upon each of the undersigned individually as fully and completely as if all had signed but one instrument.

I. <u>Severability</u>

To the extent that any provision in this Agreement is held to be unenforceable, the remaining portions of the Agreement shall continue to have full force and effect and shall be interpreted to achieve the overall intentions of the parties hereunder.

J.  <u>Time is of the Essence</u>

The Attorney agrees and acknowledges that time is of the essence to this Agreement.

NationsBank, N.A.

By: _____
Name: _____
Title: Senior Counsel

Kris E Penzell P.A.
Name of Law Firm

By: _____
Name: Kris E Penzell
Title: President

i:\mayo\cont-fee\forms\penzell

8

# EXHIBIT B

| FILE NO. | NAME | DATE | AMOUNT | COMMENTS |
|---|---|---|---|---|
| 833981 | A.R.P. International Inc.; Larraz, Antonio R. and Periamarina | 04/24/1984 | $ 16,311.22 | |
| 929488 | Ackerman, Raymond and Sandra G. | 11/08/1995 | 23,966.66 | Raymond - Bkt |
| 833982 | Advance Fork Lifts Inc.; Tonks, Robert M. | 02/22/1984 | 29,364.98 | |
| 864645 | Alvarez, Angel B. | 08/04/1986 | 6,473.38 | |
| 929487 | American Furniture/Sheffron, Ronald & Judith | 04/27/1992 | 209,874.59 | |
| 909185 | Battah, Antuone & Tracy | N/A | Stipulation | owes $345.95 |
| 833908 | Biotronics Inc./Bernard and Martene Conti | 02/24/1984 | 14,901.42 | |
| 909160 | Burton, Harvey | | | continuing paym |
| 833851 | Carrasquero, Jorge F. & Amneris | 06/29/1983 | 6,311.74 | |
| 864880 | Chaka, Kiambu; Idella C. Chaka a/k/a Idella C. Jackson | 08/03/1987 | 64,418.85 | |
| 979989 | Chamberlain, John and Anamaria | N/A | Stipulation | continuing paym |
| 919327 | Cohn, Stanley & Jeanne | 07/29/1991 | 29,403.65 | |
| 874921 | Design Home Remodeling (Edelstein, Harold & Grilla, Louis) | 03/31/1987 | 5,658.50 | partial payment |
| 929510 | Diversified Aerospace/R. Syx; M. Davis and W. David | 05/17/1993 | 173,674.74 | $78,905 Paid |
| 9710000 | Doherty, Henry | N/A | Stipulation | continuing paym |
| 919339 | Einhorn, Donald M. | 09/04/1991 | 30,432.10 | |
| 919330 | Equinox Productions Inc./Dennis R. Linn | 11/04/1991 | 59,102.82 | |
| 898936 | First Summit Corp.; Robert Crows | 04/24/1989 | 23,312.93 | |
| 875019 | Golden Razor Barber Shop; Carmine Brancaccio | 08/03/1987 | 9,752.68 | |
| 909187 | Green, Morgan & Debra | 09/18/1990 | 1,758.19 | |
| 833977 | Guerra-Nunez, Mirta | 03/16/1984 | 8,777.39 | |
| 899126 | Herrera, Jose | 10/03/1989 | 109,208.22 | continuing paym |
| 929529 | J. Lynn Development Corp. and Bernd D. Hargreaves | 07/08/1993 | 8,759.56 | |
| 899028 | Jayson, Jeni L. d/b/a/ Infant Wear | 11/30/1989 | 7,460.58 | partial payment |
| 844234 | Kappa Fashions Inc./Liebert Bass and Doris Horwitz | 06/19/1985 | 24,053.67 | |
| 854390 | Kenworthy, Thomas W. | 07/08/1986 | 5,855.51 | |
| 899076 | Khawly, Roosey | 02/11/1985 | 572,554.67 | continuing paym |
| 919366 | Lanier & Sons Steam Clean Carpet Service/Sylvia Gibson | 07/01/1998 | 7,412.47 | |
| 844248 | Le Esplanade Time & Gold Shop Inc.; Isabel and William Cobb | 02/15/1985 | 9,145.47 | |
| 854437 | Le Sante, Jorge G. | 12/03/1984 | 3,833.24 | |
| 864786 | Lioy, Antonio | 10/24/1988 | 20,831.16 | |
| 833976 | Loredo, Felix, G. | 03/01/1984 | 13,405.29 | |
| 909189 | Mar Gil Inc. d/b/a Light King; Martin Norris & Gilbert Arenella | 09/26/1990 | 4,981.66 | |
| 864731 | Martinez, Hiram | 02/20/1987 | 29,090.63 | |
| 888900 | Metro Fire & Safety; Knoepfle, Ken | 04/15/1986 | 77,071.06 | partial payment |
| 887076 | Metropolitan Industries Inc.; Ward, James F. | 10/31/1988 | 26,107.93 | |
| 875015 | Oliveros, Generoso and Marisela | 06/30/1987 | 7,215.91 | |
| 887080 | Pauls, James D. Sr. | 03/23/1990 | 20,017.98 | |
| 919310 | Quadradial Studio/Robert Ingria | 09/17/1991 | 97,826.46 | Ingria only |
| 899031 | Rainbow Exports Inc.; Consalvo, Alberto, Oscar & Delfa N. | 11/07/1988 | 4,979.35 | |
| 887064 | Record Land Export Inc.; Palmero, Jose & Miguel; Monserrat, Jaime | 08/26/1988 | 27,512.26 | Palmero paid 5K |
| 899117 | Redlands Airconditioning & Refrigeration Inc.; Acor & Hardee, Jack | 04/27/1999 | 13,317.98 | Acor paid $7200 |
| 844209 | Rios, Ricardo and Ben Gross | 11/27/1984 | 12,310.66 | |
| 854434 | Sabatini, Giorgio | 05/08/1985 | 54,505.71 | |
| 979990 | Santiago Medical Center Corp. and Carmen D. Perez-Bovdet | 05/20/1999 | 40,499.00 | Perez-Bovdet onl |
| 909249 | Schindler, Jerry & Abramowitz, Rochelle | 01/04/1991 | 19,967.11 | Abramowitz - 5K |
| 844060 | Top Ranking International Inc./Turian M. Hutchinson | 05/09/1985 | 98,552.10 | |
| 929524 | Top Ten Card Co. Inc.; West, Gary & Jennair | 10/02/1987 | 89,677.46 | |
| 919306 | Velmas Golden Needle/Butler, Velma | 05/24/1991 | 9,505.25 | |
| 899016 | Vittum, David & Ceslyn | 04/14/1989 | 88,115.80 | |
| 909264 | Wetstein, Patricia Araujo/Andro Care | 01/27/1992 | 52,049.42 | partial payment |
| 864628 | Wolfe, Clifford | 07/14/1999 | 21,122.34 | |

Initial KZZ   Date 11/29/C

STATE OF NORTH CAROLINA

COUNTY OF _Union_

The foregoing instrument was acknowledged before me this _6th_ day of _December_, 199_9_, by _Jacqueline Cristiano_, as _Vice President_ of BANK OF AMERICA, N.A., a national banking association, on behalf of said association. ~~He~~/She is personally known to me or has produced _____ as identification.

_Cynthia H. Fisher_
NOTARY PUBLIC, State of North Carolina
Name: _Cynthia H. Fisher_
Serial No.: _____
My Commission Expires: _9-02-2001_
(SEAL)


STATE OF FLORIDA

COUNTY OF _Dade_

The foregoing instrument was acknowledged before me this _29_ day of _Nov._, 199_9_, by _Kris E. Penzell_, as _President_ of _Kris E Penzell PA_, a professional association, on behalf of said association. He/~~She~~ is personally known to me or has produced _____ as identification.

Witness my hand and seal.

_D. Chardiet-Storey_
NOTARY PUBLIC, State of Florida
Name: _Denise Chardiet-Storey_
Serial No.: _CC753398_
My Commission Expires:
(SEAL)

NOTARY PUBLIC - STATE OF FLORIDA
DENISE CHARDIET-STOREY
COMMISSION # CC753398
EXPIRES 10/11/2002
BONDED THRU ASA 1-888-NOTARY1